IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC. and GIFFORD MEDICAL CENTER, INC., *for themselves and on behalf of all other similarly situated class members,*<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH NET FEDERAL SERVICES, INC.,<br><br>Defendant. | Civil Action No. |

## COMPLAINT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Northern Michigan Hospitals, Inc., and Gifford Medical Center, Inc., as Plaintiffs and "Class Representatives," for themselves and on behalf of all other similarly situated class members (collectively, the "Class," as further defined below), by and through undersigned counsel, file the following Complaint.

## PARTIES

1. Plaintiff, Northern Michigan Hospitals, Inc., is a Michigan nonprofit corporation, which operates a community hospital located at 416 Connable Avenue, Petoskey, Michigan.

2. Plaintiff, Gifford Medical Center, Inc., is a Vermont nonprofit corporation, which operates a community hospital located at 44 South Main Street, Randolph, Vermont.

3. Defendant, Health Net Federal Services, Inc. ("HNFS"), is a Delaware corporation with its principal place of business at 2025 Aerojet Road, Rancho Cardova, California. Among other things, HNFS financially underwrites health care services provided to

"CHAMPUS/TRICARE" (defined below) beneficiaries as set forth in 32 C.F.R. §199.3. As described on HNFS's website,[1] HNFS is the Government Operations Division of Health Net, Inc.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332(a)(1) and 28 U.S.C.A. § 1332(d)(2) because HNFS and Plaintiffs are citizens of different states, and the matter in controversy, exclusive of interest and costs, exceeds the sums specified by 28 U.S.C.A. § 1332(a)(1) and 28 U.S.C.A. § 1332(d)(2).

5. This Court has personal jurisdiction over HNFS because HNFS is incorporated in Delaware.

6. Venue is proper in this District pursuant to 28 U.S.C.A. § 1391(a)(1) because HNFS is subject to personal jurisdiction in Delaware.

## NATURE OF THE ACTION

7. HNFS financially underwrites health care services that are provided to beneficiaries of "TRICARE" (defined below) in the "TRICARE North Region" (defined below). Plaintiffs and the Class members are "Non-Network Participating Hospitals" (defined below) who have provided, and continue to provide, outpatient health care services ("outpatient services") to TRICARE beneficiaries in the TRICARE North Region. Plaintiffs and the Class members have duly submitted to HNFS claims for such outpatient services (the "Subject Claims," defined below).

8. Under the regulations that govern TRICARE, HNFS is required to pay Non-Network Participating Hospitals (such as Plaintiffs and the Class members) the "Facility Charges" (defined below) for the outpatient services provided to TRICARE beneficiaries in the

---

[1] https://www.hnfs.net/common/companyInfo/Health+Net+Federal+Services.htm

2

TRICARE North Region. Accordingly, Plaintiffs and the Class members expect to be paid by HNFS, and are entitled to be paid by HNFS, the Facility Charges for the Subject Claims.

9. However, notwithstanding this requirement, HNFS has failed to pay Plaintiffs and the Class members the Facility Charges for the Subject Claims. HNFS's failure to pay Plaintiffs and the Class members the Facility Charges for the Subject Claims, which has resulted in the underpayment of Plaintiffs and the Class members for services rendered to TRICARE beneficiaries, is improper under the TRICARE regulations and has given rise to the claims of Plaintiffs and the Class members for breach of contract implied-in-fact and unjust enrichment set forth herein. The amount of this underpayment to Plaintiffs and the Class members is believed to be in excess of $100 million.

## BACKGROUND

### *The Creation of CHAMPUS.*

10. In 1967, the U.S. Department of Defense ("DoD") established a health care program known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"). The beneficiaries of CHAMPUS are set forth in 32 C.F.R. § 199.3, and include retired armed forces members and their dependents.

11. As originally implemented, CHAMPUS was administered by the Secretary of Defense, who used claims processors, called "fiscal intermediaries," to process the claims for the health care services provided to CHAMPUS beneficiaries.

12. On information and belief, the contracts between the DoD and the fiscal intermediaries included a so-called "indemnification provision" whereby it was expressly provided that in any civil lawsuit arising out of the disbursement of funds under CHAMPUS, the United States and not the fiscal intermediary was the real party-in-interest. Consequently, the

fiscal intermediaries were not ultimately legally responsible for certain claims that arose out of the discharge of their duties under their contracts with the DoD.

