**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC. and GIFFORD MEDICAL CENTER, INC., *for themselves and on behalf of all other similarly situated class members,* | ) ) ) ) ) ) ) |  |
|  | ) | Civil Action No. 07-39 (GMS) |
| Plaintiffs, | ) ) | JURY TRIAL DEMANDED |
|  | ) |  |
| v. | ) ) |  |
| HEALTH NET FEDERAL SERVICES, LLC, (f/k/a HEALTH NET FEDERAL SERVICES, INC.), | ) ) ) ) |  |
| Defendant. | ) ) |  |

## APPENDIX TO HEALTH NET FEDERAL SERVICES, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

OF COUNSEL:

CROWELL & MORING LLP
Arthur N. Lerner
Kathleen Taylor Sooy
Christopher Flynn
Tracy A. Roman
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500 – Telephone
(202) 628-5116 – Facsimile

Dated: March 15, 2007

783804v1 / 31173

Richard L. Horwitz (Del. Bar 2246)
Jennifer Gimler Brady (Del. Bar. 2874)
Jennifer C. Wasson (Del. Bar 4933)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
rhorwitz@potteranderson.com – Email
jbrady@potteranderson.com – Email

*Attorneys for Defendant Health Net Federal Services, LLC*

# TABLE OF CONTENTS

Page(s)

Department of Defense Directive No. 5136.12 (May 31, 2001)...................................................... A1

Declaration of Pamela A. Bohall dated March 15, 2007 ............................................................ A15

TRICARE Reimbursement Manual 6010.55-M, Chapter 1, Section 1........................................ A19

TRICARE Operations Manual 6010.51-M, Chapter 3, Section 2 .............................................. A20

TRICARE Operations Manual 6010.51-M, Chapter 3, Section 6 .............................................. A25

TRICARE Operations Manual 6010.51-M, Chapter 5, Section 1 .............................................. A26

TRICARE Operations Manual 6010.51-M, Chapter 12, Section 8 ............................................ A30

TRICARE Operations Manual 6010.51-M, Chapter 13, Section 2 ............................................ A33

TRICARE Operations Manual 6010.51-M, Chapter 13, Section 3 ............................................ A42

TRICARE Operations Manual 6010.51-M, Chapter 13, Section 5 ............................................ A59



Department of Defense
# DIRECTIVE

NUMBER 5136.12
May 31, 2001
Certified Current as of November 21, 2003

DA&M

SUBJECT: TRICARE Management Activity (TMA)

References: (a) Title 10, United States Code
        (b) DoD Directive 5136.11, "Defense Medical Programs Activity,"
           October 26, 1992 (hereby canceled)
        (c) DoD Directive 5105.46, "TRICARE Support Office," July 31, 1997
           (hereby canceled)
        (d) DoD Directive 5136.1, "Assistant Secretary of Defense for Health
           Affairs (ASD(HA))," May 27, 1994
        (e) through (i), see enclosure 1

## 1. PURPOSE

Pursuant to the authority vested in the Secretary of Defense under reference (a) this
Directive establishes the TRICARE Management Activity (TMA) with the mission,
organization, responsibilities, functions, relationships, and authorities as described
herein. The TMA replaces the Defense Medical Programs Activity (reference (b)), and
the TRICARE Support Office (TSO) (reference (c)), which are hereby disestablished.
All references in DoD Directive 5136.1 (reference (d)) or any other DoD issuance
(except the Defense Federal Acquisition Regulation Supplement (DFARS)) (reference
(e)) to active functions or authorities of the "Office of CHAMPUS" or "OCHAMPUS"
shall be understood to be references to functions and authorities of the TMA (successor
to TSO, which was previously known as the Office of CHAMPUS). All references in
the DFARS to active functions or authorities of the "Office of CHAMPUS" shall be
understood to be references to the functions and authorities of the TMA Directorate of
Acquisition Management and Support.

1

**A1**

*DODD 5136.12, May 31, 2001*

## 2. APPLICABILITY

This Directive applies to the Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the Department of Defense (hereafter referred to collectively as "the DoD Components"). This Directive also applies to the Coast Guard when it is not operating as a Military Service in the Navy, the Commissioned Corps of the Public Health Service, and the National Oceanic and Atmospheric Administration under agreements with the Departments of Transportation and Health and Human Services.

## 3. DEFINITIONS

Terms used in this Directive are defined in enclosure 2.

## 4. MISSION

The mission of the TMA is to:

4.1. Manage TRICARE;

4.2. Manage and execute the Defense Health Program (DHP) Appropriation and the DoD Unified Medical Program; and

4.3. Support the Uniformed Services in implementation of the TRICARE Program and the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS).

## 5. ORGANIZATION

The TMA is hereby established as a DoD Field Activity of the Under Secretary of Defense for Personnel and Readiness (USD(P&R)) and shall operate under the authority, direction, and control of the Assistant Secretary of Defense for Health Affairs (ASD(HA)). It shall consist of:

5.1. A Director appointed by and reporting to the ASD(HA).

5.2. The Directorate of Acquisition Management and Support (AM&S), which shall operate as the primary contracting activity in support of the TMA mission.

2

A2

*DODD 5136.12, May 31, 2001*

5.3. Such additional subordinate organizational elements as are established by the Director, TMA, within authorized resources.

## 6. RESPONSIBILITIES AND FUNCTIONS

6.1. The Assistant Secretary of Defense for Health Affairs, under the Under Secretary of Defense for Personnel and Readiness, in accordance with DoD Directive 5136.1 (reference (d)), shall:

6.1.1. Execute the Department's medical mission, which is to provide, and to maintain readiness to provide, medical services and support to members of the Armed Forces during military operations, and to provide medical services and support to members of the Armed Forces, their dependents, and others entitled to DoD medical care.

6.1.2. Exercise authority, direction, and control over all DoD medical and dental personnel, facilities, programs, funding, and other resources within the Department of Defense.

6.2. The Director, TMA, under the authority, direction, and control of the ASD(HA), shall:

6.2.1. Organize, direct, and manage the TMA and all assigned resources.

6.2.2. Manage the execution of policy issued by the ASD(HA), pursuant to reference (d), in the administration of all DoD medical and dental programs authorized by reference (a). Issue program direction for the execution of policy within the DoD Military Health System (MHS) to the Surgeons General of the Army, Navy, and Air Force. When issued to the Military Departments, program direction shall be transmitted through the Secretaries of those Departments.

6.2.3. Serve as the program manager for TRICARE health and medical resources, supervising and administering TRICARE programs, funding, and other resources within the Department of Defense. The Director, however, may not direct a change in the structure of the chain of command within a Military Department with respect to medical personnel and may not direct a change in the structure of the chain of command with respect to medical personnel assigned to that command.

6.2.4. Prepare and submit, together with and pursuant to policy guidance of the ASD(HA) and with Service input, for the Department's planning, programming, and

budgeting system (PPBS), the DoD Unified Medical Program, and budget to provide resources for all health and medical activities within the Department of Defense. Support the ASD(HA)'s presentation and justification of the DoD Unified Medical Program, and budget throughout the PPBS process, including representations before the Congress.

6.2.5. Manage and execute the DHP and DoD Unified Medical Program accounts, including Military Department execution of allocated funds, in accordance with instructions issued by the ASD(HA), fiscal guidance issued by the Under Secretary of Defense (Comptroller), and applicable law.

6.2.6. Exercise oversight, management, and program direction of information management/information technology systems and programs, as necessary, to manage TRICARE and support the ASD(HA) in administration of all medical and dental programs authorized by reference (a).

6.2.7. Develop such technical guidance, regulations, and instructions as required to manage TRICARE and to support the ASD(HA) in administration of all medical and dental programs authorized by reference (a).

6.2.8. Support the conduct of studies and research activities in the healthcare area to assist the ASD(HA), and others, as necessary, in support of their responsibilities and to support the management and implementation of health policies for the MHS issued by the ASD(HA).

6.2.9. Contract for managed care support, dental support, other health programs, claims processing services, studies and research support, supplies, equipment, and other services necessary to carry out the TRICARE and support the MHS.

6.2.10. Collect, maintain, and analyze data appropriate for the preparation of budgets, fiscal planning, and as otherwise needed to carry out TRICARE.

6.2.11. Provide beneficiary and customer support and information services.

6.2.12. Exercise oversight and program direction over each TRICARE Regional Office (TRO), to include defining the roles, functions, and responsibilities of the Lead Agents, to ensure consistent implementation and management of MHS policies and the uniform health benefit.

6.2.13. Issue, through the head of the contracting activity (HCA), administrative contracting officer warrants, as the HCA deems appropriate, to TRO staff pursuant to a memorandum of agreement entered into between the HCA and each TRO Lead Agent for administration of TRICARE contracts

6.2.14. Provide comments and recommendations to the appropriate official in the evaluation and rating of each TRO Lead Agent, consistent with applicable Service regulations.

6.2.15. Perform such other functions as the ASD(HA) may prescribe.

6.3. The <u>Secretaries of the Military Departments</u> shall:

6.3.1. Establish and staff a TRO for geographical areas designated by the ASD(HA). The TRO shall be provided the authority and staff necessary to ensure consistent implementation and management of MHS policies and the uniform health benefit within the geographical area.

6.3.1.1. The TRO shall be headed by a Lead Agent (a senior military officer) who shall be the focal point for health services within the geographical region with responsibility for development and execution of an integrated plan for the delivery of healthcare. While the Lead Agent shall be under the operational control of, and be responsible to, his/her respective Military Department, the Lead Agent shall be subject to the oversight and program direction of the TMA Director in the implementation and management of MHS policies and the uniform health benefit.

6.3.1.2. A Lead Agent Director, operating under the authority, direction, and control of the TRO Lead Agent, shall manage the TRO. The Lead Agent Director shall be responsible, in collaboration with Military Treatment Facility commanders, for development and execution of an integrated plan for the delivery of healthcare within the geographical region. Selection and appointment of each TRO Lead Agent Director shall be made in coordination with and approval of the Director, TMA.

6.3.2. Provide, on a reimbursable basis, such facilities, physical security, logistics, and administrative support as required for effective TMA operations. Reimbursements for inter-Service support and services shall be made in accordance with DoD Instruction 4000.19 and DoD Directive 1400.16 (references (f) and (g)).

6.4. The <u>Director, Defense Legal Services Agency,</u> shall provide legal advice and services for the TMA.

5

7. RELATIONSHIPS

7.1. The Director, TMA, shall:

7.1.1. Ensure that the DoD Components are kept fully informed concerning TMA activities with which they have collateral or related functions.

7.1.2. Use established facilities and services of the Department of Defense and other Federal Agencies, whenever practicable, to avoid duplication and to achieve an appropriate balance of modernization, efficiency, and economy of operations.

7.1.3. Maintain appropriate liaison, consultation and coordination with other governmental and non-governmental agencies, as required, to exchange information and advice on programs in the fields of assigned responsibility.

7.1.4. Work collaboratively with the Military Departments, through the Surgeons General, to ensure an integrated and standardized TRICARE healthcare delivery system.

7.2. The Heads of DoD Components shall coordinate with the Director, TMA, as appropriate, on matters relating to TMA operations, functions, and responsibilities.

8. AUTHORITIES

8.1. The Director, TMA, is specifically delegated authority to:

8.1.1. Obtain from other DoD Components, consistent with the policies and criteria of the DoD Directive 8910.1 (reference (h)), information, advice, and assistance necessary to carry out TMA programs and activities.

8.1.2. Communicate directly with appropriate representatives of the DoD Components, other Executive Departments and Agencies, and members of the public, as appropriate, on matters related to TMA programs and activities. Communications to the Commanders of the Combatant Commands shall be transmitted by the ASD(HA), through the Chairman of the Joint Chiefs of Staff.

8.1.3. Exercise oversight and management of Executive Agents designated to perform TRICARE activities. Exercise oversight, program direction, and funding execution of Executive Agents designated to perform activities related to TRICARE activities.

*DODD 5136.12, May 31, 2001*

8.1.4. Exercise the administrative authorities contained in enclosure 3.

## 9. ADMINISTRATION

9.1. The Secretaries of the Military Departments shall assign military personnel to the TMA in accordance with approved authorizations and established procedures for assignment to joint duty.

9.2. Administrative support for Headquarters, TMA and the TMA field elements may be provided by the DoD Components through inter-Service support agreements in accordance with DoD Instruction 4000.19 and DoD Directive 1400.16 (references (f) and (g)).

## 10. EFFECTIVE DATE

This Directive is effective immediately.

Paul Wolfowitz
Deputy Secretary of Defense

Enclosures - 3
    E1. Reference, continued
    E2. Definitions
    E3. Delegations of Authority

7

A7

*DODD 5136.12, May 31, 2001*

E1. ENCLOSURE 1

REFERENCES, continued

(e) Defense Federal Acquisition Regulation Supplement (current edition)
(f) DoD Instruction 4000.19, "Interservice and Intergovernmental Support," August 9, 1995
(g) DoD Directive 1400.16, "Inter-departmental Civilian Personnel Administration Support," October 30, 1970
(h) DoD Directive 8910.1, "Management and Control of Information Requirements," June 11, 1993
(i) Title 32, Code of Federal Regulations, Part 199, "Civilian Health and Medical Programs of the Uniformed Services (CHAMPUS)"

ENCLOSURE 1

A8

DODD 5136.12, May 31, 2001

## E2. ENCLOSURE 2

### DEFINITIONS

E2.1.1.  Civilian Health and Medical Program of the Uniformed Services (CHAMPUS).  The DoD civilian sector healthcare program operated under the authority of 32 CFR Part 199 (reference (i)).

E2.1.2.  TRICARE.  The DoD medical and dental programs operating pursuant to chapter 55 of 10 U.S.C. (reference (a)), under which medical and dental services are provided to DoD healthcare beneficiaries.  (The term "TRICARE" includes all activities described in the definition of the term "TRICARE Program" at 10 U.S.C. 1072(7) (reference (a)).

E2.1.3.  Armed Forces.  The Army, the Navy, the Air Force, the Marine Corps, and the Coast Guard.

E2.1.4.  Uniformed Services.  Includes the Armed Forces, the Commissioned Corps of the National Oceanic and Atmospheric Administration, and the Commissioned Corps of the Public Health Service.

