## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC. and GIFFORD MEDICAL CENTER, INC. *for themselves and on behalf of all other similarly situated class members,*<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH NET FEDERAL SERVICES, LLC, (f/k/a HEALTH NET FEDERAL SERVICES, INC.),<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 07-39-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## HEALTH NET FEDERAL SERVICES, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

OF COUNSEL:

Arthur N. Lerner
Kathleen Taylor Sooy
Christopher Flynn
Tracy A. Roman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500 – Telephone
(202) 628-5116 – Facsimile
ksooy@crowell.com – E-mail
cflynn@crowell.com – E-mail

Dated: April 30, 2007

Richard L. Horwitz (Del. Bar 2246)
Jennifer Gimler Brady (Del. Bar 2874)
Jennifer C. Wasson (Del. Bar 4933)
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
rhorwitz@potteranderson.com – E-mail
jbrady@potteranderson.com – E-mail

*Attorneys for Defendant Health Net Federal Services, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.     PLAINTIFFS HAVE NO CLAIM FOR BREACH OF IMPLIED-IN-FACT
       CONTRACT OR UNJUST ENRICHMENT. ..................................................... 2

       A.     Plaintiffs' Interpretation Of 32 C.F.R. § 199.14(a)(5) Fails As a Matter of
              Law ......................................................................................................... 2

       B.     Because Health Net Does Not Have A Legal Duty To Pay More Than The
              Allowable Charge Amount, Plaintiffs Cannot Maintain Their Claims
              Against Health Net..................................................................................... 5

       C.     Plaintiffs' Claims Fail For Additional Reasons .......................................... 6

              1.     Plaintiffs Cannot, As A Matter of Law, Establish A Claim For
                     Breach Of An Implied-in-Fact Contract ........................................ 6

              2.     Plaintiffs Cannot State A Claim For Unjust Enrichment................... 8

II.    THE UNITED STATES IS A REAL PARTY IN INTEREST ............................. 9

III.   THE COURT SHOULD ALSO DISMISS THIS ACTION  FOR LACK OF A
       NECESSARY AND INDISPENSABLE PARTY ............................................. 13

       A.     The United States Is A Necessary Party Under Rule 19(a) ..................... 13

       B.     The United States Is An Indispensable Party Under Rule 19(b) ............ 15

IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BASED ON THEIR
       FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES ......................... 18

V.     THE TMA HAS PRIMARY JURISDICTION OVER PLAINTIFFS' CLAIMS ............. 19

CONCLUSION............................................................................................................ 20

# TABLE OF AUTHORITIES

Page

## Cases

*Alleghany Gen. Hosp., v. Philip Morris, Inc.,*
   228 F.3d 429 (3d Cir. 2000) ................................................................................. 5, 6

*Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs.,*
   368 F.3d 894 (6th Cir. 2004) ............................................................................... 11, 12

*Board of Trustees of Bay Med. Ctr. v. Humana Military Healthcare Servs.,*
   2004 U.S. Dist. LEXIS 22147, *aff'd*, 447 F.3d 1370 (Fed. Cir. 2006)........................... 11, 12

*Borg-Warner Acceptance Corp. v. Dep't of State,*
   426 N.W.2d 717 (Mich. Ct. App. 1988), *rev'd on other grounds,*
   444 N.W.2d 786 (Mich. 1989)................................................................................. 5

*Brittel v. United States,*
   372 F.3d 1370 (Fed. Cir. 2004) ............................................................................. 17

*Christman v. Grays,*
   No. 1:05-CV-192, 2005 WL 3088529 (S.D. Ohio Nov. 17, 2005) ...................................... 10

*Clark Oil, Inc. v. Texaco,*
   609 F. Supp. 1373 (D. Del. 1985)............................................................................. 19, 20

*Enterprise Mgmt. Consultants v. United States,*
   883 F.2d 890 (10th Cir. 1989) ............................................................................. 17

*Far East Conference v. United States,*
   342 U.S. 570 (1952)............................................................................................. 19

*Gardiner v. Virgin Islands Water & Power Auth.,*
   145 F.3d 635 (3d Cir. 1998) ............................................................................. 16

*Green Hosp. v. United States,*
   23 Cl. Ct. 393 (1991)............................................................................................. 18

*Housing Auth. of City of Jersey City v. Jackson,*
   749 F. Supp. 622 (D.N.J. 1990)............................................................................. 17

*Laveson v. Trans World Airlines,*
   471 F.2d 76 (3d Cir. 1972) ............................................................................. 20

*MCI Commc'n Corp. v. American Tel. & Tel. Co.*,
  496 F.2d 214 (3d Cir. 1974) ................................................................................ 19

*McLean Hosp. Corp. v. United States*,
  26 Cl. Ct. 1144 (1992) ....................................................................................... 18

*Merkle v. Health Options, Inc.*,
  940 So. 2d 1190 (Fl. Dist. Ct. App. 2006) ......................................................... 9

*Metrophones Telecom., Inc. v. Global Crossing Telecom., Inc.*,
  423 F.3d 1056 (9th Cir. 2005) ............................................................................ 7

*Michael Reese Hosp. & Med. Ctr. v. Chi HMO, Ltd.*,
  554 N.E.2d 472 (Ill. App. Ct. 1990) ................................................................... 9

*Murray v. Northrup Grumman Info. Tech., Inc.*,
  444 F.3d 169 (2d Cir. 2006) ............................................................................... 8

*Oh v. AT&T Corp.*,
  76 F. Supp. 2d 551 (D.N.J. 1999) ...................................................................... 20

*Perry v. Am. Tobacco Co.*,
  324 F.3d 845 (6th Cir. 2003) .............................................................................. 6

*Precision Pay Phones v. Qwest Commc'ns Corp.*,
  210 F. Supp. 2d 1106 (N.C. Cal. 2002) .............................................................. 9

