# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC. and GIFFORD MEDICAL CENTER, INC., *for themselves and on behalf of all other similarly situated class members,*<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH NET FEDERAL SERVICES, LLC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07-39-GMS<br>)<br>)<br>)<br>)<br>)<br>) |

## STATEMENT OF INTEREST OF THE UNITED STATES

Dated: August 31, 2007

PETER D. KEISLER
Assistant Attorney General

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

COLM F. CONNOLLY
United States Attorney

SETH M. BEAUSANG (I.D. No. 4071)
Assistant United States Attorney
The Nemours Building
1007 Orange Street, Suite 700
Wilmington, DE 19801
Tel: (302) 573-6277

OF COUNSEL:

GERALD A. WESLEY
Associate General Counsel
TRICARE MANAGEMENT ACTIVITY
DEPARTMENT OF DEFENSE

SUSAN K. ULLMAN (DC 426874)
Senior Counsel
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 616-0680

*Attorneys for the United States of America*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

NATURE AND STAGE OF PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.     THE UNITED STATES IS NOT THE REAL PARTY IN
           INTEREST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    THE UNITED STATES IS NOT A NECESSARY AND
           INDISPENSABLE PARTY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    III.   THE "FACILITY CHARGE" ISSUE THAT UNDERLIES
           PLAINTIFFS' COMPLAINT COULD BE ADJUDICATED
           UNDER DoD'S ADMINISTRATIVE PROCEDURES. . . . . . . . . . . . . . . . . . 14

    IV.   PLAINTIFFS HAVE MISREPRESENTED DoD'S
           INTERPRETATION OF DoD's OWN REGULATIONS. . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(s)**

Auer v. Robbins,
    519 U.S. 452 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Baptist Physician Hospital v. Humana,
    368 F.3d 894 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8, 9, 22

Bishop v. CHAMPUS,
    917 F. Supp. 1469 (E.D. Wash. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Board of Trustees of Bay Med. Ctr. v. Humana Military,
    447 F.3d 1370 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Britell v. U.S.,
    372 F.3d 1370 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Chrisman v. Grays,
    2005 WL 3088529 (S.D. Ohio 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Eubanks v. United States,
    25 Cl. Ct. 131, 138 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Gardiner v. Virgin Islands Water & Power Auth.,
    145 F.3d 635 (3rd Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 12, 13

HB General Corp. v. Manchester Partners,
    95 F.3d 1185 (3rd Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Hofmann v. Hammack,
    82 F. Supp. 2d 898 (N.D. Ill. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Katz v. Cisneros,
    16 F.3d 1204 (Fed. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Norfolk and Western Railway Co. v. American Train Dispatchers' Assn.,
    499 U.S. 117 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

OAO Healthcare Solutions, Inc. v. Natinal Alliance of Postal & Fed. Employees,
    394 F. Supp. 2d 16 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 13

Thomas Jefferson Univ. v. Shalala,
    512 U.S. 504 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

U.S. v. Connolly,
    716 F.2d 882 (Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. v. Mitchell,
    445 U.S. 535 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. v. Mitchell,
    463 U.S. 206 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. v. Testan,
    424 U.S. 392 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Udall v. Tallman,
    380 U.S. 1 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Vanderberg v. Carter,
    523 F. Supp. 279 (N.D. Ga. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Your Home Visiting Nurse Services, Inc. v. Shalala,
    525 U.S. 449 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**STATUTES**

10 U.S.C. § 1079. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

10 U.S.C. § 1072(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 517. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1346. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

28 U.S.C. §1491. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

32 C.F.R. § 199.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

32 C.F.R. § 199.4(a)(1)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

32 C.F.R. § 199.6(b)(1)(ii)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

32 C.F.R. § 199.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

32 C.F.R. § 199.14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Fed. R. Civ. P. 17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Fed. R. Civ. P. 19. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## NATURE AND STAGE OF PROCEEDINGS

This putative class action involves a dispute between private parties related to the payment for health care services provided to beneficiaries under the TRICARE/CHAMPUS program (hereafter "TRICARE"), a medical benefits program established by Congress, and administered by the Secretary of Defense. Eligible beneficiaries under that program include the spouses and dependent children of active duty and retired members of the uniformed services, as well as the retired members and the dependents and surviving spouses of deceased members. The United States Department of Defense ("DoD") has promulgated regulations and manuals that govern all aspects of the program including allowable charges, reimbursement processes and appeal procedures. Payments for specific services may be subject to a fixed maximum allowable charge (referred to as the "CMAC" for CHAMPUS Maximum Allowable Charge), which providers agree to accept. Payments for "facility charges" – which the regulations define as charges by a provider for overhead costs, including building depreciation, interest, staffing costs, drugs, supplies, housekeeping, and utilities – are "paid as billed."

DoD contracts with managed care support ("MCS") contractors to process individual claims for medical benefits. Defendant Health Net Federal Services ("HealthNet") is the MCS contractor for one of the three MCS regions of the United States. Plaintiffs are hospitals that claim to be "non-network participating" providers in the region handled by HealthNet. The complaint presents two state common law claims against HealthNet: (1) breach of implied-in-fact contract; and (2) breach of quasi-contract/unjust enrichment. The complaint alleges that defendant must reimburse plaintiffs' health care claims in excess of the fixed CMACs for particular services on the theory that the amounts exceeding the CMACs are "facility charges."

-1-

These allegations are premised on a misinterpretation of DoD's regulations.  Accordingly, pursuant to 28 U.S.C. § 517, the United States of America respectfully submits this statement in order to present DoD's interpretation of its own regulations.