### *The Creation of TRICARE.*

13. A transformation of CHAMPUS occurred in 1995 when the DoD established the TRICARE program, which is a managed health care program that covers the same group of beneficiaries that were originally covered by CHAMPUS. CHAMPUS and the TRICARE Program are referred to collectively herein as "TRICARE." TRICARE, which is in existence today, has always been administered through TRICARE Management Activity ("TMA") (previously known as the Office of CHAMPUS).

14. On information and belief, rather than using the prior CHAMPUS "fiscal intermediaries" to process the claims of beneficiaries, under TRICARE, managed care support contractors (each an "MCSC") are chosen by the DoD and TMA, through a competitive bidding and selection process, to financially underwrite the delivery of health care services to TRICARE beneficiaries, all pursuant to the regulations governing TRICARE. Defendant HNFS is such an MCSC.

15. On information and belief, since the inception of TRICARE, and at all times relevant to this complaint, the contracts between the MCSCs and the DoD have not included an "indemnification provision" similar to the indemnification provision that was included in the prior contracts with the "fiscal intermediaries" under CHAMPUS. Accordingly, on information and belief, unlike the "fiscal intermediaries" who previously processed claims under CHAMPUS, the MCSCs, like Defendant HNFS, are the real parties-in-interest and are themselves financially responsible and legally liable for the payment of claims arising out of the discharge of their duties under such contracts.

### *HNFS's Participation In TRICARE.*

16. On information and belief, when TRICARE was first implemented, in or about January 23, 1996 (effective November 28, 1995), the DoD entered into contracts (the "Prime Contracts") with seven MCSCs, including HNFS, who provided health care services for the then CHAMPUS beneficiaries in twelve TRICARE regions across the United States.

17. On information and belief, HNFS entered into three Prime Contracts on or about January 1996, which covered five of the twelve TRICARE regions: Region 6, which included Texas (excluding El Paso), Oklahoma, Arkansas, and Louisiana (excluding New Orleans); Region 9, which included Southern California, and Yuma, Arizona; Region 10, which included Northern California; Region 11, which included Northern Idaho, Washington, and Oregon; and Region 12, which included Alaska and Hawaii.

18. On information and belief, the Prime Contracts that HNFS entered into were based on a fixed price with monthly payments to HNFS. On information and belief, the Prime Contracts required HNFS to financially underwrite the cost of the health care services provided to TRICARE beneficiaries in HNFS's TRICARE regions.

19. On information and belief, on August 1, 2002, DoD and TMA issued a Solicitation, Offer and Award in connection with a plan to consolidate the twelve TRICARE regions into three TRICARE regions and to reduce the number of MCSCs servicing the TRICARE regions from seven to three.

20. On information and belief, HNFS responded to this request for proposal and, on August 21, 2003, was awarded a contract for TRICARE's new North Region (the "North Region Contract"), which was and is comprised of the following states: Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts,

Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Vermont, Virginia, West Virginia, Wisconsin, and small portions of Tennessee, Missouri and Iowa.

21. On information and belief, the North Region Contract provides, as did the Prime Contracts, for a fixed payment, which has a cumulative value of approximately $2.2 billion for the base year and five one-year option periods. This amount includes the target health care costs for the second through fifth option periods, which were to be negotiated prior to exercising each option. On information and belief, the North Region Contract for HNFS was phased in by TMA between June 2004 and November 2004, and HNFS began providing health care services thereunder in June or July 2004, and HNFS continues to do so today.

22. On information and belief, like the Prime Contracts, HNFS's North Region Contract does not include an "indemnification provision," as had been included in the prior contracts with the fiscal intermediaries under CHAMPUS, and thus HNFS is the financially responsible party and the real party-in-interest.

*HNFS's Provider Networks and HNFS's Payment for Services.*

23. On information and belief, under both the Prime Contracts and the North Region Contract, HNFS was and is responsible for establishing civilian provider networks in the TRICARE region or regions for which it was and is responsible. A "Provider" is an entity or person that provides health care, such as institutional providers, which include hospitals (such as Plaintiffs and the Class members), and non-institutional providers, which include physicians.

24. In addition, much like other commercial insurers who offer managed health care programs, HNFS was and is responsible for a variety of functions, including: operating TRICARE service centers; providing customer service to TRICARE beneficiaries enrolled in

6

TRICARE; providing administrative support, such as enrollment, disenrollment, and claims processing; and communicating and distributing educational information to beneficiaries and providers.

25. Providers who enter into contracts with HNFS, in order to participate in its TRICARE provider network, negotiate with HNFS to determine the rates at which they will be reimbursed by HNFS for health care services rendered to TRICARE beneficiaries in HNFS's region. Providers who have entered into contracts with an MCSC (such as HNFS) are referred to as "Network Providers."