E2.1.5.  DoD Military Health System (MHS).  The DoD medical and dental programs, personnel, facilities, and other assets operating pursuant to chapter 55 of 10 U.S.C. (reference (a)), by which the Department of Defense provides:

E2.1.5.1.  Healthcare services and support to the Armed Forces during military operations, and

E2.1.5.2.  Healthcare services and support under TRICARE to members of the Armed Forces, their family members, and others entitled to DoD medical care.

E2.1.6.  Defense Health Program (DHP) Appropriation.  A single appropriation consisting of operation and maintenance and other procurement funds designed to finance the non-military personnel requirements of the MHS.

E2.1.7.  DoD Unified Medical Program.  A combination of the DHP appropriation, the medical military construction appropriation, and the military personnel funds to reimburse the military personnel appropriations of the three Military Departments for military personnel supporting the MHS.

*DODD 5136.12, May 31, 2001*

E2.1.8.  TRICARE Regional Office (TRO).   The office charged with ensuring consistent implementation and management of MHS policies and the uniform health benefit within a geographical area designated by the ASD(HA).

E2.1.9.  Director, TMA.  The official appointed by, and reporting to, the ASD(HA), with responsibilities, functions, and authorities set forth in this Charter.  The term "Director" includes any other recognized organizational title, such as "Executive Director."

ENCLOSURE 2

**A10**

*DODD 5136.12, May 31, 2001*

## E3.  ENCLOSURE 3

## DELEGATIONS OF AUTHORITY

E3.1.1.  Pursuant to the authority vested in the Secretary of Defense, and subject to the authority, direction, and control of the Secretary of Defense, the USD(P&R), the ASD(HA), and in accordance with DoD policies, Directives, and Instructions, the Director, TMA, or in the absence of the Director, the person acting for the Director, is delegated authority as required in the administration and operation of the TMA to:

E3.1.1.1.  Exercise the powers vested in the Secretary of Defense by 5 U.S.C. 301, 302(b), 3101, 4103, 4302, and 5107 on the employment, direction, and general administration of TMA civilian personnel.

E3.1.1.2.  Fix rates of pay of wage-rate employees exempted from the Classification Act of 1949 by 5 U.S.C. 5102 on the basis of rates established under the Federal Wage System.  In fixing such rates, the Director, TMA, shall follow the wage schedule established by the DoD Wage Fixing Authority.

E3.1.1.3.  Administer oaths of office to those entering the Executive Branch of the Federal Government or any other oath required by law in connection with employment therein, in accordance with 5 U.S.C. 2903, and designate in writing, as may be necessary, officers and employees of the TMA to perform this function.

E3.1.1.4.  Establish a TMA Incentive Awards Board, and pay cash awards to, and incur necessary expenses for, the honorary recognition of civilian employees of the Government whose suggestions, inventions, superior accomplishments, or other personal efforts, including special acts or services, benefit or affect the TMA, in accordance with 5 U.S.C. 4503, Office of Personnel Management (OPM) regulations, and DoD 1400.25-M, Chapter 400, Subchapter 451.

E3.1.1.5.  Maintain an official seal and attest to the authenticity of official TMA records under that seal.

E3.1.1.6.  Establish advisory committees and employ temporary or intermittent experts or consultants, as approved by the Secretary of Defense, for the performance of TMA functions consistent with 10 U.S.C. 173; 5 U.S.C. 3109(b); and DoD Directive 5105.4.

E3.1.1.7.  In accordance with Executive Order 10450, "Security Requirements for Government Employment," April 27, 1953; Executive Order 12333, "United States

ENCLOSURE 3

**A11**

Intelligence Activities," December 4, 1981; and Executive Order 12968, "Access to Classified Information," August 4, 1995; and DoD Directive 5200.2, as appropriate:

E3.1.1.7.1.  Designate any position in the TMA as a "sensitive" position.

E3.1.1.7.2.  Authorize, in case of emergency, the appointment of a person to a sensitive position in the TMA for a limited period of time and for whom a full field investigation or other appropriate investigation, including National Agency Check, has not been completed.

E3.1.1.7.3.  Initiate personnel security investigations and, if necessary, in the interest of national security, suspend a security clearance for personnel assigned, detailed to, or employed by the TMA.  Any action under this paragraph shall be taken in accordance with procedures prescribed in DoD 5200.2-R.

E3.1.1.8.  Act as the agent for the collection and payment of employment taxes imposed by Chapter 21 of the Internal Revenue Code of 1954, as amended; and, as such agent, make all determinations and certifications required or provided for under the Internal Revenue Code of 1954, as amended (26 U.S.C. 3122), and the "Social Security Act," as amended (42 U.S.C. 405(p)(1) and 405(p)(2)), with respect to TMA employees.

E3.1.1.9.  Authorize and approve:

E3.1.1.9.1.  Temporary duty travel for military personnel assigned or detailed to the TMA in accordance with Joint Federal Travel Regulations, Volume 1.

E3.1.1.9.2.  Travel for TMA civilian personnel in accordance with Joint Travel Regulations, Volume 2.

E3.1.1.9.3.  Invitational travel to non-DoD personnel whose consultative, advisory, or other highly specialized technical services are required in a capacity that is directly related to, or in connection with, TMA activities, in accordance with Joint Travel Regulations, Volume 2.

E3.1.1.9.4.  Overtime work for TMA civilian personnel in accordance with 5 U.S.C. Chapter 55, Subchapter V, and applicable OPM regulations.

E3.1.1.10.  Approve the expenditure of funds available for travel by military personnel assigned or detailed to the TMA for expenses incident to attendance at meetings of technical, scientific, professional, or other similar organizations in such instances when the approval of the Secretary of Defense, or designee, is required by 37 U.S.C. 412, and 5 U.S.C. 4110 and 4111.

*DODD 5136.12, May 31, 2001*

E3.1.1.11. Develop, establish, and maintain an active and continuing Records Management Program, pursuant to 44 U.S.C. 3102 and DoD Directive 5015.2.

E3.1.1.12. Utilize the Government Purchase Card for making micro-purchases of material and services, other than personal services, for the TMA, when it is determined more advantageous and consistent with the best interests of the Government.

E3.1.1.13. Authorize the publication of advertisements, notices, or proposals in newspapers, magazines, or other public periodicals, as required for the effective administration and operation of the TMA, consistent with 44 U.S.C. 3702.

E3.1.1.14. Establish and maintain, for the functions assigned, an appropriate publications system for the promulgation of common supply and Service regulations, instructions, and reference documents, and changes thereto, pursuant to the policies and procedures prescribed in DoD 5025.1-M.

E3.1.1.15. Enter into support and service agreements with the Military Departments, other DoD Components, or other Government Agencies, as required, for the effective performance of TMA functions and responsibilities.

E3.1.1.16. Enter into and administer contracts, through the TMA Directorate of Acquisition Management and Support or through a Military Department, a DoD contract administration services component, or other Federal Agency, as appropriate, for supplies, equipment, and services required to accomplish the mission of the TMA. The Director, AM&S, shall be the head of the contracting activity. To the extent that any law or Executive order specifically limits the exercise of such authority to persons at the Secretarial level of the Department, such authority shall be exercised by the appropriate Under Secretary or Assistant Secretary of Defense.

E3.1.1.17. Establish and maintain appropriate property accounts for the TMA and appoint Boards of Survey, approve reports of survey, relieve personal liability, and drop accountability for TMA property contained in the authorized property accounts that has been lost, damaged, stolen, destroyed, or otherwise rendered unserviceable, in accordance with applicable laws and regulations.

E3.1.1.18. Promulgate the necessary security regulations for the protection of property and places under the jurisdiction of the Director, TMA, pursuant to DoD Directive 5200.8.

ENCLOSURE 3

A13

*DODD 5136.12, May 31, 2001*

E3.1.1.19. Lease property under the control of the TMA, under terms that will promote the national defense or that will be in the public interest, pursuant to 10 U.S.C. 2667.

E3.1.1.20. Exercise the authority delegated to the Secretary of Defense by the Administrator of the General Services Administration for the disposal of surplus personal property.

E3.1.2. The Director, TMA, may redelegate these authorities as appropriate, with the approval of the ASD(HA) and in writing, except as otherwise specifically indicated above or as otherwise provided by law or regulation.

ENCLOSURE 3

A14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC.<br>· and<br>GIFFORD MEDICAL CENTER, INC.<br>*for themselves and on behalf of all other*<br>*similarly situated class members,*<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH NET FEDERAL SERVICES, LLC,<br>(f/k/a HEALTH NET FEDERAL<br>SERVICES, INC.),<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07-39<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF PAMELA A. BOHALL

I, Pamela A. Bohall, declare as follows:

1.      I am employed by Health Net Federal Services, LLC ("Health Net") and currently

hold the position of Vice President, Claims Administration and Enrollment Services. I have held

this position for over eight years. Health Net is the TRICARE Managed Care Support

Contractor in the North Region and is responsible for, among other things, processing healthcare

claims for services rendered to TRICARE beneficiaries in that region.

2.      My duties as Vice President, Claims Administration and Enrollment Services,

include oversight and management of claims payments to non-network participating providers in

the TRICARE program. In fulfilling these duties, I am intimately familiar with the process by

which claims for services rendered by non-network participating hospitals to TRICARE

beneficiaries are adjudicated. I am likewise familiar with the method by which Health Net is

reimbursed by the TRICARE Management Authority ("TMA"), which operates under the direction of the Department of Defense, for the payments to providers for healthcare services provided to TRICARE beneficiaries.

3.    When paying claims for healthcare services provided by non-network participating providers, Health Net applies the rules and payment rates that have been established by TMA. These include rules for determining whether outpatient services provided by non-network participating hospitals must be paid an allowable charge or on some other basis (e.g., on the basis of "Facility Charges"). It is my understanding that Health Net must pay non-network participating providers in accordance with the TMA payment regulations.

4.    A high percentage of claims are "auto-adjudicated," which means that the payment rules are programmed into the claims adjudication system and applied by the system through electronic claims processing. Changes to the reimbursement methodology for any class of services would require Health Net to change or re-program the claims adjudication system. To the best of my knowledge, Health Net has never implemented a change to its claims adjudication system or software that would alter the payment rate or methodology for the services of non-network participating providers without TMA direction or approval. For instance, Health Net annually updates payment rates only upon the express direction of TMA.

5.    Health Net applies the TMA reimbursement levels on a uniform basis regardless of the type of TRICARE beneficiary who receives services or the source of the payment. Funds used to pay claims for outpatient hospital services rendered to active duty military personnel are drawn directly from the Federal Reserve. Funds used to pay claims for outpatient hospital services provided to dependents and other TRICARE eligible individuals, on the other hand, come from Health Net, and Health Net is then reimbursed within days by the TMA. Both types

2

of claims are paid in the exact same manner regardless of whether the monies come directly from the Federal Reserve or from Health Net, in which case Health Net is then reimbursed by the TMA.

6.      Following the award to Health Net of the current MCS Contract for the North Region, TMA benchmarked the accuracy of Health Net's claims processing system for TRICARE claims. Health Net passed the benchmarks established by the TMA. Prior to the certification, TMA performed an on-site audit of Health Net's payment processing to ensure its accuracy. At no time during the certification process did TMA state that Health Net's system was incorrectly processing claims for non-network outpatient hospital services, such that Health Net was improperly denying payment for "Facility Charges," as described in 32 C.F.R. § 199.14(a)(5)(xi).

7.      Since the effective date of Health Net's MCS Contract, TMA has conducted quarterly and annual audits of Health Net's claims processing of TRICARE claims. Those audits included the review and analysis of representative samples of claims for services rendered to TRICARE beneficiaries, including outpatient hospital claims submitted by non-network participating hospitals such as the Plaintiffs. Indeed, non-network claims comprise nearly forty percent (40%) of the TRICARE claims processed by Health Net. Moreover, if TMA finds errors in claims adjudication, it requires Health Net to reprocess claims that the system has adjudicated incorrectly, and to make such adjustments as are necessary to ensure that future claims are processed correctly. Despite the fact that these regular audits consider, among other things, the payment of outpatient hospital claims submitted by non-network participating hospitals, Health Net has never been informed by the TMA that Health Net is incorrectly processing claims such

3

that it has improperly denied payment for Facility Charges as defined in 32 C.F.R.

§ 199.14(a)(5)(xi).

8.    Moreover, I have been a party to conversations with the TMA regarding Health

Net's interpretation of TMA payment guidance and the proper reimbursement of facility claims

for services provided in an outpatient hospital setting.  During those conversations, the TMA has

validated Health Net's approach to paying outpatient hospital claims and has never stated to

Health Net that it has processed and paid claims incorrectly under the Facility Charge regulation

identified above.

I swear under penalty of perjury that the foregoing is true and accurate to the best of my

knowledge and belief.

_____
Pamela A. Bohall

Dated:  March *15*, 2007

DC\WDMS: 297778x2

4

A18

TRICARE REIMBURSEMENT MANUAL 6010.55-M, AUGUST 1, 2002
GENERAL

CHAPTER 1
SECTION 1

# NETWORK PROVIDER REIMBURSEMENT

ISSUE DATE:   July 1, 1998
AUTHORITY:   32 CFR 199.17(p)(6)

I.   ISSUE

How are network providers to be reimbursed under TRICARE?

II.   POLICY

A.   TRICARE contractors must make timely and accurate payments to all network providers of care in accordance with the terms and conditions of their contracts. Where required the beneficiary deductibles and cost-shares must be collected and accrued toward the catastrophic cap. Beneficiaries cannot be exempt from payment of deductibles (except for beneficiaries enrolled in TRICARE Prime and claims for prescription drugs obtained from a network pharmacy) and cost-shares/co-payments.

B.   Network provider reimbursement is neither subject to, nor restricted by, amounts that would have otherwise been paid under standard TRICARE reimbursement methodologies outlined in this manual, (i.e., those reimbursement methodologies applicable only to non-network providers). Managed Care Support (MCS) contractors are free to establish alternative reimbursement systems, except capitation payments, that will ensure adequate beneficiary access to quality network providers. These alternative reimbursement systems may include, but are not restricted to: negotiated or discounted fee schedules; usual and customary fees; salary, flat fee, global or profit/risk sharing arrangements for non-institutional providers; and per diems for institutional providers.

C.   All claim payments for individual services (whether network or non-network) are subject to the maximum payment methodologies set forth by Federal Law and outlined in this manual. Health care dollars may not be used to pay amounts in excess of these maximum payment methodologies.

NOTE:   The specific allowable amount may vary based on beneficiary status (e.g., participation in demonstration) or exact geographical location.