*Richman Bros. Records, Inc. v. U.S. Sprint Commc'n Co.*,
  953 F.2d 1431 (3d Cir. 1991) ............................................................................ 20

*River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*,
  173 S.W.3d 43 (Tenn. Ct. App. 2002) ................................................................ 9

*Sellers v. Brown*,
  633 F.2d 106 (8th Cir. 1980) ............................................................................. 18

*Tassy v. Brunswick Hosp. Ctr.*,
  296 F.3d 65 (2d Cir. 2002) ............................................................................... 19

*Taylor v. Savage*,
  No. 05-10-0032, 2007 WL 549913 (Del. Ct. Com. Pl. Jan. 2, 2007) ................ 6

*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*,
  832 A.2d 501 (Pa. Super. Ct. 2003) ................................................................... 9

## Statutes

10 U.S.C. § 1079(j)(2)(A) ........................................................................... 3

28 U.S.C. § 1346 (a)(2) ............................................................................ 17

28 U.S.C. § 1491(a)(1) ............................................................................. 17

32 C.F.R. § 199.10(b)(2) ......................................................................... 19

32 C.F.R. § 199.10(c)(2) .......................................................................... 19

32 C.F.R. § 199.14(a)(5) ....................................................................... 2, 3

32 C.F.R. § 199.17(a)(6) ........................................................................... 8

32 C.F.R. § 199.17(o) ................................................................................ 8

32 C.F.R. § 199.2 .................................................................................... 18

32 C.F.R. § 199.2(b) ............................................................................. 2, 3

32 C.F.R. § 199.4(f)(3) .............................................................................. 9

32 C.F.R. § 199.6(a)(8) ........................................................................... 13

## Other Authorities

26 Williston on Contracts § 68:5 (4th ed. 2006) ........................................ 6

3 Williston on Contracts §7:41 (4th ed. 2006) ........................................... 7

70 Fed. Reg. 61368 (Oct. 24, 2005) ..................................................... 3, 4

MCS Model Contract, § G-3.a.(3)(b) ....................................................... 11

MCS Model Contract, § G-3.a.(3)(l) ........................................................ 10

MCS Model Contract, § G-3.a.(3)(m) ...................................................... 10

MCS Model Contract, § H-1.a ................................................................. 10

MCS Model Contract, § H-1.b ................................................................. 10

TOM Chapter 3, § 2, ¶ 1.1 ...................................................................... 11

TOM, Chapter 13, § 2, ¶ 3.2 ................................................................... 18

**INTRODUCTION**

Plaintiffs' Answering Brief does not rescue their claims from dismissal for the following reasons. First, Plaintiffs' claims fail because their assertion that Health Net owes a legal obligation to pay Plaintiffs "facility charges" in addition to TMA's "allowable charge" for outpatient hospital service rendered to TRICARE beneficiaries is unfounded.[1] The TRICARE regulations are clear that Plaintiffs are not entitled to additional compensation for any outpatient services for which TMA has established a maximum "allowable charge." Because Health Net has no legal obligation to pay Plaintiffs any amount in excess of the TRICARE-established "allowable charges," Plaintiffs cannot state a claim for either breach of an implied-in-fact contract or unjust enrichment, and both claims should be dismissed in their entirety.

Second, Plaintiffs' argument that Health Net is the only real party in interest is unavailing. If the Court adopts Plaintiffs' interpretation of the TRICARE regulation at issue, not only will the government be required to pay additional costs associated with the provision of health care services, but TRICARE beneficiaries will also be liable for millions of dollars of deductibles and co-insurance associated with the resulting increased costs of outpatient hospital services. For these reasons, the government clearly has a stake in this litigation, which should not be adjudicated without its participation as a party. Further, it is indisputable that resolving Plaintiffs' claims will require the Court to resolve Health Net's obligations under its contract with the TMA.

Third, the Court should dismiss Plaintiffs' claims for failure to exhaust administrative remedies. Plaintiffs' argument that they have no right to appeal Health Net's failure to reimburse

---

[1] Health Net respectfully refers the Court to its Opening Brief for the definitions of capitalized terms in this Reply.

them for their facility charges is based on an inaccurate interpretation of the applicable
regulations. TMA clearly has the authority to review whether its rules were properly applied by
Health Net in processing Plaintiffs' claims for services rendered to TRICARE beneficiaries.

Finally, the Court should defer to TMA for interpretation of its own regulations under the
primary jurisdiction doctrine. While Plaintiffs vehemently oppose review of this issue by TMA,
the agency that promulgated the disputed regulations, the agency should provide guidance on the
technical requirements of this complex regulatory payment scheme. The Court should dismiss
Plaintiffs' claims and refer them to TMA for resolution.

## ARGUMENT

### I.    PLAINTIFFS HAVE NO CLAIM FOR BREACH OF IMPLIED-IN-FACT CONTRACT OR UNJUST ENRICHMENT.

Plaintiffs' common law claims for breach of an implied-in-fact contract and unjust
enrichment fail because they are premised on a legal obligation that does not exist, and as a
result, Plaintiffs have not pled and cannot plead the necessary elements of these claims.

#### A.    Plaintiffs' Interpretation Of 32 C.F.R. § 199.14(a)(5) Fails As a Matter of Law

32 C.F.R. § 199.14(a)(5) establishes the payment methodology for non-network hospitals
(such as Plaintiffs) that provide covered outpatient hospital services to TRICARE beneficiaries.
Under the regulation, the applicable "allowable charge" is the proper reimbursement for
laboratory services, rehabilitation therapy services, venipuncture, radiology services, diagnostic
services, ambulance services, durable medical equipment and supplies, oxygen and related
supplies, drugs administered other than orally and professional provider services. 32 C.F.R.
§ 199.14(a)(5)(i)-(x). *See also* 32 C.F.R. § 199.2(b) ("allowable charge[s]" and "allowable
cost[s]" are determined by CHAMPUS).