Defendant has moved to dismiss this case on numerous grounds.  Defendant's motion also raises issues concerning the legal interests of the United States, and, accordingly, the United States of America submits this statement to present DoD's position on those issues as well.

## SUMMARY OF ARGUMENT

1.  The United States is not the real party in interest.  Plaintiffs allege state law claims for breach of contract and unjust enrichment.  There is no privity of contract between plaintiffs and the United States.  If implied-in-fact contracts exist between the parties, defendant is not acting on behalf of the United States in entering into the putative contracts.  Defendant's argument that plaintiffs actually seek money damages against the United States fails to account for the private contractual nature of plaintiffs' claims and rests on an inaccurate characterization of defendant's relationship with DoD.

2.  The United States is not a necessary and indispensable party because complete relief can be granted without the United States.  Plaintiffs can get a favorable judgment and defendant can pay that judgment.  Arguments by defendant about possible reimbursement by the United States are irrelevant to the litigation between the private parties before the Court.

3.  The specific claims plaintiffs have brought against defendant for breach of implied contract and unjust enrichment could not have been heard as part of DoD's administrative review process because they are contract claims between private parties.  However, the salient underlying issue of whether the "Subject Claims" (defined in D.I. #1 ("Compl.") ¶ 35) should

have been paid "as billed" pursuant to DoD regulations, would be appealable to DoD.  If plaintiffs had pursued their available administrative remedies this litigation could potentially have been avoided, or at least this Court would have the benefit of a complete factual record and DoD's expertise.

4.  Plaintiffs allege that implied contracts were breached when their health care claims were not reimbursed "pursuant to (i) [DoD's] regulations governing TRICARE, (ii) [DoD's] longstanding policy, and (iii) the DoD's letter of April 14, 2006." Compl. ¶ 53.  Title 32 C.F.R. § 199.14(a)(5) sets forth the controlling authority on how DoD pays for health care services rendered on an outpatient basis.  Under DoD regulations, DoD can only pay the CMAC for any service for which there is a CMAC established by regulation; DoD cannot pay a separate "facility charge" for the same service, though it can pay a "facility charge" for the room (facility) where the service took place, if that claim is properly made.  See TRICARE Reimbursement Manual 6010.55-M, Ch.1, sec. 24 (August 1, 2002).

## ARGUMENT

### I.    THE UNITED STATES IS NOT THE REAL PARTY IN INTEREST

The complaint alleges that there is an implied-in-fact contract between plaintiffs and defendant that requires defendant to pay plaintiffs in accordance with TRICARE's regulations and policies.  Compl. ¶ 52.  (The putative contract is distinct from the MCS contract between DoD and defendant.)  Plaintiffs allege that they "have duly billed their claims for outpatient services in the manner required by the applicable regulations," id. ¶ 32, and defendant has "declined to pay the Facility Charges for outpatient services . . . as prescribed by 32 C.F.R.

§ 199.14(a)(5)(xi)."  Id. ¶ 33.  Plaintiffs seek in excess of $100 million from defendant.  Id.

¶¶ 55, 59-60.  Plaintiffs allege they properly billed for outpatient services and that they submitted

the bills, but they never state that they properly billed and submitted bills specifically for facility

charges.  See id. ¶¶ 53-54, 57, 59.  Plaintiffs provide no details of the billing codes they used, and

do not allege any specific bills for facility charges that were not paid as billed.

The complaint does not challenge any TRICARE regulations or present any claim against

the United States.  Nevertheless, defendant contends that the essence of the claims asserted by

plaintiffs are for money damages payable by the United States, and therefore defendant contends

that the United States is the real party in interest.  See, e.g., D.I. #18 ("Defendant Br.") at 17.

Plaintiffs disagree.  Plaintiffs are correct because of the private nature of their claims.  See Fed.

R. Civ. P. 17.  Plaintiffs do not state a claim against the United States.  They do not seek federal

funds, nor do they allege that there is an express or implied contract with the United States.

Plaintiffs could not maintain a contract claim for money damages against the United States in the

Court of Federal Claims, or in any court, because they are not in privity with the United States.

The fact that TRICARE is a federally-funded program, authorized by federal statute, does

not make the United States the real party in interest because the nature of the program and source

of funding does not create a contractual relationship between the government and plaintiffs.  See

Katz v. Cisneros, 16 F.3d 1204, 1210 (Fed. Cir. 1994); Eubanks v. United States, 25 Cl. Ct. 131,

138 (1992).  Similarly, federal agency control or oversight does not make the government a party

to a dispute between private parties over the meaning of an alleged contract.  See id.

Because the TRICARE regulations are money mandating, beneficiaries and non-network

providers can sue under the Tucker Act in the Court of Federal Claims if their claims exceed

-4-

$10,000, or in Federal District Court if their claims are below that amount.  See 28 U.S.C. § 1346(a)(2), § 1491;  Britell v. U.S., 372 F.3d 1370, 1378 (Fed. Cir. 2004).  Network providers that have contracts with MCS contractors pursue any dispute and remedy pursuant to those contracts, so any alleged breach of those contracts does not involve the United States.  Board of Trustees of Bay Med. Ctr. v. Humana Military, 447 F.3d 1370, 1374 (Fed. Cir. 2006) ("Bay Medical").  In this case, plaintiffs are non-network providers, but they allege a contract with defendant, so they are governed by the same contract theory that governed Bay Medical, except the contract in this instance is implied rather than express.