26. On the other hand, Providers who do not enter into such written contracts with an MCSC (such as HNFS) are called "Non-Network Providers." Non-Network Providers, which can include hospitals, are either required or have the option of accepting assignment of benefits from TRICARE beneficiaries. Those Non-Network Providers that accept such assignment of benefits are referred to as "Non-Network Participating Providers." Hospitals that are Non-Network Participating Providers are referred to as "Non-Network Participating Hospitals."

27. Unlike Network Providers, Non-Network Participating Hospitals do not *negotiate* the rates at which they will be reimbursed by the MCSCs (such as HNFS) for the health care services rendered to TRICARE beneficiaries. Instead, the MCSCs are required to reimburse Non-Network Participating Hospitals for the provision of health care services to TRICARE beneficiaries strictly in accordance with the regulations that govern TRICARE. Plaintiffs and the Class members are all Non-Network Participating Hospitals.

*Payment to Non-Network Participating Hospitals for Outpatient Services.*

28. On October 24, 2005, a new TRICARE rule was published in the Federal Register at 70 FR 61371. This rule, which was made retroactive to August 1, 2003, amended 32 C.F.R. §

199.14 to add additional categories to subsection (a)(5) of that C.F.R., which subsection prescribes the payment for hospital outpatient services.

29. Included in subsection section (a)(5) is item (xi), entitled "facility charges". Specifically, subsection (xi) states as follows:

> (xi) *Facility charges*. TRICARE payments for hospital outpatient facility charges that would include the overhead costs of providing the outpatient service would be **paid as billed**. For the definition of facility charge, see § 199.2(b). (emphasis added).

30. 32 C.F.R. § 199.2(b) states: "The term 'facility charge' means the charge, either inpatient or outpatient, made by a hospital or other institutional provider to cover the overhead costs of providing the service. These costs would include building costs, *i.e.* depreciation and interest; staffing costs; drugs and supplies; and overhead costs, *i.e.*, utilities, housekeeping, maintenance, etc." (hereinafter referred to as "Facility Charges").

31. Consistent with the TRICARE regulations, in a letter to HNFS, dated April 14, 2006, a copy of which is attached hereto as Exhibit "A," the Office of the Assistant Secretary of Defense, Health Affairs, reiterated TMA's and DoD's longstanding policy that hospitals are to be reimbursed the full charges actually billed by them for the Facility Charges related to the outpatient services provided to TRICARE beneficiaries.

32. The TRICARE regulations dictate the manner in which a Non-Network Participating Hospital submits a claim to HNFS for outpatient services. The Class Representatives, and all the members of the Class, have duly billed their claims for outpatient services in the manner required by the applicable regulations.

33. However, contrary to (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the confirming letter sent to HNFS by DoD directly addressing this

issue, HNFS has instead arbitrarily declined to pay the Facility Charges for outpatient services provided by Non-Network Participating Hospitals as prescribed by 32 C.F.R. § 199.14(a)(5)(xi).

34.  HNFS's failure to pay Non-Network Participating Hospitals their Facility Charges is improper under the TRICARE regulations and, as set forth herein, results in an improper underpayment to Non-Network Participating Hospitals, including Plaintiffs and the members of the Class herein, for services rendered by them to TRICARE beneficiaries, and unjust enrichment of HNFS. Plaintiffs and the Class members, to their detriment, have been, and continue to be, underpaid for the outpatient services they have provided, and continue to provide, to TRICARE beneficiaries in HNFS's TRICARE region.

35.  Plaintiffs and the members of the Class are all hospitals who have provided outpatient services to TRICARE beneficiaries, and have duly submitted claims for outpatient services to HNFS that accrued at a time when the Plaintiffs and each Class member was a Non-Network Participating Hospital. Such claims are hereinafter referred to as the "Subject Claims."

36.  Consistent with (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the confirming letter sent to HNFS by the DoD directly addressing this issue, in rendering the outpatient services underlying the Subject Claims, Plaintiffs and the Class members, all of whom are or were Non-Network Participating Hospitals, reasonably expected to be reimbursed their Facility Charges for the Subject Claims at the full amounts billed.

37.  HNFS's failure to pay the Facility Charges for the Subject Claims, despite (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the confirming letter sent to HNFS by the DoD directly addressing this issue, is not appealable under the regulations governing TRICARE.