- END -

A19

CHAPTER 3
SECTION 2

# FINANCING MECHANISMS

**1.0.   GENERAL**

**1.1.**    The Department of Treasury's Automated Standard Application for Payment System (ASAP), along with FEDWIRE provide a mechanism for payment of contractor's costs for health care services received by TRICARE beneficiaries. After authorization by TMA, these systems allow the contractor to draw cash directly from the Federal Reserve Bank (Fed) to cover payments as they clear the contractor's bank account. ASAP is used by the Treasure, the Fed and TMA to verify the authorization to make draws and to track transactions made by the contractor's bank. FEDWIRE is used by the contractor's bank to actually draw funds from the Fed.

**1.2.**    All transactions in these bank accounts must be valid and justified. The contractor shall acquire the proper TMA, CRM authorization code prior to disbursing any funds from a non-financially underwritten bank account. Any unreported/unauthorized disbursements identified by TMA will be subject to immediate payment offset based on the contractor's taxpayer identification number (TIN) associated with the ASAP account number from which the funds were disbursed.

**2.0.   ESTABLISHING BANK ACCOUNT**

**2.1.**    The contractor shall establish a bank account with a commercial bank that has Fedwire capability based upon Treasury requirements at the time.

**2.2.**    The contractor shall submit bank information to TMA, Contract Resource Management Directorate (CRM) not later than 60 calendar days prior to the beginning of processing claims on a new account. The information shall include:

- Name of Bank
- Overnight mail address
- American Banking Association (ABA) routing number
- Taxpayer Identification Number (TIN) (must be the same TIN used for payment)
- Contractor's bank account number
- Individual point of contact at the bank and an alternate, including their phone numbers, fax numbers and e-mail addresses
- Individual point of contact at the contractor including his/her phone number, fax number and e-mail address

**2.3.**    The number of bank accounts required is identified in the contract. Contractors with more than one bank account shall ensure transactions are properly accounted for to prevent the commingling of funds. Failure to properly associate transactions with the correct non-financially underwritten bank account could result in the over-execution of TMA, CRM

1

budget authority and the contractor's authority to draw funds on the Federal Reserve Bank may be revoked or suspended.

**3.0.    ESTABLISHING A LINK TO THE FEDERAL RESERVE BANK**

TMA, CRM will establish the bank account(s) on ASAP with the Treasury Department based on Treasury requirements in effect at the time of establishment. TMA, CRM will notify the bank and the contractor once the bank account(s) have been established and provide codes or other information necessary for the bank to make draws against the Fed, using Fedwire. Currently, ASAP has a requirement to identify a total dollar amount that may be drawn on the Fed. This dollar limit, established by TMA, only represents an administrative ceiling at the Fed, and does not constitute any authority to draw funds. Authority for drawing funds is based on payments, which are included in approved vouchers/W.I.C. drafts, clearing the bank (see paragraph 5.1.).

**4.0.    CONTRACTOR RESPONSIBILITIES**

The contractor shall ensure that cash draw downs do not exceed the payments authorized, as they clear the bank on a given day, less deposits (see paragraph 5.0., below). The contractor shall ensure that any excess draws are immediately returned to the Fed. Interest and a penalty will be charged for the day after the overdraw and any additional days until funding is returned. TMA, CRM reserves the right to initiate immediate payment offset against any payments to the contractor involved for the interest, penalties and/or the overdrawn amount. All disputed amounts will remain in the possession of the government until no longer in dispute. (U.S. Treasury Regulations allow any Federal Agency to collect against any contract the contractor has with the Federal Government, so TMA may collect against a different contract with the same contractor, if necessary.)

**5.0.    APPROVAL AND RELEASE OF PAYMENTS**

**5.1.**    The contractor shall not release benefit payments without prior authorization from TMA, CRM. Authorization from TMA, CRM to release payments will be sent to the contractor via fax or e-mail by 11:00 am Eastern Time, the following work day. Authorization will specify contract number, ASAP Account ID#, initial transmission received date, and total dollar amount of payments to be released based on information contained in the voucher header. Approval for check release will be given provided the following criteria are met:

- Voucher submissions must pass all header edits as specified in TRICARE Systems Manual, Chapter 2, Section 2.3.

- TMA, CRM has confirmed that funding is available to cover payments.

**5.2.**    Benefit payments shall be released/mailed no later than two workdays after TMA, CRM has approved the release of payments. Check date shall be the same date the contractor *received authorization from TMA, CRM Budget Office to release payments.* Authorization to release payments does not constitute TMA's acceptance that all payments are valid and/or correct. Detailed records will be audited for financial compliance.

**5.3.** *Procedures For Benefit Payment Release When The TED Record Processing System Is Not Available*

*If the TED Record processing system is not operating normally and upon notification by the Contracting Officer, the contractor will send an email or fax with a listing of specific vouchers to TMA, CRM to request release of checks/EFT payments. This may be done daily. These procedures apply to all non-underwritten payments that would normally be reimbursed on the TED Record. TMA, CRM will return to the contractor a signed release so the contractor can pay the providers and beneficiaries without delay. The contractor must not release payments until this approval is received. Once the TED Record processing system is operating again, this process can be discontinued upon notification by the Contracting Officer. Request will include the following Header information for each voucher (See TRICARE Systems Manual, Chapter 2, Section 2.2):*

| ELN | Element Name |
|-----|--------------|
| 0-001 | Header Type Indicator |
| 0-005 | Contract Identifier |
| 0-010 | Contract Number |
| 0-015 | Batch/Voucher Identifier |
| 0-020 | Batch/Voucher Number |
| 0-025 | Batch/Voucher ASAP Account Number |
| 0-030 | Batch/Voucher Date YYYYDDD |
| 0-035 | Batch/Voucher Sequence Number |
| 0-040 | Batch/Voucher Resubmission Number |
| 0-045 | Total Number of Records |
| 0-050 | Total Amount Paid |

**6.0.    UNDER/OVER PAYMENTS OF CLAIMS**

**6.1.    Adjustments For Claim Underpayments**

The contractor shall determine the amount of the underpayment, pay any additional payment with the next group of checks being cut, and report as a payment the same way original payments were recorded above. Also, see Chapter 11, Section 2.

**6.2.    Recoupment Of Erroneous Claim Payments**

If the contractor overpays a claim, the contractor shall follow recoupment procedures as specified in Chapter 11, Section 4 to include offsetting overpayments against future payments. Collections, whether cash or offset, shall be shown as separate credit transactions on the vouchers. Debts established under this paragraph and related transactions shall be reported on the monthly Accounts Receivable *Summary* Report (see Chapter 3, Section 10, paragraph 2.0.).

**7.0.    DRAW DOWNS ON THE FEDERAL RESERVE**

**7.1.**    The total amount of a cash draw down on the Fed is based on the daily total of benefit payments presented to the bank for payment. If estimates are needed due to timing of

reports from check clearinghouses or the Fed, the draws shall be adjusted the next business day.

**7.2.**     Computation of the amount of the draw must include any deposits of funds into the account. These deposits will reduce the amount of cash needed for the draw down on the day of the deposit.

**7.3.**     Returns of funds for any reason shall be processed as soon as possible. Interest will be charged, at rates established by the U.S. Treasury, for any excess draws from the first workday after the draw until the excess is repaid or deposited to the Treasury.

**7.4.**     Amounts drawn by the bank shall be reported to the contractor for control purposes. The contractor and the bank may determine how they wish to report and control these transactions between them, but the contractor shall ensure the accuracy of the draw downs and for all reporting to TMA.

**7.5.**     Strict attention shall be paid to identifying and processing transactions against the correct bank account when there is more than one account open. Transfers of funds between bank accounts are **strictly prohibited**. Any transactions reported under one bank account and erroneously charged against a different bank account shall be reported immediately to TMA, CRM when identified. TMA, CRM will instruct the contractor as to what action to take.

**8.0.**     **CHECK REPORTING REQUIREMENTS**

**8.1.**     Following receipt of the benefit check release authorization from TMA and after preparation of the payments, the contractor shall *electronically* transmit to TMA *a Check Issue Report* of the payments issued *for each cycle or approved release*. All payments issued against the non-underwritten bank account shall be reported electronically, including manual payments (see *Chapter 3, Section 5*). The file name shall be the authorization code received from TMA and shall contain the information *and formatted as indicated in Chapter 3, Addendum A, Figure 3-A-9. The occurrence of the Check Issue Report is cycle dependent and may occur as often as daily.*

**8.2.**     The contractor shall immediately notify TMA, CRM if they are unable to transmit electronic check issue reports within the required 24 hours. Failure to notify TMA, CRM could result in payment offsets occurring against the contractor's payments.

**8.3.**     The contractor shall require their bank to provide an electronic transmission to TMA, CRM (no less than monthly) a listing of all payments clearing the account and a listing of all deposits. The listing shall be in an electric format and include the check number and the dollar amount.

**9.0.**     **YEAR END PROCESSING**

**9.1.**     The contractor shall establish a separate bank account for each new fiscal year. All payments issued for benefit payments and all refunds received shall be processed against the new account effective the first day of the new fiscal year. The contractor shall also transfer all recoupment installment payments to the new account from the previous year's account.

**9.2.**    Case draw downs against the prior fiscal year's bank account may continue, if required, until all payments from the prior year have either cleared or have been canceled, but no longer than the end of February of the following year or five months after the last payments have been cut on an account (in the case of a contract closeout).

**9.3.**    Bank accounts shall be closed no later than the end of February, following the fiscal year end, or one month after the last payment on an account has staledated. A final bank account reconciliation shall be made within 30 calendar days following the last authorized transactions. All transactions that were not previously approved by TMA, CRM shall be explained with supporting documentation on the final bank reconciliation report. TMA, CRM reserves the right to not accept these transactions.

**9.4.**    Any outstanding balance in the account shall be reimbursed to TMA no later than the required submission date of the final bank account reconciliation. This balance may be subject to interest if it includes overdrawn amounts that were required to be submitted at an earlier date.

A24

CHAPTER 3
SECTION 6

# PAYMENTS TO BENEFICIARIES/PROVIDERS

**1.0.    CHECKS**

When issuing checks for payments to beneficiaries and providers, the contractor shall use the following formats/statements:

- The check shall be dated the same date the contractor received authorization from TMA, CRM Budget Office to release checks.

- The words "TRICARE Payment" shall be printed in at least 18-point font at the top of the check.

- The TRICARE logo and the contractor's name and address shall be on the check.

- The following endorsement statement shall be printed using 4 or 5 point type in the 1.5 inches allotted on the reverse side of the check. This will comply with Federal Reserve Bank Regulation CC regarding check endorsements. The endorsement shall read as follows:

  "This payment is made with Federal funds. Fraud in procuring, forging of signature or endorsement, or materially altering this check is punishable under the U.S. Criminal Code. IF PAYABLE TO A PARTICIPATING PROVIDER OF SERVICES - By endorsing this check, the undersigned payee agrees that he/she is subject to the terms of the participating agreement (assignment) as set forth in the TRICARE regulation."

- A statement that the check must be negotiated within 120 calendar days.

**2.0.    ELECTRONIC FUNDS TRANSFER (EFT)**

Payments may be made by EFT to beneficiaries and providers. EFTs shall be done under the same guidelines as checks other than situations unique to EFT type transactions (i.e., EFTs do not staledate since an EFT is accepted or returned almost immediately).

1

CHAPTER 5
SECTION 1

# NETWORK DEVELOPMENT

The contractor shall establish a provider network throughout the region to support TRICARE Prime and TRICARE Extra and to complement MTF capabilities. The network shall meet the standards in paragraph 2.0. The final plan detailing all phases of network implementation shall be submitted through the Regional Director to the Contracting Officer no later than 180 calendar days prior to the initiation of the delivery of health care services. The plan shall address all components of network development, implementation, and operation in all TRICARE Prime service areas required in this chapter and specified in the contract. The Contracting Officer will approve, deny, or direct changes to the plan no later than the 150th calendar day prior to the start of health care delivery.

## 1.0.    GEOGRAPHIC AVAILABILITY

The contractor shall establish and maintain provider networks, supporting TRICARE Prime and TRICARE Extra, in all *Prime service* areas, non-*Prime service* areas (where cost-effective), Base Realignment and Closure (BRAC) sites, throughout all healthcare delivery periods of the contract. (See Chapter 17 for TRICARE Prime Remote network requirements.)In each area where TRICARE Prime is offered (TRICARE Prime service area), the contractor shall permit enrollment by beneficiaries under the terms and conditions of Chapters 6 and 12. Beneficiaries who live outside TRICARE Prime service areas may enroll in TRICARE Prime, however, they must waive the access standards.

### 1.1.    Areas Where Establishment Of TRICARE Prime And TRICARE Extra Is Required

The contractor shall make TRICARE Prime and TRICARE Extra available in all *Prime service* areas (see definition in Appendix A), and at all Base Realignment and Closure (BRAC) sites. A listing of all zip codes and geographic locations associated with MTF *Prime service* areas is available in the Catchment Area Directory published by the Defense Medical Systems Support Center. Where, because of unique circumstances in a *Prime service* area or in areas that become non-*Prime service* areas as a result of base closures, the establishment or continuation of TRICARE Prime and/or TRICARE Extra is not feasible, the contractor may request a waiver or delay of this requirement from the Contracting Officer. The request must include the Regional Director's comments and supporting documentation for a waiver or delay.

### 1.2.    Areas Where Establishment Of TRICARE Prime And TRICARE Extra Is Optional

To the extent that it is cost-effective, the contractor may expand TRICARE Prime and TRICARE Extra to areas not described in paragraph 1.1. above. The geographic availability of TRICARE Extra may exceed that of TRICARE Prime in these areas. For areas where the establishment of TRICARE Prime and Extra is optional, the contractor shall identify the zip codes included in the TRICARE Prime and Extra service areas. After the start of health care

A26

delivery, any request to establish TRICARE Prime and TRICARE Extra in non-*Prime service* areas shall be submitted with fully supporting documentation through the Regional Director to the Contracting Officer for approval.

## 2.0.    NETWORK REQUIREMENTS AND STANDARDS

The contractor shall establish, in consonance with the Regional Directors, provider networks through contractual arrangements. In areas where TRICARE networks are in existence, the contractor shall offer all existing network providers the opportunity to participate in the contractor's network (subject to the conditions, criteria and standards established for the Regions). Network requirements and standards are listed below.