By contrast, a separate subsection of the regulation provides that "facility charges" are to be paid "as billed." 32 C.F.R. § 199.14(a)(5)(xi). "Facility charge" is defined, in turn, to mean:

> ... the charge, either inpatient or outpatient, made by a hospital or other institutional provider to cover the overhead costs of providing the service. These costs would include building costs, *i.e.*, depreciation and interest; staffing costs; drugs and supplies; and overhead costs, *i.e.*, utilities, housekeeping, maintenance, etc.

32 C.F.R. § 199.2(b).

Plaintiffs argue that they are entitled to whatever they "bill" for outpatient services, claiming that, for each outpatient service listed in 32 C.F.R. § 199.14(a)(5)(i)-(x), they are entitled to *both* the TMA "allowable charge" and a separate "facility charge" associated with that same service. Pl. Br. at 32. For example, under Plaintiffs' theory, hospitals performing a venipuncture (a needle stick) are entitled not only to the TMA allowable charge for that service but also to a separate "facility charge," meaning Plaintiffs would receive the full amount they billed for every outpatient hospital service they performed. Plaintiffs' interpretation, if adopted by the Court, would render the "allowable charge payment" methodology meaningless, permitting Plaintiffs and other providers to receive the full billed amount for all outpatient services, even if those services were subject to the allowable charge payment maximum. Clearly, the TMA did not intend such an absurd result.[2]

---

[2] Federal law requires DoD to adopt to the extent practicable the same reimbursement rules for TRICARE as are used under Medicare. *See* 10 U.S.C. § 1079(j)(2)(A). Thus, as Medicare phased in new payment rates for hospital outpatient care, DoD clarified payment rules for hospital-based outpatient services with "established allowable TRICARE charges." 70 Fed. Reg. 61368, 61371-72 (Oct. 24, 2005). The congressional directive and agency policy has been to move away from reimbursement that flows through whatever amounts a hospital has charged, and instead use, where they have been established, an allowable charge cap that limits federal outlays.

TMA has clarified that facility charges and allowable charges are separate, mutually exclusive payment methodologies. In the preamble to the Federal Register notice in which TMA promulgated the outpatient services payment regulation, TMA explained:

> [t]his rule clarifies payments for hospital based outpatient services that have established allowable TRICARE charges.... For these services, payments are based on the TRICARE allowable cost method in effect for professional providers or the CHAMPUS Maximum Allowable Charge (CMAC).... *All other outpatient hospital services, except for ambulatory surgery services, shall be paid as billed such as facility charges.*

70 Fed. Reg. 61368, 61372 (Oct. 24, 2005) (emphasis added). The preamble dispels any notion that Plaintiffs are entitled to both an "allowable charge" and a "facility charge" for the very same outpatient hospital service. Rather, they are entitled to *either* the allowable charge, if one exists, *or* their billed charges, if no allowable charge has been established.

Contrary to Plaintiffs' contention in their Complaint and Answering Brief, recent correspondence from TMA to Health Net does not bolster Plaintiffs' interpretation of 32 C.F.R. § 199.14(a)(5). In their Answering Brief, Plaintiffs specifically assert that "TMA recently confirmed the requirement of § 199.14(a)(5)(xi) that facility charges relating to hospital outpatient services are to be reimbursed 'as billed'." Pl. Br. at 7; *see also* Complaint ¶¶ 31, 33, 36-37, 52-53. While Health Net agrees that facility charges are to be paid as billed, TMA has never suggested that hospitals are entitled to receive both an "allowable charge" and a "facility charge" for the same outpatient service.

In its April 14, 2006 correspondence to Health Net, TMA explained as follows:

> For outpatient services, SCHs [sole community hospitals] are reimbursed based on the allowable charge when the claim has sufficient Healthcare Common Procedure Coding System (HCPCS) coding information. ... Other services without allowable charges, such as facility charges, are reimbursed based on billed charges.

\* \* \* \*

> For outpatient services, CAHs [critical access hospitals] are reimbursed based on the allowable charge when the claim has sufficient HCPCS coding information. ... Other services without allowable charges, such as facility charges, are reimbursed based on billed charges.

\* \* \* \*

> When sufficient coding information is provided, outpatient hospital services including emergency services, clinical laboratory services, rehabilitation therapy, venipuncture, and radiology services are paid using existing allowable charges. ...

See Letter from Laura Sells, Contracting Officer, TMA, to Charles Rose, Health Net, dated April 14, 2006 ("TMA Letter") (Exhibit A to the Complaint). The TMA Letter compels the conclusion that only those services that do not have an allowable charge are to be paid according to the hospital's billed charges. The only services for which the hospital receives billed charges are those services (or "codes") for which TMA has not yet established an allowable charge. This includes "facility charges." The TMA Letter clearly shows that "facility charges" are not to be paid as if they were part and parcel of every outpatient service that hospitals provide, and thus offers no support for Plaintiffs' strained interpretation of 32 C.F.R. § 199.14(a)(5).

**B.** **Because Health Net Does Not Have A Legal Duty To Pay More Than The Allowable Charge Amount, Plaintiffs Cannot Maintain Their Claims Against Health Net**

To prove a claim for breach of an implied-in-fact contract, Plaintiffs must prove, among other elements, mutuality of obligation. *See Borg-Warner Acceptance Corp. v. Dep't of State*, 426 N.W.2d 717, 718-19 (Mich. Ct. App. 1988), *rev'd on other grounds*, 444 N.W.2d 786 (Mich. 1989). Where, as here, the legal obligation upon which the mutuality of obligation rests is illusory, a claim for breach of an implied-in-fact contract will not lie. *Alleghany Gen. Hosp., v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000).