Plaintiffs describe the MCS contract between TRICARE and defendant as a contract in which the MCS contractor bears all financial risk.  Compl. ¶ 22.  Defendant describes the contract as if any payment defendant makes is automatically paid with federal funds.  Defendant Br. at 18-21.  The MCS contracts are more complex than the parties have portrayed them.

The MCS contract between defendant and TRICARE was awarded pursuant to a competitive procurement under the Federal Acquisition Regulations.  See Compl. ¶¶ 19-20.  The MCS contracts contain three main components for contractor reimbursement:

(1)    DoD pays a fixed price for administrative services, e.g., claims processing, developing provider networks, and processing the initial step in administrative appeals (see D.I. #23 ("HealthNet Reply Appendix") at C-19 (§ G-3.a.(1)(a));

(2)    The contracts contain provisions which ensure "financial underwriting" consistent with statutory requirements (10 U.S.C. § 1072(7)), and other incentives tied to contractor administrative performance (see HealthNet Reply Appendix at C-23 (§ H-1.a.(2)), C-24 (§ H-1.a.(3)); and

(3)    DoD reimburses the contractors for their payments of the government's cost-share
       on allowable amounts for health care claims processed (see 32 C.F.R.
       § 199.4(a)(1)(i)); see also HealthNet Reply Appendix at C-19 (§ G-3.a.(1)(b)[2]),
       C20-C21 (§§ G-3.(l)[1] & G-3.(m)[1]), C25 (§ H-5)).

Thus, under component (1), the MCS contractor is at risk that its administrative costs could

exceed DoD's fixed payment.  Under component (2), the MCS contractor is at risk of not gaining

a positive incentive and at risk of having to pay DoD, i.e., a negative incentive.  These are not the

risks plaintiffs describe in the Complaint.  Under component (3), the MCS contractor is

reimbursed by DoD for the DoD cost-share of allowable health care claims that the contractor

processes.[1]  Accordingly, plaintiffs' allegation that the MCS contract is a true "at risk" contract is

in error.

       Defendant contends that it is a  "government agent" and can simply pass on any judgment

in this litigation to the United States pursuant to its MCS contract.  Defendant Br. at 18.

Defendant is in error.  Plaintiffs are not seeking any additional payment from the United States

based on the TRICARE regulations.  Rather, plaintiffs are seeking damages from defendant for

breach of an implied-in-fact contract.  Whether defendant is liable here is a separate question

from whether TRICARE would reimburse defendant.  The amount TRICARE would reimburse

its MCS contractors does not have to be the same as the MCS contractors pay the providers.  The

private parties to those private contracts are, of course, free to spend their own money as they see

fit.  The TRICARE regulations permit defendant to enter into contracts with providers to pay

---

[1] The claims processed by the MCS contractors must satisfy TRICARE's established
audit procedures.

providers more than the CMACs for services.[2]  See Baptist Physician Hospital v. Humana, 368

F.3d 894, 900 (6th Cir. 2004) ("Network provider reimbursement is neither subject to, nor

restricted by, amounts that would have otherwise been paid under the standard TRICARE

reimbursement methodologies."); id. ("federal regulations and associated TRICARE policies

incorporated into the parties' agreement by reference do not categorically bar an independent

managed care support contractor from paying sums in excess of government allowables on

certain claims").  However, DoD's reimbursement rates to defendant would still be limited by the

CMACs.  Id.

        All of the cases defendant relies on to support its position that the United States is the real

party in interest predate the most recent and important case in this field, Bay Medical.  In Bay

Medical, the United States Court of Appeals for the Federal Circuit had to determine whether the

United States was the real party in interest in a case where network health care providers alleged

breaches of contract by MCS contractors.  The court began its analysis with the complaint.

There, as here, the plaintiffs pled a breach of contract claim against an MCS contractor and

sought damages from the MCS contractor, not from the United States.  Bay Medical, 447 F.3d. at

1375.  The court concluded that "the Hospital's contract claims are directed against [the MCS

contractor], not the government."  Id.  The court went on to state that the MCS contractor's

"reliance upon certain TRICARE policies as defenses against liability does not convert the

Hospitals' contract claims against [the MCS contractor] into claims against the government."  Id.

Similarly here, defendant's defenses are based on TRICARE's policies and regulations, but that

---

        [2]  The providers would be network providers with contracts setting forth this payment
term, whereas here plaintiffs are alleging an implied contract with an implied term that differs
from the statutory rate at which TRICARE reimburses MCS contractors.

does not convert them into claims against TRICARE.  The court in <u>Bay Medical</u> concluded that the fact that the MCS contractor "may seek reimbursement from the government after a finding of liability in this case does not mean the government is the 'real party in interest' on the Hospitals' contract claims." <u>Id.</u>  The same is true here.  <u>See also</u> <u>Baptist Physician Hospital</u>, 368 F.3d at 901 (rejecting MCS contractor's argument "that any liability for its breach of a provider contract is directly chargeable to the Treasury").

In addition to predating <u>Bay Medical</u>, the cases defendant relies upon are inapposite because they do not involve non-network providers that allege implied contracts with the MCS contractors.  Also, in the cases defendant relies upon the United States was either named as a defendant or proffered itself as the real party in interest, and they involved TRICARE beneficiaries as parties.  <u>See</u> <u>Hofmann v. Hammack</u>, 82 F. Supp. 2d 898 (N.D. Ill. 2000) (United States asserted it was the real party in interest in suit brought by CHAMPUS beneficiary); <u>Vanderberg v. Carter</u>, 523 F. Supp. 279 (N.D. Ga. 1981) (United States named as a defendant in suit brought by CHAMPUS beneficiary); <u>Chrisman v. Grays</u>, 2005 WL 3088529 (S.D. Ohio 2005) (United States asserted it was the real party in interest in suit brought by plastic surgeon against beneficiary); and <u>Bishop v. CHAMPUS</u>, 917 F. Supp. 1469 (E.D. Wash. 1996) (United States named as a defendant in suit brought by CHAMPUS beneficiary).  None of the cases defendant cites involves a private contract between providers and MCS contractors.