38. Nevertheless, Plaintiffs and their counsel have attempted, unsuccessfully, through numerous discussions and correspondence with HNFS, to cause HNFS to pay the Facility Charges for the Subject Claims. Throughout this dialogue, HNFS has been steadfast in its unwillingness to make such payment. Accordingly, the claims of the Plaintiffs and the Class members alleged herein are ripe for adjudication, as further efforts by Plaintiffs or any Class member to resolve this dispute without litigation would be futile.

## CLASS ALLEGATIONS

39. The Class shall be described as any hospital who:

   (a) duly submitted to HNFS a Subject Claim for outpatient services provided to a TRICARE beneficiary since August 1, 2003;

   (b) which Subject Claim accrued at a time when the hospital was a Non-Network Participating Hospital; and

   (c) for which Subject Claim the Facility Charges were not paid.

40. The Class is comprised of hundreds of hospitals who have duly submitted Subject Claims to HNFS. As a result, the members of the Class are so numerous and geographically dispersed that joinder of them for purposes of individual lawsuits is impracticable and not feasible.

41. Common questions of law and fact predominate among the Class members. Specifically, whether HNFS breached its (i) implied contractual and (ii) quasi-contractual obligations in failing to reimburse the Class members the Facility Charges for Subject Claims, and whether HNFS was unjustly enriched thereby.

42. The Class Representatives are Non-Network Participating Hospitals who have duly submitted Subject Claims to HNFS. The claims of the Class Representatives are typical of the claims of all of the Class members because the Class Representatives and the other Class

members have been damaged by the wrongful conduct of HNFS in the same material fashion, which is HNFS's failure to pay the Facility Charges for the Subject Claims.

43. The Class Representatives will fairly and adequately protect the interests of the Class because the interests of the Class Representatives coincide with those of the other Class members, *i.e.*, being made whole for HNFS's improper underpayment of the Subject Claims, and the Class Representatives' interests are not antagonistic to those of any absent Class members. In addition, the Class Representatives are represented by counsel who are experienced in the prosecution of these types of claims and in complex litigation.

44. Class treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Class treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, and to do so efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

45. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. HNFS has acted, or refused to act, on grounds which are generally applicable to the members of the Class, making final relief with respect to the Class appropriate.

46. Adjudications before this Court with respect to individual members of the Class, as opposed to on a class basis, would, as a practical matter, be dispositive of the interests of the other members of the Class who are not named parties to the action or could substantially impair or impede their ability to protect their interests.

47. The prosecutions of separate actions by individual members of the Class, as opposed to on a class basis, would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for both the Class members and HNFS. Such incompatible standards, inconsistent or varying adjudications on what, of necessity, would be the same essential facts, proof and legal theories, would create and allow to exist, unnecessarily, inconsistent and incompatible rights within the Class.

48. The failure to permit this case to proceed as a class action, would be contrary to the public policy of judicial economy in avoiding a multiplicity of similar actions.

49. The expense and burden of individual litigation, as opposed to on a class basis, would make it difficult for the members of the Class effectively to seek redress individually for HNFS's wrongful conduct.

50. The named Class Representatives are prepared to and will serve the proposed Class in a representative capacity with all of the obligations and duties attendant thereto.

## COUNT I

### BREACH OF CONTRACT IMPLIED-IN-FACT

51. Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 50 above as if fully set forth herein.

52. Based on the conduct of the parties, there existed a contract implied-in-fact that claims submitted by Plaintiffs and by Class members would be paid by HNFS pursuant to and consistent with: (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the confirming letter sent to HNFS by DoD directly addressing this issue; specifically, that Facility Charges duly submitted would be paid by HNFS in full as billed.

53. Plaintiffs and Class members rendered the outpatient services underlying the Subject Claims, and duly submitted the Subject Claims to HNFS for payment, reasonably relying upon and expecting to be reimbursed by HNFS, pursuant to (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the confirming letter sent to HNFS by DoD directly addressing this issue, for the Facility Charges for the Subject Claims as billed.

54. However, HNFS has failed, and continues to fail, to pay the Facility Charges for the Subject Claims. In so acting, HNFS breached a contract implied-in-fact in respect of which the Plaintiffs and each Class member has suffered damages.

55. Plaintiffs and the Class members are entitled to be paid by HNFS the Facility Charges for the Subject Claims, and HNFS's failure to so reimburse the Plaintiffs and the Class members constitutes a breach of contract implied-in-fact that has damaged Plaintiffs and the Class members in an amount to be determined at trial, but which is, at a minimum, in the aggregate, in an amount in excess of $100 million.