### 2.1.    Regional Directors And MTF Interface In Provider Network Development

Prior to the contractor finalizing the civilian network, MTF Commanders and the Regional Directors shall be given an opportunity to provide input into the development of the network in their *Prime service* areas and the BRAC sites. The contractor shall meet with the Regional Director and all MTF Commanders within 30 calendar days of the award to obtain their network size and specialty makeup input. The contractor shall follow the MTF Commander's directions regarding the priorities for the assignment of enrollees to primary care managers. MTF Commanders have sole authority for granting clinical privileges to resource sharing providers at the MTFs.

### 2.2.    Standards For Network Providers

Network and access to care standards are in 32 CFR 199.17. The network shall comply with standards set by the Government or standards proposed by the contractor, whichever are more stringent. Each *Prime service* or non-*Prime service* area where TRICARE Prime is established is considered to be a separate service area to which the standards apply. The contractor shall develop and implement a system for continuously monitoring and evaluating network adequacy.

### 2.3.    Participation On Claims

All network provider contracts shall require the provider to participate on all claims and submit claims on behalf of all MHS and Medicare beneficiaries.

### 2.4.    Balance Billing

2.4.1.    Providers in the contractor's network may only bill MHS beneficiaries for applicable deductibles, co-payments, and/or cost-sharing amounts; they may not bill for charges which exceed contractually allowed payment rates. Network providers may only bill MTFs/MCS contractors for services provided to active duty service members at the contractually agreed amount, or less, and may not bill for charges which exceed the contractually agreed allowed payment amount. The contractor shall include this provision in provider contracts and shall provide the Regional Directors and each MTF Commander with a list of all network providers, their addresses and phone numbers, their specialties or types of service (DME, supplies, etc.), and their contractually agreed allowable amount (discounts or price list) by the tenth (10th) calendar day prior to the start of health care delivery and by

the tenth (10th) calendar day prior to the start of each calendar quarter thereafter. (Such lists shall be provided in an electronic or paper format acceptable to the Regional Director.)

**2.4.2.**     Network providers shall never bill an MHS eligible beneficiary for more than the contractually agreed amount for TRICARE Prime enrollees with civilian network PCMs. The contractor shall ensure that the amount charged MHS beneficiaries without civilian network PCMs is the same as the amount charged TRICARE Prime enrollees with civilian network PCMs even though the reimbursement mechanism may be different (e.g., capitated reimbursement mechanism may be different (e.g., capitated arrangements for TRICARE Prime enrollees with civilian network PCMs and fee-for-service arrangements for all other MHS beneficiaries). If the contractor is using different reimbursement mechanisms, the contractually agreed amount shall be equal to or less than the CHAMPUS allowable amount minus the discount the contractor proposed receiving as a result of the capitated reimbursement amount agreed to with the provider.

**2.5.     Billing For Non-Covered Services (Hold Harmless)**

**2.5.1.**     A network provider may not require payment from the beneficiary for any excluded or excludable services that the beneficiary received from the network provider (i.e., the beneficiary will be held harmless) except as follows:

- If the beneficiary did not inform the provider that he or she was a TRICARE beneficiary, the provider may bill the beneficiary for services provided.

- If the beneficiary was informed that the services were excluded or excludable and he/she agreed in advance to pay for the services, the provider may bill the beneficiary. An agreement to pay must be evidenced by written records *("written records" include for example: 1) provider notes written prior to receipt of the services demonstrating that the beneficiary was informed that the services were excluded or excludable and the beneficiary agreed to pay for them; 2) a statement or letter written by the beneficiary prior to receipt of the services, acknowledging that the services were excluded or excludable and agreeing to pay for them; 3) statements written by both the beneficiary and provider following receipt of the services that the beneficiary, prior to receipt of the services, agreed to pay for them, knowing that the services were excluded or excludable).* General agreements to pay, such as those signed by the beneficiary at the time of admission, are not evidence that the beneficiary knew specific services were excluded or excludable.

**2.5.2.**     Certified marriage and family therapists (both network and non-network), in their participation agreements with TRICARE, agree to hold eligible beneficiaries harmless for non-covered care.

**2.5.3.**     The beneficiary will be entitled to a full refund of any amount paid *by* the beneficiary for the excluded services, including any deductible and cost-share amounts, provided the beneficiary informed the network provider (or the network or non-network certified marriage and family therapist) that he or she was a TRICARE beneficiary, and did not agree in advance to pay for the services after having been informed that the services were excluded or excludable. In order to obtain a refund, the beneficiary is not required to ask the

provider to return the payments the beneficiary has made for excluded services. Instead, the beneficiary will be refunded any payments made by the beneficiary or *by another party on behalf of the beneficiary* (excluding an insurer or provider) for the excluded services. The beneficiary, or other party making payment on behalf of the beneficiary, must request a refund in writing from the contractor by the end of the sixth month following the month in which payment was made to the provider or by the end of the sixth month following the month in which the PRO or TMA advised the beneficiary that he or she was not liable for the excludable services. The time limit may be extended where good cause is shown. Good cause is defined as:

- Administrative error, such as, misrepresentation or mistake, or an officer or employee of TMA or a PRO, if performing functions under TRICARE and acting within the scope of the officer's or employee's authority.

- Mental incompetence of the beneficiary or, in the case of a minor child, mental incompetence of his or her guardian, parent, or sponsor.

- Adjudication delays by other health insurance (when not attributable to the beneficiary), if such adjudication is required under 32 CFR 199.8 (Double Coverage).

CHAPTER 12
SECTION 8

# ALLOWABLE CHARGE REVIEWS (INCLUDES DRGs)

**1.0.    GENERAL**

Beneficiaries and providers have the right to question the amount allowed for services received or rendered for non-network care. (Network providers should have complaint procedures included in their contracts or the administrative procedures established with the TRICARE contractor.) The amount of the allowance is not an appealable issue under the appeals procedures and regulations of the program. When a complaint is received, the accuracy of the application of the reimbursement methodology, including the procedure code and the profile development must be verified. The rights of the beneficiaries and providers must be protected by careful review of each case. For allowable charge complaints related to reimbursement based on the TRICARE National Allowable Charge System, see paragraph 4.0., below.

**2.0.    ALLOWABLE CHARGE REVIEW CRITERIA**

**2.1.    Requirements**

The allowable charge inquiry must be received or postmarked within 90 days from the date of the EOB or it may be denied for lack of timeliness. If the inquiry is in writing and the issue is not clearly a question of allowable charge, any doubt must be resolved in favor of handling the case as an appeal. Allowable charge complaints shall be reported on the workload report as required by Chapter 15, Section 4. The contractor shall respond only to a person entitled to the information; i.e., beneficiary, parent/guardian, participating provider, other TRICARE contractors, or to TMA.

**2.2.    Allowable Charge Complaint Procedures**

An allowable charge complaint need not be submitted in writing. Oral inquiries (complaints) shall be documented on a contact report, by contractor staff. The handling requirements for timeliness of contractor processing are the same as for routine or priority correspondence. Upon receipt of an allowable charge complaint, the contractor shall recover the claim and related documents, including the "Beneficiary History and Deductible File", to completely review the case and establish accuracy of processing. The following checklist is suggested:

**2.2.1.**    Was the correct procedure code used?

**2.2.2.**    Were there other clerical errors, such as wrong type of service code, which may have caused the difference?

**2.2.3.**    Did the case go to medical review?

1

**2.2.4.**    Was all needed medical documentation present to make a completely accurate determination?

**2.2.5.**    Should the case be further documented and referred to medical review?

**2.2.6.**    Was the profiled fee calculated correctly?

**NOTE:**    Contractors need not routinely validate the fee calculation; however, if the difference between billed and allowed is 20% or more, the dollar value of the difference is significant and all other factors appear to be correct, there is reason to question the validity of the fee.

**2.3.    Responses To Allowable Charge Complaints**

A written response to allowable charge complaints is preferred, but the inquiry can be handled by documented telephone call, as may other correspondence. The beneficiary or provider must be offered a written response. If the complaining party indicates dissatisfaction with the contractor's oral explanation of an adverse determination, the contractor will send a detailed letter advising of the results. Occasionally the allowable charge complaint or inquiry will be sent directly to the TMA instead of the contractor. When this occurs, the complaint/inquiry will be forwarded to the contractor for response.

**2.3.1.    Adverse Determination**

If the processing and payment were correct, the inquirer shall be told of the outcome and advised of the methodology for determining allowable charges. The explanation should clearly indicate that the determination was based on the information presented and, if more complex procedures were involved or if the case was unusually complex, whether additional information could change the determination. If such information is available to the inquirer, it should be submitted to the contractor for further review. If, after the contractor's review, it is determined that the original amount is still correct, the inquirer shall be informed that this is the final determination.

**2.3.2.    Additional Payment Due**

If it is found that an error has occurred, or if added information is secured which changes the determination, an adjustment shall be made. The notice of the determination shall explain the reason for the adjustment, e.g., correction of clerical error, added claim information provided, correction of information provided on the claim, etc. Adjustments shall be prepared in accordance with instructions in Chapter 11.

**3.0.    EXCESS CHARGES BILLED IN PARTICIPATING PROVIDER CLAIM CASES**

If an allowable charge inquiry/complaint indicates a participating provider is improperly billing for more than the allowable charge, refer to Chapter 14.

**4.0.**    **CHAMPUS MAXIMUM ALLOWABLE CHARGE SYSTEM**

**4.1.**    For allowable charge complaints involving reimbursement based on the CHAMPUS Maximum Allowable Charge System, the contractor shall adhere to the limitations stated in paragraph 2.1. In addition, the contractor will follow the instructions stated in paragraph 2.2., including paragraphs 2.2.1. through 2.2.5. The contractor will have no responsibility for determining whether or not the profiled fee for any given Medicare locality was calculated correctly. Once the contractor verifies that the correct procedure code was used, no data entry errors were made (including determination of where the service was rendered), and that referral to second level or medical director review was appropriate, the contractor shall respond to the inquiry stating that the payment calculation was correctly computed.

**4.2.**    If it is determined that an error was made by the contractor in calculating the correct payment, the contractor shall follow the procedures in paragraph 2.3., above.

**4.3.**    In the event the TMA, B&PS is notified by the contractor computing the CHAMPUS Maximum Allowable Charge (CMAC) that an error was made in the basic calculations, the contractor will receive a letter from TMA with the corrected CMAC directing the contractor to replace the incorrect CMAC as soon as possible but no later than ten working days after receipt of the TMA letter. Contractors are not required to adjust all the claims processed with the incorrect CMACS; however, contractors shall adjust any claims which were processed using the incorrect CMAC when a provider or beneficiary requests that adjustment.

**5.0.**    **DRG REVIEWS**

    The request from a hospital for reclassification of a claim to a higher DRG must be received or postmarked within 60 days from the date of the EOB; otherwise, the request will be denied for lack of timeliness. The contractor review is the final determination; there is no further review.

CHAPTER 13
SECTION 2

# GOVERNING PRINCIPLES

**1.0.    APPEALING PARTY**

**1.1.    Proper Appealing Party**

Persons or providers who may appeal are limited to:

- The TRICARE beneficiary (including minors),

- The participating provider of services (except network providers whose recourse is through the contractual provision for appeal or the state court system), or

- A non-network provider appealing a preadmission/preprocedure denial (when services have not been rendered), or

- A provider that has been denied approval as an authorized TRICARE provider or who has been terminated, excluded, suspended, or otherwise sanctioned.

**1.2.    Appeals From More Than One Party**

An appeal may be accepted from more than one *proper* appealing party. If more than one party appeals, the contractor and the NQMC shall mail separately addressed appeal determination letters to each appealing party (or representative, if a representative has been appointed).

**1.3.    Appealing Party/Representative**

**1.3.1.    Appeals On One's Own Behalf**

An appealing party is entitled to file an appeal on his or her own behalf.

**1.3.2.    Minors And Incompetent Beneficiaries As Appealing Parties**

**1.3.2.1.    A minor beneficiary is a proper appealing party.**

**1.3.2.2.    Generally, the *custodial* parent of a minor beneficiary and the legally appointed** guardian of an incompetent or minor beneficiary shall be presumed to have been appointed representative without specific designation *by* the beneficiary. *The parent of a minor beneficiary shall be presumed to be the custodial parent unless there is evidence to the contrary.* If a parent or guardian is pursuing the appeal on behalf of a minor beneficiary and the minor reaches 18 years of age during the appeal, the parent or guardian will be presumed to be authorized to continue the appeal on behalf of the beneficiary unless the beneficiary provides a written

statement of his or her desire to pursue the appeal in his or her own behalf, *in which case the appeal decision will be mailed to the beneficiary.* Once the contractor issues the appeal determination, the beneficiary who reached 18 years of age during the appeal must request all subsequent levels of appeal or appoint a representative to do so. (Refer to paragraph 1.3.3.1. for additional information relating to parents and guardians as representatives.)

**1.3.3.    Representative**

If the proper appealing party cannot or does not wish to pursue the appeal personally, or wishes to have another person directly assist in pursuing an appeal, the appealing party may appoint a representative to act in his or her behalf at any level of the appeal process. The appointment of a representative must be in writing and must be signed by the proper appealing party or an individual must be appointed to act as representative by a court of competent jurisdiction.

**1.3.3.1.    Parents Or Guardians As Representatives**

The sponsor or *custodial* parent of a beneficiary under 18 years of age or the guardian of an incompetent beneficiary cannot be an appealing party; however, such persons may represent the appealing party in an appeal. The *custodial* parent of a minor beneficiary and the legally appointed guardian of an incompetent beneficiary shall be presumed to have been appointed representative without specific designation by the beneficiary; however, this presumption shall not apply if the claim was signed by a minor and the claim is related to abortion, alcoholism, substance abuse, venereal disease, or AIDS. (Refer to paragraph 1.3.2. for additional information relating to minors as appealing parties.) A suggested format for "Appointment of Representative and Authorization to Disclose Information" is included at Chapter 13, Addendum A, Figure 13-A-1.

**1.3.3.2.    Conflict Of Interest**

To avoid possible conflict of interest, an officer or employee of the United States, such as an employee or member of a Uniformed Service, including an employee or staff member of a Uniformed Service legal office, or a Health Benefits Advisor, subject to the exceptions in Title 18, United States Code, Section 205, is not eligible to serve as a representative. An exception usually is made for an employee or member of a Uniformed Service who represents an immediate family member.