- 5 -

Likewise, in order to demonstrate unjust enrichment, Plaintiffs must prove that they conferred a benefit upon Health Net by providing outpatient services to TRICARE beneficiaries and that it was inequitable for Health Net not to pay "facility charges" in addition to TMA's allowable charge amount for those services. *See, e.g.*, 26 Williston on Contracts § 68:5 (4th ed. 2006); *Allegheny Gen. Hosp. v. Phillip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000); *Taylor v. Savage*, No. 05-10-0032, 2007 WL 549913, at *2 (Del. Ct. Com. Pl. Jan. 2, 2007) (Exhibit H to Health Net's Opening Brief). Since Plaintiffs are not entitled to both TMA's allowable charge and a facility charge for the same outpatient service, Health Net has not been unjustly enriched by allegedly failing to pay facility charges to Plaintiffs. Because of this fatal defect, Plaintiffs' unjust enrichment claim fails as a matter of law. *See Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003) (dismissing plaintiffs' claim that the defendant health insurer had been unjustly enriched by a third party's payment of smokers' medical costs and stating that "Defendants have no legal duty to smokers to pay their medical costs").

### C. Plaintiffs' Claims Fail For Additional Reasons

Even if the proper interpretation of 32 C.F.R. § 199.14(a)(5) does not dispose of their claims, Plaintiffs have not stated claims for breach of an implied-in-fact contract or unjust enrichment for additional reasons.

### 1. Plaintiffs Cannot, As A Matter of Law, Establish A Claim For Breach Of An Implied-in-Fact Contract

In their Answering Brief, Plaintiffs argue that "the CHAMPUS/TRICARE regulations serve a 'rate-setting' function so that MCS Contractors and non-network participating providers have a common understanding, *i.e.*, a meeting of the minds, on the terms of reimbursement." Pl. Br. 12. Stated another way, Plaintiffs contend that the TMA payment regulation at issue, which Health Net did not promulgate or impose on Plaintiffs, forms the basis of the parties' purported

contract. 32 C.F.R. §199.14(a)(5), however, does not reflect a "meeting of the minds" between Plaintiffs and Health Net.[3] Rather, this regulation is a directive from TMA regarding the manner in which to pay outpatient hospital claims. A federal payment regulation simply cannot form the obligation owed to another party as part of an implied contract. *See* Health Net's Br. at 33-35.

Moreover, Plaintiffs' reliance on *Metrophones Telecom., Inc. v. Global Crossing Telecom., Inc.*, 423 F.3d 1056 (9th Cir. 2005), is misplaced. The *Metrophones* court held that common law claims for breach of contract are not preempted by the Communications Act. *Metrophones*, 423 F.3d at 1076. The *Metrophones* court, however, never considered the sufficiency of the plaintiffs' claim for breach of an implied-in-fact contract. *Id.* at 1075 (". . . we make no comment as to the merits of any of plaintiffs' claims. Defendant has not argued, thus far in the litigation, that any of those claims fails to state a claim. ...").

Likewise, Plaintiffs' contention that Health Net's pre-existing legal obligation under its contract with DoD to administer claims in accordance with the TRICARE regulations also supports their implied contract claim is a red herring. Essentially, Plaintiffs argue that Health Net has promised to pay Plaintiffs what the TRICARE regulations require. Pl. Br. at 12. Health Net's purported promise to do what is required by regulation does not create an implied contract with Plaintiffs. *See* 3 Williston on Contracts §7:41 (4th ed. 2006) ("If a promise is already bound by official duty to render a service, it is no detriment to him and no benefit to the promissor beyond what the law requires the promisee to suffer or to give, for him to do or agree to do the service on request.").

---

[3] At best, §199.14(a)(5) may form the basis of a relationship between Plaintiffs and the government.

- 7 -

Finally, Plaintiffs' attempt to distinguish the holding in *Murray v. Northrup Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006), is unpersuasive. The *Murray* court held that a government contractor's fulfillment of its pre-existing obligations to the government "does not amount to consideration" for an alleged contract with a third party. *See Murray*, 444 F.3d at 178. Plaintiffs argue that *Murray* is distinguishable because the plaintiffs were federal program beneficiaries. Plaintiffs, however, fail to explain how this supposed distinction diminishes *Murray's* holding that a promise to do what one is already required to do under federal law will not support a claim for breach of an implied-in-fact contract.

In any event, Plaintiffs' right to payment from Health Net only arises if Health Net accepts an assignment of benefits from the beneficiary to Plaintiffs, such that Plaintiffs are standing in the beneficiary's shoes. *See, e.g.,* Compl. ¶ 26; *see also* discussion, *infra*, Section II, pp. 12-13. Thus, even if the fact that the *Murray* plaintiffs were beneficiaries were relevant, the case still stands for the proposition that Plaintiffs' implied contract claim fails as matter of law.

### 2.    Plaintiffs Cannot State A Claim For Unjust Enrichment

Plaintiffs sum up their unjust enrichment claim by asserting that "they have provided services to Defendant's enrollees, thereby conferring a benefit on Defendant . . . ." Pl. Br. at 18. TRICARE beneficiaries do not enroll in Health Net products or plans. Rather, they enroll in various TRICARE benefit options. The TMA then determines the benefits available to beneficiaries and tracks their eligibility for benefits. 32 C.F.R. § 199.17(a)(6), (o). Health Net's role, as an MCS Contractor in the TRICARE program, is limited to making available a network of providers and processing claims for services rendered to TRICARE beneficiaries. *Id.* at § 199.17(a)(6)(iii)(A). As a result, the duty to care for beneficiaries belongs to the government, and the benefit conferred by the Plaintiffs' provision of care, if any, is conferred upon the

beneficiary. Because Plaintiffs cannot, as a matter of law, establish that they conferred a benefit conferred to Health Net, their unjust enrichment claim must fail.

Finally, the cases cited by Plaintiffs in support of their unjust enrichment claim are inapposite.[4] Plaintiffs have not conferred a benefit upon Health Net by providing services to its "enrollees" because TRICARE beneficiaries do not enroll in a Health Net plan. Rather, the individuals to whom Plaintiffs provided services are beneficiaries of the TRICARE program. Accordingly, Plaintiffs have not pled an actionable claim for unjust enrichment.