Should the Court ultimately award plaintiffs money damages in this case, defendant alone would be liable for the judgment.  There would not be any automatic reimbursement of the judgment against defendant by the United States.  The issue of whether defendant would then be able to assert a claim for money against the United States is not properly before the Court.  <u>See</u>

Bay Medical, 447 F.3d. at 1375-76; Baptist Physician Hospital, 368 F.3d at 900-901.  No party to this action has asserted a claim for money damages against the United States.

As a practical matter, moreover, even if the United States were the real party in interest, this Complaint would have to be dismissed because this Court would lack jurisdiction.  A claimant against the United States must cite a statutory waiver of sovereign immunity and a statute that confers subject matter jurisdiction on this Court.  In this case there is neither.[3]  See Fed. R. Civ. P. 8(a).  The Complaint asserts jurisdiction based on diversity.  Assuming arguendo that the United States were the real party in interest and the claims were based on an implied contract with the United States or on TRICARE regulations, this Court would lack jurisdiction of those claims; jurisdiction would lie with the Court of Federal Claims.  See 28 U.S.C. § 1491(a)(1).  Accordingly, the United States is not the real party in interest in this case.

---

[3]  The Tucker Act, 28 U.S.C. § 1491 et seq., constitutes a limited waiver of sovereign immunity with respect to claims against the United States for money damages and gives the Court of Federal Claims jurisdiction over such claims.  See U.S. v. Mitchell, 463 U.S. 206, 212 (1983).  Pursuant to this statute, an action for money damages against the United States may be maintained in the Court of Federal Claims only if it is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. §1491(a).  (The Little Tucker Act provides for a limited waiver of sovereign immunity in United States district courts for claims against the United States that do not exceed $10,000, 28 U.S.C. § 1346(a)(2), but the Little Tucker Act is not applicable because plaintiffs seek damages exceeding $100 million.)

The Tucker Act does not create any substantive right of recovery against the United States for money damages.  U.S. v. Testan, 424 U.S. 392, 398 (1976).  Rather, the statute merely confers jurisdiction upon the Court whenever the substantive right exists.  U.S. v. Testan, 424 U.S. at 398; U.S. v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983).  Thus, a claimant must either be able to point to a contractual agreement with the United States or another substantive provision of law, regulation, or the Constitution, which can fairly be construed as mandating compensation, to state a claim for damages against the United States in the Court of Federal Claims.  U.S. v. Mitchell, 445 U.S. 535, 538 (1980); U.S. v. Connolly, 716 F.2d at 885.

## II.  THE UNITED STATES IS NOT A NECESSARY AND INDISPENSABLE PARTY

For many of the reasons the United Sates is not the real party in interest, the United States

is not a necessary and indispensable party either.  Rule 19 of the Federal Rules of Civil Procedure

defines a necessary and indispensable party:

> **(a) Persons to be Joined if Feasible.**  A person who is subject to service of
> process and whose joinder will not deprive the court of jurisdiction over the
> subject matter of the action shall be joined as a party in the action if (1) in the
> person's absence complete relief cannot be accorded among those already parties,
> or (2) the person claims an interest relating to the subject of the action and is so
> situated that the disposition of the action in the person's absence may (i) as a
> practical matter impair or impede the person's ability to protect that interest or (ii)
> leave any of the persons already parties subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations by reason of the claimed
> interest.  If the person has not been so joined, the court shall order that the person
> be made a party. . . .

> **(b) Determination by Court Whenever Joinder not feasible.**  If a person as
> described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall
> determine whether in equity and good conscience the action should proceed
> among the parties before it, or should be dismissed, the absent person being thus
> regarded as indispensable.  The factors to be considered by the court include: first,
> to what extent a judgment rendered in the person's absence might be prejudicial to
> the person or those already parties; second, the extent to which, by protective
> provisions in the judgment, by the shaping of relief, or other measures, the
> prejudice can be lessened or avoided; third, whether a judgment rendered in the
> person's absence will be adequate; fourth, whether the plaintiff will have an
> adequate remedy if the action is dismissed for nonjoinder.

Plaintiffs assert that the United States is not a necessary and indispensable party.

Defendant counters that it is.  Defendant is in error for several reasons.[4]

First, defendant's position that the United States is a necessary party is based on the

---

[4]  The United States disagrees with the premise underlying plaintiffs' argument that the
United States is not a necessary and indispensable party, i.e., that TRICARE interprets its
regulations the same way plaintiffs do.  See D.I. #21 ("Pl. Br.") at 26.

premise that any judgment would be paid by U.S. funds.  But if this were true (and it is not), this Court would not have jurisdiction over these claims, and the United States could not be joined because it would "deprive the court of jurisdiction over the subject matter of the action."  <u>See</u> Fed. R. Civ. P. 19(a); <u>see also</u> <u>OAO Healthcare Solutions, Inc. v. Natinal Alliance of Postal & Fed. Employees</u>, 394 F. Supp. 2d 16, 19 (D.D.C. 2005) ("Even if OPM should be joined in this case, it is not feasible to do so because the Court does not have subject-matter jurisdiction over claims brought against OPM.").