## COUNT II

### BREACH OF QUASI-CONTRACT/UNJUST ENRICHMENT

56. Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

57. Plaintiffs and members of the Class have duly submitted to HNFS Subject Claims.

58. HNFS benefited from the outpatient services rendered by Plaintiffs and the Class members that resulted in and are reflected by the Subject Claims.

59. However, HNFS failed to pay, and continues to fail to pay the Facility Charges for the Subject Claims. Consequently, Plaintiffs and the Class members have been, and will

continue to be, underpaid, to their detriment, for the outpatient services they have provided, and continue to provide, to TRICARE beneficiaries.

60. The benefit conferred upon HNFS from such improper underpayment of the Subject Claims is unjust, constitutes an unjust enrichment, and has damaged Plaintiffs and the Class members and has unjustly enriched HNFS in an amount to be determined at trial, but which is, at a minimum, in the aggregate, in an amount in excess of $100 million.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs and Class Representatives, for themselves and on behalf of all other similarly situated class members, pray for the following judgment and relief against HNFS as follows:

1. For restitution, compensatory, general, special, statutory, and other damages, in an amount to be determined according to the proofs presented during the course of trial, plus statutory interest.

2. For costs and attorneys' fees.

3. For such other relief as the Court deems necessary, just and appropriate under the circumstances.

Dated: January 19, 2007

DUANE MORRIS LLP

/s/ Matt Neiderman
Matt Neiderman (Del. Bar No. 4018)
1100 N. Market St., Suite 1200
Wilmington, Delaware 19801
302.657.4900
302.657.4901 *fax*
mneiderman@duanemorris.com

John J. Soroko
Seth A. Goldberg
DUANE MORRIS LLP
30 South 17th St.
Philadelphia, PA 19103
215.979.1000
215.979.1020 *fax*
jsoroko@duanemorris.com
sgoldberg@duanemorris.com

Michael R. Gottfried
Patricia R. Rich
DUANE MORRIS LLP
470 Atlantic Avenue
Boston, MA 02210
617.289.9200
617.289.9201 *fax*
mgottfried@duanemorris.com
prich@duanemorris.com

Gregory A. Brodek
DUANE MORRIS LLP
88 Hammond Street, Suite 500
Bangor, ME 04401
207-262-5400
gbrodek@duanemorris.com

*Attorneys for Plaintiffs Northern Michigan Hospitals, Inc., and Gifford Medical Center, Inc., for themselves and on behalf of all other similarly situated class members*

DM1\742124.1

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
NORTHERN MICHIGAN HOSPITALS, INC. and
GIFFORD MEDICAL CENTER, INC.

**DEFENDANTS**
HEALTH NET FEDERAL SERVICES, INC.

(b) County of Residence of First Listed Plaintiff  **Emmet County, Michigan**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
SEE ATTACHMENT

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury- Med. Malpractice | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury- Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 830 Patent | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | [ ] 840 Trademark | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | | | [ ] 810 Selective Service |
| [x] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | | | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/ Disabilities Employment | [ ] 540 Mandamus & Other | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice Act |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/ Disabilities | [ ] 550 Civil Rights | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Conditions | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 USC §1332, 28 USC §1391

Brief description of cause: Unjust enrichment

## VII. REQUESTED IN COMPLAINT:
[x] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ $100 million
CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
JUDGE _____
DOCKET NUMBER _____

DATE January 19, 2007
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## Attachment to Civil Cover Sheet

**I(c). Plaintiffs' Attorneys**

Daniel V. Folt
Matt Neiderman
DUANE MORRIS LLP
1100 N. Market St., Suite 1200
Wilmington, Delaware 19801
302.657.4900
302.657.4901 *fax*
mneiderman@duanemorris.com
dfolt@duanemorris.com

Gregory A. Brodek
DUANE MORRIS LLP
88 Hammond Street, Suite 500
Bangor, ME 04401
207-262-5400
gbrodek@duanemorris.com

John J. Soroko
Seth A. Goldberg
DUANE MORRIS LLP
30 South 17th St.
Philadelphia, PA 19103
215.979.1000
215.979.1020 *fax*
jsoroko@duanemorris.com
sgoldberg@duanemorris.com

Michael R. Gottfried
Patricia R. Rich
DUANE MORRIS LLP
470 Atlantic Avenue
Boston, MA 02210
617.289.9200
617.289.9201 *fax*
mgottfried@duanemorris.com
prich@duanemorris.com

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ___0 7 - 3 9___

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___2___ COPIES OF AO FORM 85.

___1/19/07___          ___Ben Lougheed  Parcels Inc.___
(Date forms issued)          (Signature of Party or their Representative)

___Ben Lougheed  Parcels Inc.___
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action