**1.3.4.    Appeal Filed By Attorney**

If an attorney files an appeal on behalf of a *proper* appealing party, the contractor shall assume, absent any evidence to the contrary, that the attorney has been duly authorized to act as the appealing party's representative in the appeal. Care shall be taken to ensure that the attorney is representing a *proper* appealing party (e.g., an appeal filed by an attorney as the representative of a nonparticipating provider or as the representative of the spouse of a beneficiary, or parent of an adult beneficiary, shall not be accepted).

**1.3.5.    Appeal Filed By Provider On Behalf Of Beneficiary**

Managers or administrators of facilities or individual providers, may enter appeals only as participating providers, acting in their own behalf. A participating provider is not authorized to enter an appeal for a beneficiary unless the provider has been designated by the beneficiary, in writing, to act as his/her representative in the appeal process. A desire to assist the beneficiary is not, in itself, sufficient reason to permit others to act for the beneficiary without specific appointment by the beneficiary.

**1.3.6.    Appeal Filed For Deceased Beneficiary**

An appeal may be filed for a deceased beneficiary by a person authorized to sign TRICARE claims on behalf of the deceased beneficiary under the provisions of *Chapter 8, Section 4, paragraph 5.0.*

**1.3.7.    Inquiries Made By Members Of Congress On Behalf Of Beneficiaries**

Inquiries submitted by Members of Congress regarding a specific appealing party's claim or claims are not considered requests for a reconsideration. If the letter from the Member of Congress is postmarked or received by the contractor or NQMC before the expiration of the appeal filing deadline and is accompanied by a letter from the appealing party which meets the requirements of a request for reconsideration, the appealing party's letter to the Member of Congress may be accepted as an appeal. The Member of Congress and the appealing party shall be advised that a reconsideration will be conducted and that the appealing party will be notified of the results. If the congressional inquiry is not accompanied by a letter from the appealing party which contains all the elements of a request for a reconsideration, the contractor shall explain the procedure for filing an appeal so that the Member of Congress may advise the appealing party. Response to Congressional inquiries are subject to the provisions of the Privacy Act of 1974 (see Chapter 1, Section 5, paragraph 4.0.). Once an appeal has been accepted, the contractor may tell a Member of Congress inquiring on behalf of an appealing party only that an appeal has been filed and that it would be inappropriate for the contractor to comment on the case unless the appealing party has authorized the Member of Congress, in writing, to receive information on behalf of the beneficiary.

**1.4.    Participating Providers**

A non-network participating provider is entitled to file an appeal of those claims in which the provider participated. For the purposes of filing an appeal of a preadmission/preprocedure denial, a non-network provider is considered a participating provider and is entitled to file an appeal. The non-network participating provider may file an appeal instead of, or in addition to, the beneficiary or beneficiary's representative. When denial of payment for claimed services is being appealed, a non-network nonparticipating provider is not a party to the determination and would not receive any information regarding the claim or claim determination without the signed authorization of the beneficiary or the beneficiary's representative.

**EXCEPTION:**    Peer reviewer's comments may be released to non-network nonparticipating providers without the patient's permission, since these comments are directed toward the

provider and the provider's ability to document treatment. In order for the non-network nonparticipating provider to provide additional information on behalf of the patient, it is necessary for the provider to be aware of the peer reviewer's comments.

NOTE:    In those cases in which a non-network participating provider files an appeal and the care also involves a network provider (e.g., a non-network participating professional provider renders care to a beneficiary in a network hospital), the non-network participating provider would be considered a proper appealing party. Although the network provider's input, claims history, medical records, etc., may be used in adjudicating the appeal, a network provider is never a proper appealing party. (A network provider's disputes are handled under the provisions of the provider's contract or the state court system.)

1.5.    **Providers Denied Approval**

A non-network provider who has been denied certification as an authorized provider under TRICARE is entitled to appeal the initial determination made by either the contractor or TMA. These initial determinations are considered factual initial determinations (see Chapter 13, Section 5). When the denial is based on the exclusion of the provider by another Federal or Federally funded program, e.g., Medicare or Medicaid, because of fraud or abuse, the issue is not appealable through the TRICARE appeal system. Unlike beneficiaries or providers who appeal denial of a claimed benefit, providers denied approval are deemed to have met any required amount in dispute at all levels of appeal. A contractor determination denying network provider status to an authorized provider is not appealable. Additional information relating to the appeal process is included in Chapter 14, Section 6, "Provider Exclusions, Suspensions and Terminations".

2.0.    **APPEAL PROCESSING JURISDICTION**

2.1.    **Jurisdiction**

The contractor who made the adverse initial determination shall be responsible for the initial steps of the appeal process. A contractor receiving a request for reconsideration of an initial determination not within its jurisdiction shall send the request to the correct contractor within five working days of receipt and shall notify the appealing party of this action. The contractor shall make no comments on the merits of an appeal not within its jurisdiction and shall direct the appealing party to send any further correspondence relating to the appeal to the appropriate contractor.

2.2.    **More Than One Jurisdiction**

Appeals may be received involving more than one jurisdiction. For example, a case may involve services processed by both the outgoing contractor and the incoming contractor in a period of transition and will require separate review. The contractor receiving the appeal shall notify the appealing party that the services will be reviewed separately by the outgoing contractor and the incoming contractor. The notification shall also include the name and address of each contractor performing the reviews. The contractor shall photocopy the written appeal request, the notification to the appealing party of the referral, and other relevant information and forward the photocopies to the other contractor with an

4

explanation of the action taken within 21 calendar days of the stamped date of receipt of the appeal in the mailroom.

**3.0.    APPEAL REQUIREMENTS**

For all appeals at all levels:

**3.1.    Must Be Filed In A Timely Manner**

The appealing party must comply with the "allowed time to file" requirements established by 32 CFR 199.10 and 199.15 (see Chapter 13, Section 3, paragraph 1.4.).

**3.2.    Must Be An Appealable Issue**

*Services or supplies must have been rendered by a TRICARE authorized provider, the denial of which raises a* disputed question of fact which, if resolved in favor of the appealing party, would result in an extension of TRICARE benefits or approval as a TRICARE-authorized provider. *Examples of* nonappealable issues *may be found at* Chapter 13, Section 3, paragraph 1.3.2.

**3.3.    Must Be An Amount In Dispute**

There must be an amount in dispute before an appeal can be accepted (see paragraph 4.0.). This involves the following requirements:

- In a case involving an appeal of denial of authorization in advance of the actual services, the amount in dispute will be the estimated allowable charge for the services requested.

- There must be a legal obligation on the part of the beneficiary, parent, guardian, or sponsor to pay for the service or supply.

- Payment or authorization of TRICARE benefits for the service or supply must have been denied in whole or in part.

- When the episode of care involves the services of both network and non-network providers, only the claims submitted by the non-network providers will be considered in determining the amount in dispute.

**NOTE:**    A non-network provider appealing a denial of its authorized TRICARE provider status will be deemed to have met any required amount in dispute. Also, the amount in dispute will be considered to have been met in an appeal of a request for authorization of benefits for obtaining services or supplies unless the estimated allowable charge involved in such a request would be less than the required amount in dispute.

**EXAMPLE:**    A TRICARE beneficiary who had been hospitalized for ten days was notified by the contractor that benefits would terminate on the 15th day. The beneficiary left the hospital on the 15th day and filed an appeal on the basis that continued hospitalization was medically necessary. In this case, there would be no basis for

the appeal. The beneficiary left the hospital on the day TRICARE benefits terminated and expenses were no longer incurred; therefore, there was no amount in dispute. The beneficiary would be advised that there could be no appeal since there was no amount in dispute.

### 3.4.    Must Be A Proper Appealing Party

See paragraph 1.0.

### 3.5.    Must Be In Writing

All appeal requests must be in writing and submitted by a proper appealing party. A signature is not required if a determination can be made that the request was submitted by a proper appealing party. If it cannot be determined that the appeal request was submitted by a proper appealing party, the proper appealing party shall be instructed by the contractor that a proper appeal, must be filed within 20 calendar days of the contractor's letter or by the appeal filing deadline, whichever is later. A verbal request for a reconsideration cannot be accepted. When telephone calls are received or personal visits occur which relate to an adverse initial determination, the contractor shall make every effort to satisfy the inquirer's complaint, inquiry, or question, including advising the inquirer of his or her right to appeal, if applicable. If an appropriate appealing party or representative submits a letter which includes both an appealable issue and a grievance, the appeal and grievance shall be processed separately under the appropriate appeal and grievance provisions of the Operations Manual.

### 4.0.    AMOUNT IN DISPUTE

An amount in dispute is required for an adverse determination to be appealable. Although some amount must be in dispute for a reconsideration, unless specifically waived (e.g., the appeal involves denial of certification as a TRICARE authorized provider), there is no established minimum dollar amount. Fifty dollars or more shall be in dispute for a formal review request to be accepted at TMA. Three hundred dollars or more, shall be in dispute for the case to be accepted as a hearing. The determination of "amount in dispute" affects the appealing party's rights and must be carefully evaluated, including, when appropriate, multiple claims for the same service and related claims. Under TRICARE Prime, if the beneficiary has no liability, other than a nominal per visit copayment, there is no amount in dispute (this does not preclude a Prime enrollee from appealing a preadmission/preprocedure denial determination). If the services at issue are not a benefit under TRICARE, and the provider is a network provider, the Prime or Extra beneficiary shall be held harmless by the network provider, unless the beneficiary is properly informed that the care is not covered (or probably is not covered) and agrees in advance to pay for the care. An agreement to pay can be evidenced by, e.g., a progress note in the beneficiary's medical record, entered contemporaneously with the occurrence of the event. (Refer to Chapter 5, Section 1, paragraph 2.5. for additional information regarding "hold harmless".)

### 4.1.    Calculating The Amount In Dispute

The "amount in dispute" is calculated as the actual amount the contractor would pay if the services and/or supplies involved in the dispute were determined to be payable.

A38

**4.1.1.    Examples Of Excluded Amounts**

**EXAMPLE 1:**    Amounts in excess of the TRICARE-determined allowable charge or cost are excluded.

**EXAMPLE 2:**    The beneficiary's TRICARE deductible and cost-share amounts are excluded.

**EXAMPLE 3:**    Amounts which the TRICARE beneficiary, parent, guardian, or other responsible person has no legal obligation to pay are excluded.

**EXAMPLE 4:**    Amounts under the double coverage provisions of the TRICARE Reimbursement Manual, Chapter 4 are excluded.

**4.1.2.    Amounts For Preadmission/Preprocedure Appeals**

When the dispute involves denial of a request for authorization in advance of actual care or service, the amount in dispute shall be the estimated allowable charge or cost for the service requested.

**4.1.3.    Amounts For Provider Status Appeals**

If the dispute involves the denial of a provider's request for approval as an authorized TRICARE provider or the determination to terminate a provider as an authorized TRICARE provider, there is no requirement for an amount in dispute. Initial determinations in provider status appeals are considered factual initial determinations (Refer to Chapter 13, Section 5).

**4.2.    Combining Claims**

Individual claims may be combined to meet the required amount in dispute for referral of the appeal to TMA if all of the following exist:

- Claims involve the same beneficiary (When the episode of care involves the services of both network and non-network providers, only the claims submitted by the non-network providers will be considered in determining the amount in dispute),

- Claims involve the same issue, and

- At least one of the claims, so combined, has had a reconsideration determination issued by a contractor.

**4.3.    Related Claims**

When the contractor receives an appeal on a claim which has been denied, the contractor shall retrieve and examine all claims related to the specific service or supply or episode of care received by the beneficiary to determine if the claim in dispute was properly denied and if related claims were properly processed. All claims which relate to the same incident of care or the same type of service to the beneficiary shall be processed in the same

7

A39

manner *and shall be readjudicated and resolved along with the denied claim in the same reconsideration determination.* If one claim which relates to an excluded procedure is denied, all claims which relate to the same procedure shall also be denied. If a procedure is covered and one claim involving that procedure and episode of care is paid, other claims relating to the same procedure and/or period of care which have been denied should be examined in conjunction with the paid claim to see if the other claims may be paid or whether all the claims should be uniformly denied. The contractor shall take action in accordance with paragraph 4.4.2. to determine if any claim for the services or supplies was improperly paid or denied. All related claims shall be made part of the appeal file. The file shall contain full documentation pertaining to the issue and the care in dispute, to include a record of actions taken by the contractor on all claims involving the same issue.

EXAMPLE 1:   The contractor receives claims for hospitalization, testing, physician services, and the purchase of a cerebellar stimulator implant device for a TRICARE beneficiary. These claims involve the surgical implant of the cerebellar stimulator in the patient's skull. The claims for the hospital care, physician's services, and the stimulator device are denied by the contractor on the basis that the procedure is unproven. The claims for testing are paid. Upon appeal, the contractor shall retrieve all the claims for the episode of care. The contractor shall find that the charges for the testing were erroneously paid because they relate to the denied unproven procedure. The contractor shall take action in accordance with paragraph 4.4.2.

EXAMPLE 2:   A beneficiary with out-of-control diabetes is hospitalized, during which she receives nutrition counseling, an eye examination and insulin therapy. On the last day of the hospitalization, an M.D. performs an abortion. The initial determination denies cost-sharing for all services and the hospital requests a reconsideration. All services must be reviewed to determine which are related to the covered hospitalization for diabetes and which are related to the noncovered abortion.

EXAMPLE 3:   Outpatient psychotherapy sessions are provided to a beneficiary and cost-shared by the contractor for a period of twelve months. All claims for the thirteenth month are denied due to lack of an adequate treatment plan. Upon appeal of the denial of the claim, all previously paid claims shall be retrieved and examined to determine whether all the claims should be paid, all denied, or whether denial is proper for some of the claims.

EXAMPLE 4:   The contractor denies a claim for physical therapy on the basis that the services were not medically necessary. At reconsideration, the contractor discovers that previous claims for the same services and condition were paid in error. Because the erroneously paid claims involve the same issue - medical necessity of the physical therapy - the contractor shall add the erroneously paid claims to the reconsideration and review all claims together.

4.4.   **Erroneous Payments**

In considering an issue under appeal, questions may arise concerning previous payment of services or claims not under appeal. Possible erroneous payments will be

reviewed in depth, including medical review if necessary, to determine if, at the time the initial determination was made, there existed any basis for the payment. If the reviewer concludes there was a basis for payment at the time the claim was processed, the payment may stand. When the evidence indicates a payment was erroneous and not supported by law or regulation, the following action will be taken.