## II.    THE UNITED STATES IS A REAL PARTY IN INTEREST

Plaintiffs' assertion that "the 'at-risk' nature of Defendant's contract with TMA puts only *Defendant's funds* at stake in this action" is wrong. Pl. Br. at 19 (emphasis in original). First, as set forth in the regulations and manuals that govern the TRICARE program, TRICARE beneficiaries are liable for deductibles that would be affected by increased payments to Plaintiffs, as well as up to 25% of the costs of care provided in an outpatient, non-network setting.[5]

---

[4] *See Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1199 (Fl. Dist. Ct. App. 2006) (court overturned dismissal of plaintiff's unjust enrichment claim because trial court improperly considered the "ultimate merits" of the plaintiff's claim); *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 507 (Pa. Super. Ct. 2003) (unjust enrichment claim was not based on the plan's failure to pay in accordance with a specific law or regulation, but was supported by the court's finding that the defendant "did not pay reasonable value for the services rendered"); *River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 56, 59-60 (Tenn. Ct. App. 2002) ("critical" to the survival of the plaintiff's unjust enrichment claim was the fact that plaintiff "sought recovery only for the 'emergency' patients," whom federal law required the plaintiff to treat); *Precision Pay Phones v. Qwest Commc'ns Corp.*, 210 F. Supp. 2d 1106, 1112 (N.C. Cal. 2002) (case did not include an unjust enrichment claim); *Michael Reese Hosp. & Med. Ctr. v. Chi HMO, Ltd.*, 554 N.E.2d 472, 474-75) (Ill. App. Ct. 1990) (hospital alleged that the HMO received reimbursement from state agency in excess of what it paid to hospital).

[5] *See* 32 C.F.R. § 199.4(f)(3)(i). The TRICARE deductible amounts for active duty family members ("ADFM") are specified in 32 C.F.R. § 199.4(f)(2)(i). The TRICARE cost share amount for outpatient services by ADFM TRICARE beneficiaries is specified in 32 C.F.R.

(continued...)

Requiring Health Net to pay Plaintiffs a higher reimbursement amount imposes additional

cost-sharing on virtually every TRICARE beneficiary as well as the government.

In addition, while the term "at risk" does not even appear in Plaintiffs' Complaint,

Plaintiffs use it no fewer than 17 times in their Answering Brief to explain why the government

has no stake in this case.  Health Net, however, is not "at risk" for direct health care costs for

benefits provided to TRICARE beneficiaries.  *See* MCS Model Contract, § G-3.a.(3)(l) and (m)

(Appendix at pp. C20-21).

The solicitation and proposal Plaintiffs cite in paragraph 19 of their Complaint, and the

model contract that was incorporated into the proposal, make it clear that the current MCS

Contract does not impose financial liability on contractors for the direct costs of health care

services.  *See* MCS Model Contract, § G-3.a.(3)(l) and (m) (Appendix at pp. C20-21).

The "at-risk" features of the contract do not involve direct health care costs such as those

at issue in this case, but rather are confined to a separate "underwriting fee."  This fee is

calculated based on the overall cost of health care services that are ultimately incurred by the

government.[6]  *See* MCS Model Contract, § H-1.a and b (Appendix at p. C23).  Plaintiffs are

---

(continued)

199.4(f)(2)(iii) (ADFM liable for 20% of allowed amounts in excess of deductible).  The
TRICARE cost share amount is specified in 32 C.F.R. 199.4(f)(3)(iii) (non-ADFM liable for
25% of allowed amounts). TRICARE deductible and cost share amounts are also addressed in
the TRICARE Reimbursement Manual 6010.55-M, Chapter 2, Section 1 (Appendix p. C1).

[6] Using the precise terms of the model contract, health care costs that are used to calculate the
incentive adjustment are referred to as "underwritten" costs.  The costs for other health care
services that Health Net processes under the MCS Contract (including services for active duty
personnel under what is referred to as the supplemental program, set forth in 32 C.F.R. § 199.16)
are "non-underwritten" costs, which are excluded from any "at-risk" fee.  As set forth in
*Christman v. Grays*, No. 1:05-CV-192, 2005 WL 3088529, at **2-3 (S.D. Ohio Nov. 17, 2005)
(Exhibit F to Health Net's Opening Brief), the United States is the real party in interest for
amounts charged to or on behalf of active duty personnel whose expenses are covered through

(continued...)

seeking reimbursement for health care services for which the government has direct financial

responsibility under the MCS Contract. The MCS contracts analyzed in *Board of Trustees of*

*Bay Med. Ctr. v. Humana Military Healthcare Servs.*, 2004 U.S. Dist. LEXIS 22147, *aff'd*, 447

F.3d 1370 (Fed. Cir. 2006) (Exhibit B to Pl. Br. (compendium of cases)) and *Baptist Physician*

*Hosp. Org., Inc. v. Humana Military Healthcare Servs.*, 368 F.3d 894, 901 (6th Cir. 2004), two

cases on which Plaintiffs heavily rely (see Pl. Br. at 19-23), were procured through an earlier

bidding process in which MCS contractors were at risk for health care costs. That is not the case

with the current MCS Contracts. *See* Pl. Br. at 19-23.

Plaintiffs' reliance on *Bay Medical* and *Baptist* is misplaced for additional reasons. The

plaintiffs in those cases, contracted network providers, sought to collect privately negotiated

amounts that were *in excess* of any government liability. These amounts were required *by law*

*and contract* to be paid with the contractor's own funds. *See Bay Medical*, 2004 U.S. Dist.

LEXIS 22147, **9-12; *Baptist*, 368 F.3d at 895-96. The defendant contractor in *Bay Medical*

argued that it would be a misuse of federal funds to pay providers at a rate that exceeded the

maximum TRICARE rates even though it had *expressly committed* in writing to pay exactly that.