Second, complete relief can be "accorded among those already parties."  <u>See</u> Fed. R. Civ. P. 19(a)(1).  If plaintiffs prevail on the claims they have brought, <u>i.e.</u>, implied contract and unjust enrichment claims against defendant, then they can receive full recovery from defendant. <u>Gardiner v. Virgin Islands Water & Power Auth.</u>, 145 F.3d 635, 641 (3rd Cir. 1998) ("Moreover, there is no prejudice to [plaintiff] in excluding the United States. [Plaintiff] can recover fully from [defendant], the party with whom [plaintiff] claims it has a contract.").  Whether defendant will be reimbursed by the United States for that judgment is not relevant to whether plaintiffs can get the relief they are seeking from defendant.  Defendant redefines plaintiffs' claims as asking the Court to "order T[RICARE] to change its regulatory interpretation."  TriWest Br. at 23.  This is not the relief plaintiffs seek, but defendant is trying to define the litigation such that complete relief could not be granted without the United States.  Again, defendant's claim that the United States is a necessary party is based on the erroneous premise that if plaintiffs prevail the judgment will be paid by the United States.  Defendant Br. at 9-10.

Third, there is no risk that the United States' ability to protect its interests will be impaired or impeded.  <u>See</u> Fed. R. Civ. P. 19(a)(2)(i).  The United States would not be bound by

-11-

this Court's interpretation of private contracts and has stated that it does not want to be a party. See Gardiner v. Virgin Islands, 145 F.3d at 641.

Finally, defendant is not at risk of "multiple" or "inconsistent obligations," as it claims (Defendant Br. at 12). See Fed. R. Civ. P. 19(a)(2)(ii). Even if plaintiffs prevail in this litigation and defendant is denied reimbursement by TRICARE, defendant would not be subject to inconsistent obligations. While defendant presumably would not like it, there is nothing legally or factually "inconsistent" about that scenario. See Gardiner v. Virgin Islands, 145 F.3d at 641.

In sum, the United States is not a party that needs to be joined pursuant to Rule 19(a), and the Court need not determine whether it is indispensable pursuant to Rule 19(b).

Assuming *arguendo* that the United States were a party to be joined, it is still not an indispensable party under Rule 19(b), essentially for the reasons given above. The first factor to be considered, whether the judgment might prejudice the United States or the parties, weighs against finding the United States an indispensable party. The United States will not be prejudiced by any decision in this case because it would not be bound by the determination and because it does not want to be a party to the litigation. See Gardiner v. Virgin Islands, 145 F.3d at 641 ("Here, there is little danger of prejudice to the absent party - the United States - if this case goes forward without it. Indeed, the United States does not want to become a party to the suit, strongly suggesting that its interests will not be impeded if the suit goes forward without it."). Nor will the parties be prejudiced because they have the opportunity to present their cases in full.

The second factor under Rule 19(b) – the extent to which any prejudice can be lessened or avoided by the shaping of the judgment – also weighs against finding the United States to be an

-12-

indispensable party.  If defendant prevails on its motion, there is no possibility of prejudice to the United States.  If plaintiffs prevail, then the Court can limit its judgment to the specific implied contract claims before it and order defendant to pay the judgment.  See HB General Corp. v. Manchester Partners, 95 F.3d 1185, 1191 (3rd Cir. 1996) ("protective provisions in the judgment can effectively avoid any prejudice").  The Court need not address any issues concerning the relationship between defendant and DoD, and thereby can avoid any prejudice to the United States.

The third factor to be considered under Rule 19(b) – whether a judgment rendered in the absence of the United States would be adequate – must be answered in the affirmative.  If plaintiffs prevail, they can collect their judgment from defendant.  Any issue as to whether the United States would reimburse defendant does not affect whether the judgment plaintiffs receive would be adequate.  Gardiner v. Virgin Islands, 145 F.3d at 642; OAO Healthcare Solutions, 394 F. Supp. 2d at 19.

The fourth factor under Rule 19(b) – whether plaintiffs will have an adequate remedy if the action is dismissed for nonjoinder – also weighs in favor of finding that the United States is not indispensable.  If this litigation is dismissed for non-joinder, then plaintiffs will not have any remedy because plaintiffs' claims are only against defendant.  Plaintiffs can obtain full relief from defendant if they prevail on the claims they have asserted.  See Bay Medical, 447 F.3d. at 1375-76.

Finally, if the Court were to conclude that the United States is a necessary and indispensable party, then the action should be dismissed because of the United States' sovereign immunity.  Both parties concede that the United States is immune from the claims made in this

-13-

litigation.  <u>See</u> Defendant Br. at 17, Pl. Br. at 19.  Claims against the United States would have to

be dismissed for lack of jurisdiction.  Fed. R.Civ. P. 19; <u>see also</u> Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice and Procedure § 3654 (3d ed. 1998).

III.    THE "FACILITY CHARGE" ISSUE THAT UNDERLIES
        PLAINTIFFS' COMPLAINT COULD BE ADJUDICATED
        UNDER DoD'S ADMINISTRATIVE PROCEDURES

If there are no implied-in-fact contracts between the parties, then the litigation is over,

and the Court need not reach the issue of whether plaintiffs' underlying claim about payment of

the "Subject Claims" could be appealed to DoD.

Plaintiffs aver that defendant's failure to pay the facility charges "is not appealable under

the regulations governing TRICARE," and that any attempt to administratively appeal their

claims would be "futile."  Compl. ¶¶ 37-38.  Defendant moved to dismiss the case on the

grounds that plaintiffs failed to exhaust their administrative remedies.