**4.4.1.     Recoupment Involving Separate Issues**

The contractor may request a refund and treat the recoupment action as an initial determination. Appeal rights shall be offered to the next level of appeal. Any new appeal must address itself to the benefit issue in dispute and not the fact that a refund has been requested.

**4.4.2.     Recoupment Involving Issues Under Appeal**

When the contractor examines claims which are related to the claim in dispute and determines that one or more of the related claims were improperly paid, the contractor shall explain the erroneous payment in detail and advise the appealing party of any recoupment. If the contractor determines recoupment is appropriate, the amount of the erroneously paid claim(s) will be added to the amount in dispute, and the reconsideration review will consider both the claim(s) in dispute and the erroneously paid related claim(s) which involve the same issue. If the total amount in dispute permits a higher level appeal, the appealing party will be so advised.

A41

CHAPTER 13
SECTION 3

# RECONSIDERATION PROCEDURES

**1.0.    REQUIREMENTS FOR REQUESTING A RECONSIDERATION**

**1.1.    Must Be In Writing**

**1.2.    Must Be Made By A Proper Appealing Party**

A network provider is never a proper appealing party. Disputes between a network provider and the contractor concerning authorization of services are not subject to the appeal process. Network provider disputes are addressed under the provider contract provisions, the contractor's administrative procedures, or through the state courts. Because non-network, nonparticipating providers are not proper appealing parties, non-network, nonparticipating provider disputes regarding waiver of liability determinations are addressed as allowable charge reviews rather than reconsideration reviews. If the contractor or the NQMC receives a timely appeal request for reconsideration from a person who is not authorized to participate in the appeal, before the expiration of the appeal filing deadline, the contractor or the NQMC shall treat the request as routine correspondence, and add the request to the claim file. The contractor or the NQMC shall advise the proper appealing party in writing (see Chapter 13, Addendum A, Figure 13-A-4) with a copy to the improper appealing party. A blank "Appointment of Representative," form shall be enclosed with the letter to the proper appealing party (see Figure 13-A-1). The proper appealing party shall be told that an appeal must be filed within 20 calendar days of the date of the contractor's or the NQMC's letter or by the expiration of the appeal filing deadline, whichever is the later.

**1.3.    Must Include An Appealable Issue**

**1.3.1.    Appealable Issues**

**1.3.1.1.**    A TRICARE Prime enrollee, a TRICARE Extra user or a TRICARE Standard beneficiary making use of the authorization process who requests authorization to receive services and such authorization is denied by the contractor, may appeal even though no care has been provided and no claim submitted. (Refer to *paragraph 7.2.* and Chapter 13, Section 4, paragraph 3.1.2., for additional information relating to preadmission/preprocedure denials).

**1.3.1.2.**    The decision by the contractor to cost-share services under the Point-of-Service Option is not appealable; with the exception of the issue of whether services were related to an emergency and, therefore, exempt from the requirement for referral and authorization. Whether services were related to an emergency is a factual determination and is appealable. The TRICARE Prime enrollee must demonstrate that the care would qualify as an emergency under the criteria for emergency care set forth in 32 CFR 199.4. Should the beneficiary prevail in the appeal, the amount cost-shared would be the difference between the amount cost-shared under the Point of Service option and the amount that would have been cost-shared

had the beneficiary received the care from a network provider. A determination by the contractor that services received under the point-of-service option are not a TRICARE benefit would be appealable as a medical necessity or factual denial determination.

**1.3.1.3.**    The decision by a contractor to deny a request by the Primary Care Manager (PCM) to refer a beneficiary to a specialist is an appealable issue, if the reason for the denial is a determination by the contractor that a referral is not needed.

**1.3.1.4.**    Concurrent review authorizations granting 48 hours or less of additional services beyond the previous authorization when the provider has requested more than 48 hours of additional services. If the concurrent review authorization grants more than 48 hours of additional services beyond the previous authorization, but less than the period requested by the provider, an appeal does not exist. In such a case, the letter authorizing the additional period would inform the provider that a subsequent concurrent review will be conducted within 48 hours prior to the expiration of the newly authorized period.

**1.3.2.**    **Nonappealable Issues**

The following issues are not appealable and shall not be accepted for reconsideration. They should be counted as correspondence for both workload report and processing purposes.

**1.3.2.1.**    **Allowable Charge**

The amount of the TRICARE-determined allowable cost or charge for services or supplies is not appealable, since the methodology for determining allowable costs or charges is established by regulation. One example involving an allowable charge issue would be the contractor's decision to pay benefits under the Point of Service option (absent any claim that the care was emergency in nature and was, therefore, exempt from the requirement for referral and authorization). In cases involving contractor cutbacks or downcoding of diagnoses or procedure codes, there is no issue with respect to the medical necessity of the services provided and therefore, no appealable issue (i.e., the contractor does not determine that the services are not a benefit under TRICARE). The sole issue in these cases is the level of payment for the medically necessary services - an allowable charge issue. If, however, the contractor cutback or downcoding results in the noncoverage of a furnished service, then an appealable issue would exist. See Chapter 12, Section 9.

**1.3.2.2.**    **Eligibility**

Determination of a person's eligibility as a TRICARE beneficiary is not appealable since this determination is the responsibility of the Uniformed Services. See the TRICARE Policy Manual, Chapter 10, Section 1.1.

**1.3.2.3.**    **Denial of NAS Issuance**

Determinations relating to the issuance of a Nonavailability Statement (NAS) (DD Form 1251) based on the availability of care at the MTF are not appealable since these determinations are the responsibility of the Uniformed Services. For *non-enrolled* beneficiaries, when the issuance of an NAS is denied based on a medical necessity or a

factual determination (including a determination that the facts of the case do not demonstrate *an* emergency for which an NAS is not required), the beneficiary and/or civilian participating provider has the right to reconsideration. Refer to the TRICARE Policy Manual, Chapter 1, Section 6.1.

**1.3.2.4.    Provider Sanction**

If the decision is to disqualify or exclude a provider because of a determination against that provider resulting from abuse or fraudulent practices or procedures under another federal or federally-funded program is not appealable, the provider is limited to exhausting administrative appeal rights offered under the federal or federally-funded program that made the initial determination. However, a determination to sanction a provider because of abuse or fraudulent practices or procedures under TRICARE is an initial determination which is made by the contractor and is appealable under 32 CFR 199. See Chapter 14. A sanction imposed pursuant to 32 CFR 199.15(m) is appealable as described in 32 CFR 199.15(m)(3).

**1.3.2.5.    Network Provider/Contractor Disputes**

Disputes between a network provider and the contractor concerning payment for services provided by the network provider are not appealable.

**1.3.2.6.    Provider Not Authorized**

The denial of services or supplies received from a provider not authorized to provide care under TRICARE is not appealable.

**1.3.2.7.    Denial Of A Treatment Plan**

The denial of a treatment plan when an alternative treatment plan is selected is not appealable. Peer to peer dialogue resulting in selection and approval of another treatment option is not a denial of care.

**1.3.2.8.    Denial Of Services By A Primary Care Manager**

The refusal of a PCM to provide services or to refer a beneficiary to a specialist is not an appealable issue. A beneficiary who has been refused services or a referral by a PCM may file a grievance under Chapter 12, Section 10, paragraph 1.0. The decision by the contractor to deny a PCM's request to refer a beneficiary to a specialist is an appealable issue and is addressed in paragraph 1.3.1.3.

**1.3.2.9.    Designation Of Providers**

The contractor's designation of a particular network or non-network provider to perform requested services is not appealable.

**1.3.2.10.** *Point Of Service*

*The decision by the contractor to cost-share services under the Point of Service option is not appealable, with the exception of the issue of whether the services were related to an emergency and are therefore exempt from the requirement for referral and authorization.*

### 1.4.    Must Be Filed Timely

An appeal must be filed before the expiration of the appeal filing deadline or within 20 *calendar* days of the date of the contractor's letter, referenced in paragraph 1.2. In calculating the number of days elapsed, the day following the date of the previous determination is counted as day "one" with the count progressing through actual calendar days including the date the request is filed. The contractor or NQMC shall treat an untimely request for reconsideration as routine correspondence, and add the request to the claim file.

#### 1.4.1.    By Mail

If the appeal is not filed timely, the contractor shall advise the appealing party that the appeal cannot be accepted since the time limit for filing was exceeded, based on the receipt date of the appeal request or the postmark date on the envelope. For the purposes of TRICARE, a postmark is a cancellation mark issued by the United States Postal Service (i.e., private mail carriers do not issue postmarks). If there is no postmark or the date of the postmark is illegible, the date of receipt by the contractor shall be used to determine timeliness of filing.

#### 1.4.2.    By Facsimile

A request for reconsideration submitted by facsimile transmission (fax) is considered filed on the date the fax is received by the contractor.

#### 1.4.3.    By Electronic Mail

A request for reconsideration submitted by electronic mail (e-mail) is considered filed on the date the e-mail is received by the contractor.

### 1.5.    Must State The Issue In Dispute And Include Previous Determination

The request should state the specific issue in dispute and be accompanied by a copy of the previous denial determination notice. If a contractor or the NQMC receives a request for reconsideration which otherwise satisfies the requirements as stated above, the request shall be accepted notwithstanding the failure of the appealing party to provide a copy of the previous denial determination notice or to state the specific issue in dispute. In such cases, the contractor or the NQMC shall accept the request for reconsideration and shall supply a copy of the previous denial determination notice from its files or shall initiate communication with the appealing party to clarify the specific issue in dispute, as appropriate.

A45

**2.0.    EXTENSION OF APPEAL FILING DEADLINE**

If the appeal is untimely the appealing party shall be told that if it can be shown to the satisfaction of the contractor or the NQMC, that timely filing of the request was not possible due to extraordinary circumstances over which the appealing party had no practical control, an extension of the appeal filing deadline may be granted. A determination by the contractor or the NQMC that extraordinary circumstances do not exist is not appealable.

**2.1.    Extraordinary Circumstances Are Limited To:**

**2.1.1.    Administrative Error**

**2.1.1.1.**    Administrative error (misrepresentation, mistake or other accountable action) of an employee of the contractor performing functions under TRICARE and acting within the scope of that individual's authority. For example, an administrative error would occur when a request for reconsideration was filed with the contractor after the expiration of the appeal filing deadline but the envelope containing the reconsideration request was misplaced by the contractor. In such a case, the misplacement of the envelope by the contractor would constitute an extraordinary circumstance over which the appealing party had no practical control, thereby permitting late filing of the appeal, unless it could be determined that:

- The appealing party used a means other than the United States Postal Service to deliver the reconsideration request to the contractor, or

- The letter requesting the reconsideration was dated after the reconsideration filing deadline, or

- Other circumstances would lead to the conclusion that the reconsideration request could not have been postmarked on or before the reconsideration filing deadline (for example, the reconsideration request was received by the contractor 30 days after the reconsideration filing deadline).

**2.1.2.    Mental Incompetency**

Mental incompetency of the appealing party (this includes the inability to communicate as a result of physical disabilities).

**2.2.    Requests For Extension**

There must have been a denial of an appeal, due to lack of timely filing, before an extension can be considered. Contractors and the NQMC shall return all requests for extension of the appeals filing deadline to the requesting party if an appeal has not been denied due to lack of timely filing. The contractor and the NQMC shall inform the requesting party that the request for extension may not be considered until a request for reconsideration has been received.

**3.0.    RECEIPT AND CONTROL OF APPEALS**

**3.1.    Date Stamp**

All reconsideration requests shall be stamped with the actual date of receipt within three workdays of receipt by the contractor.

**3.2.    Control**

The contractor shall establish a single centralized appeals department and establish and maintain a single automated system for the control, location, and aging of appeals received. Appeals may be processed at more than one location but all appeals shall be managed and controlled by the centralized appeals department. The contractor's ability to respond to inquiries on a timely basis shall be measured from the actual date of receipt of the inquiry by the contractor, rather than from the date the inquiry was received in the appropriate responding department or from the date the inquiry was imaged by the contractor. The contractor is responsible for ensuring issuance of complete and accurate determinations on all reconsiderations within the time frames set forth in the *TRICARE Operations Manual.*

**3.3.    Acknowledgment Of Receipt Of Request For Reconsideration**

The contractor shall provide an interim written response for all reconsiderations not processed to completion by the date required, advising the appealing party of the estimated date of issuance of the reconsideration determination. A preprinted postcard may be used if information covered by the Privacy Act is not disclosed. Electronic mail may be used to respond to the appealing party, provided the contractor first obtains written permission from the appealing party to use electronic mail for communicating information regarding his or her appeal.

**3.4.    Timeliness Standards**

Chapter 13, Sections 4, 5, and 6 include standards relating to timely issuance of reconsideration determinations and timely submission of appeal case files to the NQMC and to the Appeals and Hearings Division. Standards are expressed in either calendar days or working days. To determine whether timeliness has been met relating to a standard expressed in working days, the first working day following receipt by the contractor or NQMC of the request for reconsideration, or request for the appeal file, is counted as day one of the timeliness requirement. To determine whether timeliness has been met relating to a standard expressed in calendar days, the first calendar day following receipt by the contractor or NQMC of the request for reconsideration is counted as day one of the timeliness requirement.

**4.0.    RECONSIDERATION REVIEWER QUALIFICATIONS AND ADMINISTRATIVE REQUIREMENTS**

**4.1.    Reviewer Qualifications**

*If the reconsideration determination is based on lack of medical necessity or other reason relative to reasonableness, necessity or appropriateness, the* reconsideration reviewer must be someone who is, (1) qualified under Chapter 7, Section 1, paragraph 3.0. to make an initial determination, (2) not the individual who made the initial denial determination, and (3) a specialist in the type of services under review. *Exception: A reconsideration determination fully overturning the initial denial determination can be made by the reviewer who issued the initial denial determination.*

**4.2.    Administrative Requirements**

Each review shall be dated and include the signature, legibly printed name, clinical specialty, and credentials of the reviewer. Each reviewer shall include rationale for his or her decision (i.e., a complete statement of the evidence and the reasons for the decision). In addition, the name and title of the individual issuing the reconsideration determination shall be included in the Appeal Summary Log (Figure 13-A-2). If the appeal file is forwarded to TMA, a completed "Professional Qualifications" form (Figure 13-A-3) must be included in the file for each reviewer.