*See* 2004 U.S. Dist. LEXIS 22147, *18. Yet, the fact that the MCS Contract and TMA

_____

(continued)

the supplemental program. Health Net is not even arguably at risk for amounts paid for claims
under the supplemental program. Indeed, payment for all non-underwritten claims is drawn
directly from the Federal Reserve Bank. MCS Model Contract, § G-3.a.(3)(m)[1] (Appendix at
pp. C20-21). Plaintiffs make no distinction between these various classes of beneficiaries, nor
could they, because "claims processing payments procedures are the same for both underwritten
and non-underwritten benefit claims." MCS Model Contract, § G-3.a.(3)(b)[4] (Appendix at p.
C20). *See also* TOM, Chapter 3, § 2, ¶ 1.1 (establishing a mechanism by which contractors are
reimbursed for the direct costs of health care services) (Opening Brief Appx. at A20).

- 11 -

regulations protected the government from liability for such "excess" amounts was the very reason the government's interests were not implicated:

> The contractor cannot pay any claim beyond what federal law allows from the healthcare portion of the monthly allotment; however, the contractor is permitted to pay network providers beyond the Government's allowed amounts. If the contractor chooses to do so, then any overage is paid for out of the contractor's administrative portion of the allotment, which results in less profit for the contractor. Thus, the funds do not simply "pass-through" [from the government] to the providers. . . .

2004 U.S. Dist. LEXIS 22147, at **24-25; *see also Baptist,* 368 F.3d at 900-01. Here, unlike in *Bay Medical*, there are no allegations that Health Net agreed to reimburse hospitals at rates that exceed what the federal regulations mandate. Even if Health Net were "at risk" for claims *in excess of* the federally mandated allowable charge, it does not follow that it is "at risk" for amounts needed to correct any *underpayments* based on the Court's interpretation of the TMA allowable charge regulations.

Plaintiffs' attempt to analogize their claims to those of the network providers in *Bay Medical* also turns on its head the process by which non-network participating providers become entitled to payment. Plaintiffs state that Health Net "alone makes the decision, and bears the risk, of whether to enter into express contracts with providers or to accept the default rates set by TMA." Pl. Br. at 22. Therefore, the absence of a contract between Health Net and a provider is evidence of the contractor's "choice" to enter into an implied contract with non-network participating providers at the TMA rates. *Id.* at *14*. Thus, Plaintiffs argue, Health Net's obligations to the Plaintiffs are private arrangements of its own making. *Id.* at 22-23.

However, as Plaintiffs allege in paragraph 26 of their Complaint, if there is any choice to be made, it is non-network providers that "have the option of accepting assignment of benefits from TRICARE beneficiaries." What Plaintiffs characterize as an "independent contract" freely

- 12 -

entered into by Health Net is actually an *election* by the provider to accept assignment of the *beneficiary's* right to payment of benefits under a government program when the *beneficiary* uses a non-network provider. The assignment creates an obligation that is independent of the conduct of a MCS Contractor such as Health Net, and does not create an implied contract between Health Net and the provider. Rather, the contractual obligation runs directly from the government to the beneficiary, and via the provider's acceptance of the assignment of the beneficiary's legal entitlement, to the provider. *See* 32 C.F.R. § 199.6(a)(8)(ii).

Put another way, Plaintiffs' rights are derived from the beneficiary's, and the beneficiary's are derived from the TRICARE program. As Health Net stated in its Opening Brief, whatever obligation Health Net had towards Plaintiffs, it arose out of the terms of the government's obligation to non-network providers *on behalf of beneficiaries*. Health Net's contractual duty is to the *government* to carry out that obligation by paying non-network participating providers as required by the applicable regulations, and the fact that the funds of "other parties" will indeed be affected by this lawsuit only underscores the relationship among the government, beneficiaries and non-network providers such as the Plaintiffs, and the lack of any *independent* legal duty running from Health Net to non-network providers.

III. **THE COURT SHOULD ALSO DISMISS THIS ACTION FOR LACK OF A NECESSARY AND INDISPENSABLE PARTY**

A. **The United States Is A Necessary Party Under Rule 19(a)**

Plaintiffs assert that because they "are demanding that Defendant *abide* by the TRICARE regulations," there is no threat that this lawsuit would impose any obligation that is inconsistent with Health Net's contractual obligation under the MCS Contract. Pl. Br. at 26 (emphasis in original). That might be true if Plaintiffs were seeking declaratory relief that would bind the United States and Health Net to the same interpretation of the TMA payment rules. Plaintiffs,

however, are seeking monetary damages arising out of the alleged underpayment of claims that already have been processed, and with respect to which Health Net has never been ordered by TMA under an annual or quarterly audit to reprocess because of any failure to abide by those same regulations. *See* Affidavit of Pamela Bohall ¶ 7 (Opening Brief at Appx. at A15-18).[7] More importantly, the government itself will not be bound by any order from this Court that Health Net must make any payments to Plaintiffs and will have full authority to order Health Net to recoup such payments.

Plaintiffs also assert that even if Health Net's obligation to TMA somehow conflicts with the duties Health Net allegedly owes to Plaintiffs, the United States would still not be a necessary party because "it is well-established that a person does not become necessary to an action to determine rights under a contract simply because that person's rights or obligations under an *entirely separate contract* will be affected by the result of an action." Pl. Br. at 26-27 (emphasis in original). The short answer is that there is no "separate contract" for the Court to interpret. The Court cannot interpret Health Net's obligations to the Plaintiffs without interpreting Health Net's obligations to the government under the MCS Contract, because these obligations are one and the same.