Plaintiffs, as non-network participating providers, can take advantage of the TRICARE

appeal process.  <u>See</u> 32 C.F.R. § 199.10.  DoD regulations define appealable issues as:

> Disputed questions of fact which, if resolved in favor of the appealing party,
> would result in the authorization of [TRICARE] benefits . . . . An appealable issue
> does not exist if no facts are in dispute, if no [TRICARE] benefits would be
> payable, or if there is no authorized provider, regardless of the resolution of any
> disputed facts.  See § 199.10 for additional information concerning the
> determination of "appealable issue" under this part.

<u>Id.</u> § 199.2.  DoD regulations also provide examples of issues that are not appealable:

> (i) A dispute regarding a requirement of the law or regulation.

> (ii) The amount of the [TRICARE]-determined allowable cost or charge [<u>i.e.</u>,
> CMAC, discussed <u>infra</u>], since the methodology for determining allowable costs
> or charges is established by this part.

-14-

Id. § 199.10(a)(6).

There are several levels of review, beginning with review by the MCS contractor and culminating with review by the Director of TRICARE Management Activity ("TMA") or his designee.  See id. § 199.10.  Plaintiffs did not avail themselves of the administrative appeal process.  See Compl. ¶¶ 37-38.

The claims plaintiffs have pled against defendant could not be heard as part of the TRICARE appeal process because they are contract issues between private parties.  However, the real issue that underlies plaintiffs' Complaint, whether their "Subject Claims" would be paid "as billed" under TRICARE's regulations and policies, is an issue that could be and should be raised through the TRICARE administrative appeal process.  "An appeal under [TRICARE] is an administrative review of program determinations made under the provisions of law and regulation."  32 C.F.R. § 199.10(a).  DoD's interpretation of its own regulations regarding what is administratively appealable is entitled to deference.  See Your Home Visiting Nurse Services, Inc. v. Shalala, 525 U.S. 449, 453 (1999).

Plaintiffs' position that no administrative appeal procedure was available to them is based on their attempt to characterize their claims about what reimbursement is required for "facility charges" under 32 C.F.R. § 199.14(a)(5), as a dispute about a regulation, because a provider cannot appeal "(i) A dispute regarding a requirement of the law or regulation."  32 C.F.R. § 199.10(a)(6).  Plaintiffs' reading of 32 C.F.R. § 199.10(a) is not correct.  If it were, any dispute about the amount a provider should be reimbursed would not be appealable, and that would be nonsensical.  The main purpose of the appeal process is to permit review when benefits are denied.  See 32 C.F.R. § 199.2.  Plaintiffs' underlying claim is not a dispute about a requirement

-15-

of a regulation; there is no dispute that facility charges are paid "as billed" pursuant to 32 C.F.R. § 199.14(a)(5). The underlying issues are whether plaintiffs' incurred charges fall within the definition of facility charges and whether plaintiffs properly claimed those charges. Plaintiffs' assertions that they have duly claimed "outpatient services" (Compl. ¶¶ 32-33) does not eliminate these factual issues.

Plaintiffs' allegation that their claims are ripe for adjudication and that any effort to resolve these issues as part of administrative proceedings would be futile (Compl. ¶¶ 37-38), is also incorrect. As noted, there is no dispute that "facility charges" are paid as billed. However, plaintiffs do not specifically allege that they incurred costs that fit the definition of "facility charges" under 32 C.F.R. § 199.2(b), nor do they specifically allege that they billed "facility charges" and were denied payment on those specific charges (these points are discussed in greater detail in the next section). If plaintiffs present evidence in the administrative process that they incurred facility charges, that they properly submitted claims for those charges, and that those claims were not paid, then the appeal process could vindicate plaintiffs. Plaintiffs should not be permitted to avoid their evidentiary burden by alleging generally in a complaint that they properly billed for "outpatient services," but failing to provide sufficient detail to determine if any claim for facility charges was properly made and erroneously denied. As noted previously, plaintiffs did not provide any details of any denied claim, nor did they attach any document showing any claim that was denied; instead, they have put defendant and DoD in the position of guessing what health care claims are "Subject Claims."

If plaintiffs exhaust their administrative remedies perhaps this litigation can be avoided, or, at least, the Court would have before it a complete factual record and the opinion of the

agency with the expertise on the TRICARE issues.[5]

## IV.    PLAINTIFFS HAVE MISREPRESENTED DoD'S INTERPRETATION OF DoD's OWN REGULATIONS

The TRICARE regulations set forth a complex and detailed scheme for reimbursing medical service providers.  See 32 C.F.R. § 199.14.  As part of that complex program, the regulations provide for a fixed CMAC for specific hospital outpatient services including:

> (i) Laboratory services;
> (ii) Rehabilitation therapy services;
> (iii) Venipuncture;
> (iv) Radiology services;
> (v) Diagnostic services;
> (vi) Ambulance services;
> (vii) Durable medical equipment (DME) and supplies;
> (viii) Oxygen and related supplies;
> (ix) Drugs administered other than oral method; and
> (x) Professional provider services.

See 32 C.F.R. §199.14(a)(5).  There is not a CMAC for "facility charges."  For "facility charges" the regulations provide:

> (xi) Facility charges.  TRICARE payments for hospital outpatient facility charges that would include the overhead costs of providing the outpatient service would be paid as billed.  For the definition of facility charge, see § 199.2(b).

Id.

> The term "facility charge" means the charge, either inpatient or outpatient, made by a hospital or other institutional provider to cover the overhead costs of providing the service.  These costs would include building costs, i.e. depreciation and interest; staffing costs; drugs and supplies; and overhead costs, i.e., utilities, housekeeping, maintenance, etc.