**4.3.    Additional Documentation**

The contractor and the NQMC shall request and make every reasonable effort to obtain any documentation required to arrive at a proper reconsideration determination. This includes follow-up letters or documented telephone calls if requested information is not received. An appeal involving inpatient admission or length of stay may require obtaining the entire hospital record. Whenever records are required, the contractor or the NQMC shall request such records directly from the provider. Written or verbal statements made by beneficiaries regarding their medical conditions are not a substitute for medical records. If there are no extenuating circumstances alleged and no added information furnished or referenced, the contractor or the NQMC may make the determination on the information available in its records. Improperly developed or incomplete appeal files received by TMA may be returned to the contractor or the NQMC for additional development, completion, and, if appropriate, issuance of a revised reconsideration determination. Due to the time constraints involved in expedited preadmission/preprocedure appeals, fully documenting a case file may not be possible. Requirements for documenting case files for expedited preadmission/preprocedure appeals is addressed in Chapter 13, Section 4.

**4.4.    File Documentation (In Other Than Provider Termination Cases)**

The contractor and the NQMC shall carefully review the initial determination and all pertinent evidence and documentation obtained at reconsideration in light of the applicable provisions of 32 CFR 199, the TOM, the Policy Manual, the TRICARE Reimbursement Manual and all other relevant guidelines and instructions issued by TMA. The reconsideration determination shall be based on the facts of the case as shown in the

evidence and shall be supported by appropriate citations from 32 CFR 199, which shall be cited in the reconsideration determination.

**4.5.    File Content, Requirements, And Structure**

**4.5.1.**    The contractor and the NQMC shall document all determinations made at the reconsideration level in sufficient detail so that, if the next level of appeal is pursued, a subsequent reviewer shall be provided with a clear and complete picture of all actions taken on the case to that point. All material related to the reconsideration shall be made part of the permanent claim file. The copy of the appeal file provided by the contractor to the NQMC or TMA must be complete, including the Appeal Summary Log (Figure 13-A-2) and the Professional Qualifications form (Figure 13-A-3). Likewise, the copy of the appeal file provided by the NQMC to TMA must be complete and include the file received by the NQMC from the contractor. In addition, the NQMC must complete and include its portion of the Appeal Summary Log.

**4.5.2.**    The contractor and the NQMC shall retain and completely document the file or files for all claims involved in the appeal. The contractor can either establish a separate appeal file containing all documents related to the appeal, or can gather all documents related to the appeal, including the completed Appeal Summary Log and Professional Qualifications Statement, into an appeal file when the file is requested by the NQMC or TMA. Irrespective of the method, the contractor and the NQMC shall be responsible for furnishing the required appeal file to the entity performing the next level of appeal within required time periods, if an appeal request is filed. The contractor is not required to submit to the NQMC, the professional qualifications of the medical reviewers referenced in paragraph 4.5.3.

**4.5.3.**    Contractors and the NQMC shall organize the appeal file so that the claim(s) and associated EOBs shall be the last section in the file and all additional documentation shall be arranged in front of it, in order of receipt. Attachments should not be separated from the transmitting document. Examples of documents that are part of the appeal file are:

- Claim(s) with attachments, including, when appropriate, all related claims,

- Explanation of Benefits (EOB) forms,

- Request for Preadmission/Preprocedure Authorization(s),

- Preadmission/Preprocedure Authorization(s),

- Request for medical and/or other documentation received or obtained by the contractor prior to making the initial determination,

- Medical and/or other documentation received or obtained by the contractor prior to making the initial determination,

- Initial determination,

- Written request(s) for reconsideration, including the envelope in which it was mailed,

- Request for additional evidence submitted by the appealing party,

- Additional evidence submitted by the appealing party,

- Written and signed opinion of the reviewer(s) referenced in paragraph 4.1.,

- Reconsideration determination(s),

- Professional qualifications of the medical reviewer(s) (see Figure 13-A-3),

- Appeal Summary Log (see Figure 13-A-2).

**4.6.    File Documentation For A Provider Termination Case**

For file documentation requirements in provider termination cases, see Chapter 14, Section 6, paragraph 4.4.

**5.0.    APPEAL SUMMARY LOG**

The contractor and the NQMC (when appropriate) shall complete the Appeal Summary Log (Figure 13-A-2).

**6.0.    NOTICE TO APPEALING PARTY OF RESULTS OF RECONSIDERATION**

The contractor and the NQMC shall inform the appealing party (or the representative if a representative has been appointed) of the reconsideration determination in writing in accordance with the timeliness standards set forth in Chapter 13, Sections 4 and 5. The reconsideration determination shall be typewritten in its entirety. Handwritten notices shall not be sent. At the request of the appealing party, a reconsideration determination may be sent by facsimile transmission (fax) or by electronic mail (e-mail), followed by mailing of the determination by means of the United States Postal Service. All claims that relate to the same incident of care or the same type of service to the beneficiary shall be addressed in a single reconsideration determination. If the appealing party is a non-network participating provider, a copy of the reconsideration determination shall be furnished to the beneficiary. Conversely, the non-network participating providers shall be furnished copies of the determination if the beneficiary filed the appeal. The notice shall include a caption identifying the beneficiary (including whether the beneficiary is Standard, *an* Extra user, or a Prime enrollee), the beneficiary's date of birth, the sponsor, the sponsor's social security number, the type of care (e.g., RTC care, outpatient psychotherapy, mammography, substance abuse, dental, etc.), the date(s) of service, the date(s) of service in dispute, whether the appeal was processed as a preauthorization, concurrent review, or retrospective review; and the providers (identifying each provider as network or non-network participating, or non-network nonparticipating). The notice shall include the following headings:

**6.1.     Statement Of Issues**

The contractor and the NQMC shall summarize the issue or issues under appeal and shall be clear and concise. All issues shall be addressed; for example, a reconsideration determination in all cases requiring preadmission authorization shall address the requirement for preadmission authorization of the care as well as whether the requirement was met.

**6.2.     Applicable Authority**

The contractor and the NQMC shall briefly discuss the provision of law, regulation, TRICARE policy or TRICARE guidelines on which the determination was made. Include pertinent specific citations and quotations of applicable text. The contractor should omit authority that is not applicable to the case under review (e.g., when citing cosmetic surgery policy, the contractor need not include a listing of all procedures considered by TRICARE to constitute cosmetic surgery, but should quote only the procedure(s) applicable to the case under review).

**6.3.     Discussion**

The contractor and the NQMC shall discuss the original and any added information relevant to the issue(s) under appeal, clearly and concisely, and shall state the patient's condition, including symptoms. Usually one or two paragraphs will suffice unless the issues are complex. The contractor and the NQMC shall include a discussion of any secondary issues raised by the appealing party or which may have been discovered during the reconsideration process.

**6.4.     Decision**

The contractor and the NQMC shall state the decision and whether the reconsideration upholds or reverses the original decision in whole or in part, and clearly and concisely state the rationale for the decision; i.e., fully state the reasons that were the basis for the approval or denial of TRICARE benefits. If applicable TRICARE criteria must be met, the patient's medical condition must be related to each criterion and a finding made concerning whether each criterion is met. The contractor and the NQMC shall state the amount in dispute remaining as a result of the decision and how the amount in dispute was determined (calculated). Also state whether payments are to be recouped.

**6.5.     Waiver Of Liability**

Waiver of Liability provisions are only applicable to denials as described in Chapter 13, Section 4. For applicable cases, the contractor and the NQMC shall include a statement explaining waiver of liability determination as applied *to* the beneficiary and to each provider, including the rationale for each decision. A beneficiary found not to be liable for the entire episode of care will not be offered further appeal rights. Refer to the TRICARE Policy Manual, Chapter 1, Section 4.1 for information relating to waiver of liability.

**6.6.    Hold Harmless**

Hold harmless provisions are applied only to care provided by a network provider. In applicable cases, the contractor and the NQMC shall include a statement explaining hold harmless, including how the provision is waived, the beneficiary's right to a refund, the method by which a beneficiary can request a refund, and must provide information regarding from what entity a refund can be requested. (See Chapter 5, Section 1, paragraph 2.5.)

**6.6.1.**    Suggested wording for inclusion in a reconsideration determination in which a provider is a network provider is:

"If you decide to proceed with the service or it has already been provided, and the service is provided by a network provider *who was aware of your TRICARE eligibility*, you may be held harmless from financial liability despite the service having been determined to be non-covered by TRICARE. A network provider cannot bill you for non-covered care unless you are informed in advance that the care will not be covered by TRICARE and you waive your right to be held harmless by agreeing in advance (which agreement is evidenced in writing) to pay for the specific non-covered care. If the service has already been provided when *you* receive this letter and it was provided by a network provider *who was aware of your TRICARE eligibility*, and if there was no such agreement and you have paid for the care, you *may* seek a refund for the amount you paid. This can be done by requesting a refund from [insert contractor name and address].

Include documentation of your payment for the care, by writing to the above address. If you have not paid for the care and have not signed such an agreement, and a network provider is seeking payment for the care, please notify the TRICARE Management Activity, Beneficiary and Provider Services Directorate, 16401 East Centretech Parkway, Aurora, CO 80011-9066.

Under hold harmless provisions, the beneficiary has no financial liability and, therefore, has no further appeal rights. If, however, you agree(d) in advance to waive your right to be held harmless, you will be financially liable and the appeal rights outlined below would apply. Similarly, the appeal rights outlined below apply if you have not yet received the care or if you received the care from a non-network provider and there is $50.00 or more in dispute."

**6.7.    Point-of-Service**

The Point-of-Service option is available to TRICARE Prime beneficiaries who seek or receive non-emergency specialty or inpatient care, either within or outside the network which is neither provided by the beneficiary's Primary Care Manager or referred by the Primary Care Manager, nor authorized by the contractor. The contractor and the NQMC shall provide beneficiaries who enroll in TRICARE Prime full and fair disclosure of any

restrictions on freedom of choice that may be applicable to enrollees, including the Point-of-Service (POS) option. Therefore, the contractor and the NQMC must explain the right of the beneficiary to exercise the POS option and its effect on the payment of benefits for services determined to be medically necessary (Additional information about the POS option can be found in the TRICARE Reimbursement Manual, Chapter 2, Section 3).

**6.7.1.** Suggested language to be included in a reconsideration determination where the beneficiary has been identified as a TRICARE Prime enrollee is:

> "Should you, as a TRICARE Prime enrollee, elect to proceed with this service and the service is provided by a non-network provider, and provided the service is found upon appeal to have been medically necessary, benefits will be payable under the deductible and cost-share amounts for Point-of-Service claims and your out-of-pocket expenses will be higher than they would be had you received the service from a network provider. No more than 50% of the allowable charge can be paid by the government for care provided under the Point-of-Service option."

## 6.8. Appeal Rights

The contractor and the NQMC shall state whether further appeal rights are available if the determination is less than fully favorable.

### 6.8.1. Medical Necessity Contractor Reconsideration Determinations

If the contractor reconsideration determination is less than fully favorable, the contractor shall include a statement explaining the right of the beneficiary (or representative) and the non-network participating provider to request an appeal to the NQMC for a second reconsideration. Timeframes to file an appeal of the contractor reconsideration determination are as follows:

#### 6.8.1.1. Expedited Preadmission/Preprocedure Reconsiderations

The beneficiary shall file the appeal request with the NQMC within three calendar days after the date of receipt of the initial reconsideration determination. The date of receipt of the appeal request by the NQMC shall be considered to be five calendar days after the date of mailing, unless the receipt date is documented. A request for reconsideration filed with the NQMC by the beneficiary more than three calendar days after the date of receipt but within 90 calendar days from the date of the initial reconsideration determination will be addressed as a nonexpedited reconsideration.

#### 6.8.1.2. Nonexpedited Reconsiderations

The beneficiary or non-network participating provider shall file the appeal request with the NQMC within 90 calendar days after the date of the initial reconsideration determination.

**Note:**    Refer to Chapter 13, Section 4, paragraph 2.6.2. for the appeal process in concurrent review cases.

**6.8.2.    Factual Reconsideration Determination**

If the reconsideration is less than fully favorable and $50 or more remains in dispute, the contractor shall include a statement explaining the rights of the beneficiary (or representative) and the non-network participating provider to request a formal review with TMA. A request for formal review must be postmarked or received by TMA within 60 calendar days from the date of the notice of the reconsideration determination issued by the contractor.

**6.8.3.    Reconsideration Determinations Issued By The NQMC**

If the reconsideration determination issued by the NQMC is less than fully favorable and $300 or more remains in dispute, the contractor shall include a statement explaining the right of the beneficiary (or representative) and the non-network participating provider to file a request for hearing with TMA. A request for hearing must be postmarked or received by TMA within 60 calendar days from the date of the notice on the reconsideration determination issued by the NQMC. Refer to paragraph 7.2. regarding hearings in preadmission/preprocedure cases in which the requested service(s) have not commenced.

**6.8.4.    When the Amount Required to File an Appeal Remains in Dispute**

The following wording is suggested if the amount required to file an appeal remains in dispute. (See Chapter 13, Section 2, paragraph 4.0. for required amount in dispute):

**6.8.4.1.    Nonexpedited Reconsideration Determination**

"An appropriate appealing party (i.e., (1) the TRICARE beneficiary, (2) the non-network participating provider of care or (3) a provider of care who has been denied approval under TRICARE), or the appointed representative of an appropriate appealing party, has the right to request a (insert level of appeal). The request must be in writing, be signed, and postmarked or received by **(insert the NQMC name, postal address, e-mail address, and fax number or the Appeals and Hearings Division, TMA, 16401 East Centretech Parkway, Aurora, Colorado 80011-9066), within (insert number of calendar or working)** days from the date of this decision and must include a copy of this reconsideration determination. For the purposes of TRICARE, a postmark is a cancellation mark issued by the United States Postal Service.

Additional documentation in support of the appeal may be submitted. However, because a request for **(insert level of appeal)** must be postmarked or received within **(insert number)** days from the date of the reconsideration determination, a request for **(insert level of**

appeal) should not be delayed pending the acquisition of any additional documentation. If additional documentation is to be submitted at a later date, the letter requesting the (insert level of appeal) must include a statement that additional documentation will be submitted and the expected date of submission.

Upon receiving your request, all TRICARE claims related to the entire course of treatment will be reviewed."