Unlike the parties in *Bay Medical*, Plaintiffs have not entered into a contract with Health Net. While Plaintiffs stress the role of 32 C.F.R. § 199.14 in asserting an "implied-in-fact" contract, § 199.14 establishes an "amount" of payment. It does not require any particular party to pay providers on the government's behalf. Rather, whether Health Net is obligated to pay any

---

[7] Contrary to Plaintiffs' argument, the Affidavit of Pamela Bohall is properly considered under Rule 12(b)(7). Ms. Bohall testified in her affidavit to direct knowledge of the facts and circumstances discussed therein. Further, her testimony is supported by and consistent with the provisions of the TOM and other regulations and model MCS contract provisions cited therein.

provider under § 199.14 depends upon the existence of other facts: that the person who received

care from the provider is a TRICARE beneficiary; that Health Net has a contract with the

TRICARE program to process claims associated with care received by that particular

beneficiary; and that the contract requires Health Net to apply the TMA payment regulations in

processing those claims. In short, Health Net's duty to reimburse non-network participating

providers at a specific rate arises out of the terms of the MCS Contract.

Finally, because Plaintiffs' right to payment depends on Health Net's obligations under

the MCS Contract, Plaintiffs are not simply asking this Court to interpret federal regulations;

rather, they are asking this Court to define the government's liability under the TRICARE

Program. Although resolution of Plaintiffs' claims against Health Net in Plaintiffs' favor would

leave the government free to adopt a contrary position vis-à-vis Health Net, the Court's decision

could materially affect the implementation of three government contracts that were entered into

as a key means of administering the federal program. As a result, for the reasons Health Net set

forth in its Opening Brief, TMA, the agency with authority over the program, should be deemed

a necessary party.

### B.    The United States Is An Indispensable Party Under Rule 19(b)

Plaintiffs analogize this lawsuit to a dispute between a contractor and its subcontractor,

stating that "any dispute regarding Defendant's contractual obligations to TMA under the MCS

Contract can be resolved in a separate suit between Defendant and TMA," and arguing that while

it might be more convenient for Health Net if its obligations "to both Plaintiffs and TMA could

be determined in a single lawsuit, it will not prejudice Defendant if this case proceeds without

the United States." Pl. Br. at 28 (citations omitted). Plaintiffs have misconceived the nature of

the relationship between Health Net and the government with respect to the payment of claims

from non-network participating providers. As Health Net has shown, Plaintiffs have no separate contract with Health Net. At most, Plaintiffs have certain rights that are derived from the MCS Contract, and their claims are an effort to enforce the MCS Contract in their own favor.

Health Net is clearly at risk of multiple inconsistent obligations if the United States is not joined as a party. Health Net's obligations under the MCS Contract are intended (and are asserted by Plaintiffs) to be identical to any obligation it has towards Plaintiffs. The prospect of subsequent, inconsistent interpretations of the exact same contractual provisions that apply to the exact same health care services could expose Health Net to an order by this Court to pay Plaintiffs additional amounts, and to an order issued by the United States to recoup those exact same amounts. It is not "merely a matter of convenience" that Health Net's obligations to the Plaintiffs should be litigated in the same proceeding as its obligations under the MCS Contract.

Plaintiffs cite *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 640 (3d Cir. 1998), in asserting that the fact that the necessary party has sovereign immunity requires no departure from the normal Rule 19(b) analysis. Pl. Br. at 27 n.16. However, the Third Circuit, did not actually review in *Gardiner* the district court's decision regarding whether the United States was a necessary party or whether the United States could not have been joined under Rule 19(a), and did not even discuss sovereign immunity. Moreover, *Gardiner* is legally and factually distinct from this action because it involved an *express* contract dispute, not a purported implied-in-fact contract based on a contract between the defendant and an agency.

Nor does it make a difference whether the government has taken steps to intervene under Rule 24. *See* Pl. Br. 6, 26. The Court's decision should not depend on speculation about the government's reasons for declining to exercise its intervention rights. *See, e.g., Housing Auth. of*

*City of Jersey City v. Jackson*, 749 F. Supp. 622, 627-28 (D.N.J. 1990) (refusing to dismiss agency that did not wish to be a party because it was found to be a "necessary party").

Plaintiffs are asking this Court to adjudicate the interest of the United States under the MCS Contract by defining Health Net's obligation to make payments under the contract that are passed on to the United States. As Health Net stated in its Opening Brief, to proceed in an immune party's absence would "effectively abrogate the [party's] sovereign immunity by adjudicating its interest . . . without consent." *Enterprise Mgmt. Consultants v. United States,* 883 F.2d 890, 894 (10th Cir. 1989).

Plaintiffs also make internally inconsistent arguments by seeking relief that is supposedly consistent with the terms of the MCS Contract, while at the same time arguing that their claims have no impact on the government's interests. Plaintiffs' position essentially is that the government's interests are not implicated as long as this Court's decision conflicts with the government's position, and the government position is held to be correct by another court with subject matter jurisdiction over the government. In other words, one likely scenario is that the government would be responsible for amounts that Health Net pays Plaintiffs on the government's behalf – but for the fact that government deems the payments to be erroneous under its interpretation of the TMA regulations. These circumstances clearly require the United States to be considered an indispensable party under Rule 19(b).

Finally, although they lack direct "contracts" with the government, Plaintiffs still possess an "adequate remedy" under the Tucker Act's waiver of sovereign immunity for suits arising under money-mandating regulations. *See* Health Net's Br. at 21-22 (citing 28 U.S.C. §§ 1491 (a)(1), 1346 (a)(2)); *see also Brittel v. United States*, 372 F.3d 1370 (Fed. Cir. 2004) (beneficiaries can sue the United States for CHAMPUS benefits). Having accepted assignments

of CHAMPUS benefits, Plaintiffs are entitled to seek relief against the government in the Court

of Federal Claims. *See, e.g., McLean Hosp. Corp. v. United States*, 26 Cl. Ct. 1144 (1992);

*Green Hosp. v. United States*, 23 Cl. Ct. 393 (1991); *Sellers v. Brown*, 633 F.2d 106 (8th Cir.

1980); *see also* Appendix at p. C39 (civil cover sheet code for CHAMPUS benefit actions).

## IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BASED ON THEIR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiffs are entitled to request a reconsideration or appeal from an initial determination

"which raise[s] a disputed question of fact which, if resolved in favor of the appealing party,

would result in an extension of TRICARE benefits . . . ." 32 C.F.R. § 199.2 (defining "amount

in dispute"); *see also* TOM, Ch. 13, § 2, ¶ 3.27 (Opening Brief Appx. at A37).  From this,

Plaintiffs argue that because no facts are in dispute, they are foreclosed from seeking any

administrative review of Health Net's initial determination with respect to their claims, which

was allegedly premised only on an incorrect interpretation of TMA rules and program guidance.

Plaintiffs have an appealable issue under the applicable regulations.  Under 32 C.F.R.

§ 199.2, aggrieved parties are precluded only from arguing that a regulation is invalid, or that it

is inapplicable based on equitable rather than factual grounds.  Plaintiffs are able to appeal how a

specific payment rule is applied to their claims, as long as they do not contest the general validity

or authority of the regulations.

In addition to the affirmative definition of an appealable issue under § 199.2, the

regulations contain an itemized list of issues that are not appealable.  *See* 32 C.F.R.

§ 199.10(a)(6).  Among these issues, an aggrieved party cannot challenge a "requirement of the

law or regulations" through the appeals process.  *See* 32 C.F.R. § 199.10(a)(6)(i).  Other

provisions clarify that challenging a "requirement" of the law or regulation means that an appeal

"cannot challenge the *propriety, equity, or legality* of any provision of law or regulation."  32

- 18 -

C.F.R. § 199.10(a) (emphasis added). The TMA has the authority, however, to review whether its own rules were correctly applied by the contractor in the first instance. The very purpose of an appeal is "to determine whether the initial determination was made in accordance with law, regulation, policies, and guidelines in effect at the time the care was provided." 32 C.F.R. § 199.10(b)(2) and (c)(2).

In addition, contrary to Plaintiffs' assertion, appeals from Health Net's initial claims determinations raise issues of fact. There is a clear question of fact whether Plaintiffs have actually submitted claims for "facility charges," and whether Health Net paid plaintiffs' properly submitted facility charges "as billed." These are issues subject to factual determination that are best resolved through the TRICARE appeals process. *See* Health Net's Br. at 28-29.

## V.   THE TMA HAS PRIMARY JURISDICTION OVER PLAINTIFFS' CLAIMS

At a minimum, the Court should refer the administrative questions raised by Plaintiffs' claims to TMA. Plaintiffs argue that the doctrine of primary jurisdiction does not apply because TMA has no procedures to address pure questions of law. Contrary to plaintiffs' assertions, "the presence of ... legal issues has not prevented" courts "from concluding that primary jurisdiction lay in an administrative agency." *Tassy v. Brunswick Hosp. Ctr.*, 296 F.3d 65, 68 (2d Cir. 2002). The purpose of judicial deference to an agency's primary jurisdiction is to secure "[u]niformity and consistency in the regulation of business entrusted to a particular agency." *Far East Conference v. United States*, 342 U.S. 570, 574 (1952). If courts act "without any consideration of what a specialized agency has to offer[,] 'parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements.'" *Clark Oil, Inc. v. Texaco*, 609 F. Supp. 1373, 1381 (D. Del. 1985) (citations omitted).

Courts have not hesitated to refer legal questions to agencies for guidance. *See, e.g., MCI Commc'n Corp. v. American Tel. & Tel. Co.*, 496 F.2d 214, 223-24 (3d Cir. 1974) (deferring to

FCC's primary jurisdiction to decide legal question whether AT&T was required under FCC's prior pronouncements to grant interconnection rights to MCI); *Laveson v. Trans World Airlines*, 471 F.2d 76, 81 (3d Cir. 1972). In fact, courts have held that applying the doctrine of primary jurisdiction is especially appropriate where, as here, "complex policy considerations are at issue" and the agency's expertise is necessary for the "sound development of regulatory policy." *Clark Oil*, 609 F. Supp. at 1381. Applying the doctrine also is appropriate when an action otherwise within a court's jurisdiction "raises a question of the validity of a rate" set by an agency. *Richman Bros. Records, Inc. v. U.S. Sprint Commc'n Co.*, 953 F.2d 1431, 1435 n.3 (3d Cir. 1991). Where, as here, plaintiffs' common law claims depend on an interpretation of rights under regulations, referral to the agency is "the appropriate course of action." *Oh v. AT&T Corp.*, 76 F. Supp. 2d 551, 557 (D.N.J. 1999) (referring matter to FCC because common law contract claims required interpretation of rights provided by an FCC tariff).

## CONCLUSION

For all of the foregoing reasons, Plaintiff's First Amended Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

By: _____

Arthur N. Lerner
Kathleen Taylor Sooy
Christopher Flynn
Tracy A. Roman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500 – Telephone
(202) 628-5116 – Fax

Richard L. Horwitz (Del. Bar 2246)
Jennifer Gimler Brady (Del. Bar 2874)
Hercules Plaza, Sixth Floor
1313 North Market Floor
Wilmington, Delaware 19899-0951
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
rhorwitz@potteranderson.com – Email

Dated: April 30, 2007

*Attorneys for Defendant Health Net Federal Services, LLC*

## CERTIFICATE OF SERVICE

I, Jennifer Gimler Brady, hereby certify this 30th day of April, 2007, that the foregoing **HEALTH NET FEDERAL SERVICES, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) which will send notification of such filing that the document is available for viewing and downloading via CM/ECF to the following counsel of record:

> Matt Neiderman, Esquire
> Duane Morris LLP
> 1100 North Market Street
> Suite 1200
> Wilmington, DE 19801

Jennifer Gimler Brady (Del. Bar 2874)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000 - Telephone
(302) 658-1192 - Facsimile
jbrady@potteranderson.com – Email

*Attorneys for Defendant Health Net Federal Services, LLC*