Id. § 199.2(b).

---

[5]  While some of plaintiffs' health care claims may be time-barred in the administrative process, plaintiffs have alleged continuing violations that would appear not be time-barred.  See Compl. ¶¶ 39, 54, 59.

-17-

If the Court finds that there is an implied contract between plaintiffs and defendant, then, according to the Complaint, the salient term of that contract is that "claims submitted by Plaintiffs would be paid by [defendant] pursuant to and consistent with (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the DoD's letter of April 14, 2006 directly addressing this issue; specifically, that Facility Charges duly submitted would be paid by [defendant] in full as billed." Compl. ¶ 52. (Defendant does not dispute that claims would be paid consistent with these DoD regulations, policies, and letter.) Accordingly, DoD's calculation of payment for the subject claims is incorporated into the contracts and controls those contracts. See Norfolk and Western Railway Co. v. American Train Dispatchers' Assn., 499 U.S. 117, 129-130 (1991) (statutes existing at the time of the making of a contract become a part of that contract). It is not a question of competing interpretations by plaintiffs and defendant; it is not a question of deference to DoD's interpretation – the parties agreed that DoD's application of its regulations would control.[6]

The Complaint leaves the impression that if DoD were responsible for paying the "Subject Claims" it would have reimbursed plaintiffs "as billed" for those claims as if they were "facility charges" based on TRICARE's regulations, longstanding policy and DoD's letter of April 14, 2006. See Compl. ¶¶ 8, 31, 33, 34, 36, 54. This is not correct. Plaintiffs are not

_____

[6] Even if DoD's interpretation were in opposition to an interpretation of one of the parties, DoD's interpretation of its own regulation would be entitled to substantial deference. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Udall v. Tallman, 380 U.S. 1, 16 (1965). In reviewing an agency's interpretation of a regulation, the court's role is "not to decide which among several competing interpretations best serves the regulatory purpose," Thomas Jefferson Univ., 512 U.S. at 512, rather, the court must defer to the agency's interpretation of a regulation "'unless plainly erroneous or inconsistent with the regulation'." Auer v. Robbins, 519 U.S. 452, 461 (1997) (citations omitted).

-18-

seeking payment for true "facility charges," but rather for the difference between the CMAC rate

for a service plaintiffs provided and the rate plaintiffs billed for that service. The regulations do

not provide for plaintiffs "Subject Claims" to be paid as billed. See 32 C.F.R. §199.14(a)(5),

TRICARE Reimbursement Manual 6010.55-M, Ch.1, Sec. 24.

      The Complaint alleges that the plaintiffs "have duly billed their claims for outpatient

services in the manner required by the applicable regulations." Compl. ¶ 32. Plaintiffs next

allege that defendant has "arbitrarily declined to pay the Facility Charges for outpatient services"

as billed, and that this is an "improper underpayment." Id. ¶¶ 33-34. There is no dispute that

"facility charges" are to be "paid as billed." See 32 C.F.R. § 199.14(a)(5)(xi). But plaintiffs

never specifically allege that they properly billed claims for facility charges. Instead they re-state

their allegation that, "Plaintiffs and the members of the Class are all hospitals who have provided

outpatient services to TRICARE beneficiaries, and have duly submitted claims for outpatient

services to HealthNet that accrued at a time when the Plaintiffs and each Class member was a

Non-Network Participating Hospital. Such claims are hereinafter referred to as the 'Subject

Claims'." Compl. ¶ 35.

      Plaintiffs do not allege, much less provide any evidence, that they properly claimed

facility charges. See 32 C.F.R. § 199.6(b)(1)(ii)(A) ("Billing Practices" - "Each institutional

billing, including those institutions subject to the [TRICARE] DRG-based reimbursement

method or a [TRICARE]-determined all-inclusive rate reimbursement method, must be itemized

fully and sufficiently descriptive for [TRICARE] to make a determination of benefits."). Nor do

they allege that any underpaid claim was for charges that can be included as facility charges, i.e.,

to "cover the overhead costs of providing the service. These costs would include building costs,

-19-

i.e. depreciation and interest; staffing costs; drugs and supplies; and overhead costs, i.e., utilities, housekeeping, maintenance, etc." 32 C.F.R. § 199.2(b).

While the allegations are vague, it appears that plaintiffs seek reimbursement for their health care claims in excess of the fixed CMACs for particular services on the theory that the amount exceeding the CMAC is a "facility charge." (The allegations appear to include amounts in excess of the CMACs as "facility charges" even if there are other separately-billed charges for use of a particular facility, such as a "facility charge" for an emergency room, treatment room, clinic room, observation room, or recovery room.) But TRICARE regulations do not provide for payment of claims in this manner.

For example, if a provider submitted a claim form (UB-92/HCRA-1450) seeking reimbursement for two component charges, such as: (1) #320 X-rays ($100); and (2) #450 emergency care ($300), TRICARE would pay the charges as follows: (1) the X-ray would be reimbursed at the CMAC rate ($19.50[7]), see 32 C.F.R. §199.14(a)(5)(iv) ("Radiology services"); and (2) the emergency room charge would be paid as billed as a facility charge ($300), see 32 C.F.R. §199.14(a)(5)(xi). (The professional charges are billed separately.) In this example, it appears that the provider would be claiming that in addition to the facility charge for the emergency room, it is entitled to the full amount it billed for the X-ray, not just the fixed CMAC amount that has been established by regulation. See 32 C.F.R. § 199.14(a)(5)(iv); see also TRICARE Reimbursement Manual 6010.55-M, Ch. 1, Sec. 24.