**6.8.4.2.    Expedited Preadmission/Preprocedure Reconsideration Determination (include in addition to the suggested wording above)**

"The TRICARE beneficiary, or the appointed representative of the beneficiary, has the alternative of requesting an expedited reconsideration. The request must be in writing, be signed and must be received by (insert the NQMC name, postal address, e-mail address, and fax number) within three working days after the receipt of this denial determination, and must include a copy of this denial determination. A request for an expedited reconsideration filed after the three day appeal filing deadline will be accepted as a nonexpedited request for reconsideration. It is recommended that any additional documentation you may wish to submit be submitted with the request for expedited reconsideration. Upon receiving your request, all TRICARE claims related to the entire course of treatment will be reviewed."

**6.8.5.    Amount In Dispute Less Than The Amount Required To File An Appeal**

For those cases in which the amount in dispute is less than the amount required to file an appeal (refer to Chapter 13, Section 2, paragraph 4.0. for Required Amount in Dispute), the contractor or the NQMC shall notify the appealing party or representative that the reconsideration determination is final and no further administrative appeal is available. The following is suggested wording:

"Because the amount in dispute is less than (insert required amount in dispute), this reconsideration determination is final and there are no further appeal rights available."

**7.0.    EFFECT OF THE RECONSIDERATION DETERMINATION**

**7.1.**    The reconsideration determination is final and binding upon all parties unless:

**7.1.1.**    The amount in dispute meets the jurisdictional requirements required to file an appeal (Refer to Chapter 13, Section 2, paragraphs 3.3. and 4.0. regarding requirements for an amount in dispute.), appeal rights were offered in the notice of denial at the reconsideration (or second reconsideration) level, and a request for a second reconsideration, formal review, or hearing, as applicable, is either postmarked or received by the appeal filing deadline, or

**7.1.2.**    The contractor's reconsideration (or NQMC's second reconsideration) decision is reopened and revised by the contractor or the NQMC, either on its own motion or at the request of a party, within one year from the date of the reconsidered determination, or

**7.1.3.**    The contractor's reconsideration (or the NQMC's second reconsideration) is reopened and revised by the contractor or the NQMC, after one year but within four years, because: new and material evidence is received; a clerical error in the reconsideration determination is discovered; the contractor or the NQMC erred in an interpretation or application of TRICARE coverage policy; or an error is apparent on the face of the evidence upon which the reconsideration (or second reconsideration) determination was based, or

**7.1.4.**    The contractor's reconsideration (or the NQMC's second reconsideration) is reopened and revised by the contractor or the NQMC at any time, if the reconsideration (or second reconsideration) determination was obtained through fraud or an abusive practice, e.g., describing services in such a way that a wrong conclusion is reached; or

**7.1.5.**    The contractor's reconsideration (or the NQMC's second reconsideration) is reversed upon appeal at a hearing in accordance with the provisions of 32 CFR 199.10 and 199.15.

**7.1.5.1.**    Beneficiaries may appeal an NQMC reconsideration determination to TMA and obtain a hearing on such appeal to the extent allowed under the procedures in 32 CFR 199.10(d).

**7.1.5.2.**    A non-network participating provider may appeal an NQMC reconsideration determination to TMA and obtain a hearing on such appeal to the extent allowed under the procedures in 32 CFR 199.10(d). The issue in a hearing requested by a provider is limited to waiver of liability (i.e., whether the provider knew or could reasonably have been expected to know that the services were excludable) (refer to paragraph 4.0.). Because waiver of liability applies only to services retrospectively determined to be potentially excludable, waiver of liability will not apply in concurrent review or preadmission/preprocedure cases (i.e., non-network participating providers may request hearings only in cases involving retrospective determinations with the issue being limited to waiver of liability.)

**7.2.**    Further appeal of a preadmission/preprocedure denial to the hearing level is not permitted unless the requested services have commenced. An appeal to a hearing where the services have not commenced is not allowed because there would not be an adequate remedy should the hearing final decision hold in favor of the beneficiary. This is because the issue at hearing would be whether the medical documentation at the time of the request for preadmission/preprocedure demonstrated medical necessity for the services requested. A final decision issued as a result of the hearing process (which may take several months to complete) holding that the beneficiary met the requirements for preadmission/preprocedure on the date the preadmission/preprocedure request was made could not be implemented as the circumstances that warranted the services at the time of the initial request would unquestionably have changed.

**8.0.    CASES RETURNED WITHOUT TMA REVIEW**

At the discretion of TMA, certain cases appealed may be returned to the contractor for processing without the issuance of a formal review or hearing decision. These cases will normally involve instances in which a processing error has resulted in a denial or partial denial of a claim; instances in which the contractor has failed to obtain additional documentation as required by paragraph 4.3.; instances in which the contractor has failed to address the entire episode of care; instances in which the contractor has erroneously identified a medical necessity issue as a factual issue and visa-versa; instances in which the contractor has failed to complete the Appeal Summary Log; and instances in which the contractor has failed to offer appropriate appeal rights. Also, TMA, in doing normal development associated with the appeal process, may obtain information that resolves the issues without further review by TMA. If the case is returned for reprocessing, for record purposes the case will be treated as a new request for reconsideration (i.e., Chapter 1, Section 3, paragraph 4.0., will apply and the returned case will be reported for workload purposes). Development for additional documentation, if necessary, will be performed as it would in any reconsideration case. The contractor shall issue a revised reconsideration determination based on the merits of the claim. If applicable, additional appeal rights shall be offered by the contractor.

**9.0.    RECORD OF RECONSIDERATION**

The contractor shall ensure maintenance of records incorporating the following requirements:

**9.1.**    The contractor shall maintain the record of its reconsideration determinations in accordance with the requirements of Chapter 2, Section 2, paragraph 1.20.

**9.2.**    The record of the reconsideration shall include:

- The initial determination.

- The basis for the initial determination.

- Documentation of the date of receipt of the request for reconsideration (include the envelope in which the request for reconsideration was received if the request was made by letter posted with the United States Postal Service).

- Record(s) of telephone contacts with provider(s).

- Evidence submitted by the parties or obtained by the contractor.

- Legible dated copies of medical (Peer) reviews with accompanying "professional qualifications" forms.

- A copy of the notice of the reconsideration determination that was provided to the parties.

C-32, March 31, 2006

A57

- Documentation of the delivery or mailing and, if appropriate, the receipt of the notice of the reconsideration determination by the parties.

- Claims and Explanations of Benefits (EOB) forms.

- Appeal Summary Log.

- Request for preauthorization.

- Response to request for preauthorization.

**10.0.   CONTRACTOR PARTICIPATION IN THE FORMAL REVIEW AND HEARING**

**10.1.**   Contractor participation in the formal review and hearing is limited to submission of written documentation to TMA to be considered in the adjudication of the appeal. TMA will notify the contractor, by requesting the contractor's appeal file, when a request for formal review or hearing is received. The contractor shall advise TMA within ten calendar days of receiving notification that a formal review or hearing request has been received, that it intends to participate in the formal review or hearing through submission of additional documentation. The additional documentation shall be received by TMA within 20 calendar days following the notice to the contractor of the receipt of the formal review or hearing request.

**10.2.**   The contractor may appear at the hearing as a witness and offer testimony in such capacity. TMA will notify the contractor when a request for hearing is received by requesting the contractor's appeal file. The contractor shall advise TMA, within ten calendar days of receiving notification that a hearing request has been received, that it intends to appear at the hearing as a witness. If the contractor has advised TMA that it intends to appear at the hearing as a witness, TMA will advise the contractor of the time and place of the hearing.

**10.3.**   If, after receiving notice from TMA that a formal review or hearing request has been submitted, the contractor and the NQMC receive additional claims or documentation related to the formal review or hearing, the contractor and the NQMC shall notify TMA of the receipt of the additional claims or documentation and submit copies of the claims or documentation to TMA, as well as copies of any written response the contractor or NQMC may have issued resulting from the receipt of additional claims or documentation.

A58

CHAPTER 13
SECTION 5

# APPEAL OF FACTUAL (NON-MEDICAL NECESSITY) DETERMINATIONS

The contractor shall provide for an appeal system allowing full opportunity for proper appealing parties to appeal adverse factual determinations. Factual determinations are issued in cases involving: coverage issues, provider authorization (status) requests, hospice care, foreign claims, denials based on sections other than 32 CFR 199.4, and both medically necessity and factual determinations. Medical or peer review may be necessary to reach a factual determination; e.g., for advice on whether regulation or policy criteria are met. Waiver of liability is not applicable.

**1.0.    INITIAL DETERMINATION**

An initial factual determination is a written decision that is other than a medical necessity determination under Chapter 13, Section 4. For further information relating to initial determinations, refer to Chapter 13, Section 1, paragraph 3.1. The initial denial determination is final and binding unless the initial determination is reversed by the contractor or revised upon appeal.

**2.0.    TIME LIMIT**

A request for reconsideration must be filed by the appealing party within 90 calendar days after the date of the notice of the initial denial determination. The contractor shall complete the review and issue its reconsideration determination to all parties within 60 calendar days after the date of receipt of the reconsideration request.

**3.0.    NOTICE**

The contractor shall issue a written reconsideration determination. Refer to Chapter 13, Section 3, paragraph 6.0. for the required content of the notice to the appealing party of the results of the reconsideration determination.

**4.0.    RECORD**

Refer to Chapter 13, Section 3, paragraph 9.0. for the record of the factual reconsideration determination to be maintained by the contractor.

**5.0.    EXAMPLES OF FACTUAL DETERMINATIONS**

**5.1.    Determinations Related To Coverage Issues**

Denial determinations based on coverage limitations contained in 32 CFR 199, the TRICARE Policy Manual, and other TRICARE guidance, are considered factual determinations. If it is determined that a service or supply is covered, but is not medically

1

A59

necessary, at an inappropriate level of care, is custodial care or other reasons relative to reasonableness, necessity or appropriateness, the denial will be a medical necessity determination under Chapter 13, Section 4 (see Example 1, below). The following are examples of denials based on coverage limitations:

**EXAMPLE 1:**   A woman received an abortion *and although the services were found to be medically necessary (i.e., generally accepted by qualified professionals to be reasonable and adequate for the treatment of her condition)*, the coverage criteria set forth in the TRICARE Policy Manual *were not met*. Although *the care was determined to be medically necessary, since the coverage criteria were not met, benefits must be disallowed and appeal rights offered under this section. (Note: If the facts were reversed such that* coverage criteria *were* met *but the care was found* not *to be* medically necessary, benefits *would* be disallowed and appeal rights offered under the Chapter 13, Section 4.)

**EXAMPLE 2:**   Payment is denied for surgical evacuation of hematomas following removal of breast implants from a previous noncovered augmentation mammoplasty because the beneficiary's hematomas do not constitute a separate medical condition under 32 CFR 199.4(e)(9). Removal of the hematomas is medically necessary, but the denial is based on a coverage limitation because the complication is not a separate medical condition from the noncovered augmentation mammoplasty. This is an example of a case where medical review may be required to determine whether regulation or policy criteria are met. *Notwithstanding the necessity for involvement of a medical reviewer, because the denial is based on a coverage limitation, a factual determination results that is appealable to a formal review conducted by the TRICARE Management Activity Appeals and Hearings Division.*

## 5.2.   Termination Of A Provider

Contractor requirements for terminating a provider's status as a TRICARE-authorized provider are found in Chapter 14, Section 6, paragraph 4.3. Under 32 CFR 199.10(c) and (d), an initial determination issued by the contractor terminating a provider is appealed directly to a hearing conducted by the TMA Appeals and Hearings Division.

## 5.3.   Provider Status

An initial determination denying a provider's request for approval as an authorized TRICARE provider is a factual determination. Under 32 CFR 199.10(c), a reconsideration determination issued by the contractor denying a provider's request for approval as an authorized TRICARE provider is appealable to a formal review conducted by the TMA Appeals and Hearings Division.

## 5.4.   Hospice Care

An initial determination denying hospice care is a factual determination. Under 32 CFR 199.4(e)(19)(vii), a beneficiary or provider is entitled to appeal rights for cases involving a denial of hospice care benefits in accordance with the provisions of 32 CFR 199.10. An adverse reconsideration determination issued by the contractor denying TRICARE cost-

sharing for hospice care is appealed to a formal review conducted by the TMA Appeals and Hearings Division.

**5.5.    Circumvention Of The TRICARE DRG System**

A hospital dissatisfied with a determination regarding circumvention of the TRICARE DRG system may obtain a reconsideration. Circumvention is defined as an action that results in unnecessary multiple admissions of an individual or other inappropriate medical practices. An adverse reconsideration determination issued by the contractor finding circumvention of the TRICARE DRG system is appealed to a formal review conducted by the TMA Appeals and Hearings Division.

**5.6.    *Extended Care Health Option (ECHO)***

*A determination that a TRICARE beneficiary is not eligible for the ECHO is considered a factual determination based on a requirement of the law or regulation and as such is not appealable. Denial of ECHO services and supplies to an ineligible beneficiary is also not appealable. ECHO services and supplies that are denied to a registered ECHO beneficiary are appealable; the beneficiary or sponsor shall be advised of the right to file a request for a formal review with the TMA Appeals and Hearings Division.*

*The waiver of liability under the TRICARE Basic Program (32 CFR 199.4) is not applicable to the ECHO (32 CFR 199.5).*

**5.7.    TRICARE Overseas Program**

Denials of authorizations, services and supplies under the TRICARE Overseas Program, are considered factual determinations. If the reconsideration determination is less than fully favorable, the appealing party shall be advised of the right to file a request for a formal review with the TMA Appeals and Hearings Division.

## CERTIFICATE OF SERVICE

I, Jennifer Gimler Brady, hereby certify this 15th day of March, 2007, that the

foregoing **APPENDIX TO HEALTH NET FEDERAL SERVICES, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT** was electronically filed with U.S. District Court District of

Delaware via CM/ECF (Official Court Electronic Document Filing System) which will send

notification of such filing that the document is available for viewing and downloading via

CM/ECF to the following counsel of record:

> Matt Neiderman, Esquire
> Duane Morris LLP
> 1100 North Market Street
> Suite 1200
> Wilmington, DE  19801

> Jennifer Gimler Brady (Del. Bar 2874)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, Sixth Floor
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE  19899
> (302) 984-6000 - Telephone
> (302) 658-1192 - Facsimile
> jbrady@potteranderson.com

> *Attorneys for Defendant Health Net Federal
> Services, LLC*