---

[7] Health care providers can find the appropriate CMAC on TRICARE's website (www.tricare.mil/cmac/home.aspx) by inputting the applicable procedure code and the zip code for the location where the service was provided. TRICARE Reimbursement Manual 6010.55-M, Ch. 5, Sec. 3.

Under DoD regulations, when there is a CMAC, that is the maximum amount TRICARE

can pay for that claimed service; no other charges for the same service are payable by TRICARE.

See 32 C.F.R. § 199.14(a)(5)(i)-(x) incorporating id. § 199.14(j)(1). TRICARE can pay a facility

charge, in addition, but that facility charge is not the difference between the billed amount for a

service covered by a CMAC and the CMAC, but a separate charge to cover the use of the

facilities, which is to compensate the hospital for its overhead, non-professional staff,

depreciation, etc. The TRICARE Reimbursement Manual 6010.55-M discusses the CMAC

pricing for services and sets forth the policy that "[o]ther services without allowable charges,

such as facility charges, shall be paid as billed." Ch.1, Sec. 24.[8] This makes clear that only

services that do not have CMACS (i.e., allowable charges), will be paid as billed. (The letters

from TRICARE's contracting officers that the parties reference merely reflect this policy

application of the regulations.[9]) Correspondingly, if there is a CMAC for a given service (such

---

[8] "As billed" charges are, in turn, limited by regulation. See 32 C.F.R. § 199.14(a)(3).

[9] See April 14, 2006, letter from DoD to HealthNet (Compl., Ex. A) ("For outpatient services, SCHs [Sole Community Hospitals] are reimbursed based on the allowable charge when the claim has sufficient Healthcare Common Procedure Coding System (HCPCS) coding information, as stated in the [TRICARE Reimbursement Manual], Chapter 1, Section 24. Other services without allowable charges, such as facility charges, are reimbursed based on billed charges"); see also December 21, 2005, letter from DoD to TriWest (Lakewood Health System v. TriWest Healthcare, 07-cv-69-GMS, D.I. #12.2 TriWest Appendix at A70-71) ("32 CFR 199.14a(5) addresses TRICARE payments for hospital outpatient services. Under that section, certain outpatient services are subject to the allowable charge methodology set forth by regulation. Outpatient hospital services subject to the allowable charge methodology include laboratory services, rehabilitation therapy services, venipunctures, radiology services, diagnostic services, ambulance services, durable medical equipment, oxygen, drugs administered other than orally, and professional provider services. Other facility charges may be paid as billed."); id. ("As noted above, we disagree with the argument put forth by Wescott Healthcare LLC and believe that TriWest has paid the hospitals in question appropriately, as required by 32 CFR 199 and the TRICARE manuals").

as for x-rays in the example above), that is the only compensation for that service authorized under TRICARE's regulations and policies.

If plaintiffs were correct, and DoD's regulations could be interpreted to mean that the difference between the providers' charge for a service and the CMAC for the service could be paid in addition to the CMAC as "facility charges," then the entire system of CMACs could effectively be circumvented. If plaintiffs were correct, the CMAC would not limit the amount of federal funds that were paid for a given service. See generally 10 U.S.C. § 1079; Baptist Physician Hospital v. Humana, 368 F.3d. at 895 ("The overall goal of the TRICARE program is to improve the quality, cost, and accessibility of healthcare to the nation's military through the mechanism of a managed care program."). Plaintiffs' interpretation would effectively eliminate 32 C.F.R. § 199.14(a)(5)(i) -(x), which lists outpatient services subject to CMACs, while retaining subsection (xi), Facility charges.

Under the scenario plaintiffs have posited, all claims would in fact be paid as billed. In the above example, TRICARE would pay the full billed amount, $100, for the X-ray, even though regulation, 32 C.F.R. § 199.14(a)(5)(iv), provides that plaintiff is only entitled to the CMAC ($19.50) for taking an X-ray.

In sum, if the Court reaches the issue of whether plaintiffs can receive a putative "facility charge" for a service in addition to the CMAC for that service (as opposed to a separate facility charge for the room used), then the Court should conclude that DoD's regulations and policies provide that no additional payment for a service that is part of the CMAC system is permitted.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should conclude that the United States is not the real party in interest in this case, that the United States is not a necessary and indispensable party, that Plaintiffs have failed to avail themselves of their administrative remedies, and that the TRICARE regulations do not entitle plaintiffs to payment "as billed" for services which are covered by maximum allowable charges.


Dated: August 31, 2007                               PETER D. KEISLER
                                                     Assistant Attorney General

                                                     VINCENT M. GARVEY
                                                     Deputy Director, Federal Programs Branch

                                                     COLM F. CONNOLLY
                                                     United States Attorney

                                                      /s/ Seth M. Beausang
                                                     SETH M. BEAUSANG (I.D. No. 4071)
                                                     Assistant United States Attorney
                                                     The Nemours Building
                                                     1007 Orange Street, Suite 700
                                                     Wilmington, DE 19801
                                                     Tel: (302) 573-6277

                                                      /s/ Susan K. Ullman
OF COUNSEL:                                           SUSAN K. ULLMAN (DC 426874)
                                                     Senior Counsel
GERALD A. WESLEY                                      U.S. DEPARTMENT OF JUSTICE
Associate General Counsel                            20 Massachusetts Avenue, N.W.
TRICARE MANAGEMENT ACTIVITY                          Washington, D.C.  20530
DEPARTMENT OF DEFENSE                                Tel: (202) 616-0680