**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC. and GIFFORD MEDICAL CENTER, INC., *for themselves and on behalf of all other similarly situated class members*, | :<br>:<br>:<br>:<br>: | Civil Action No. 07-39 (GMS) |
| | : | JURY TRIAL DEMANDED |
| Plaintiffs, | :<br>: | CLASS ACTION |
| v. | :<br>: | |
| HEALTH NET FEDERAL SERVICES, LLC, (f/k/a HEALTH NET FEDERAL SERVICES, INC.), | :<br>:<br>:<br>: | |
| Defendant. | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES**

*OF COUNSEL*
John J. Soroko
Seth A. Goldberg
DUANE MORRIS LLP
30 South 17th St.
Philadelphia, PA 19103
215.979.1000
215.979.1020 *fax*

Michael R. Gottfried
Patricia R. Rich
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
857.488.4200
857.488.4201 *fax*

Matt Neiderman (Del. Bar No. 4018)
DUANE MORRIS LLP
1100 N. Market St., Suite 1200
Wilmington, Delaware 19801
302.657.4900
302.657.4901 *fax*
mneiderman@duanemorris.com

Gregory A. Brodek
DUANE MORRIS LLP
88 Hammond Street, Suite 500
Bangor, ME 04401
207.262.5440
207.262.5401 *fax*

*Attorneys for Plaintiffs Northern Michigan Hospitals, Inc.
and Gifford Medical Center, Inc., for themselves and
on behalf of all other similarly situated class members*

Dated: October 26, 2007

**INTRODUCTION**

In its Response to the Statement of Interest filed by the United States ("Defendant's Response") (D.I. 31), Defendant continues to argue for dismissal based upon the mistaken assumption that the issue before the Court is an "appealable" issue under the TRICARE regulations, which it is not, and that the TRICARE administrative appeal process is mandatory, which it is not. In actuality, as addressed in Plaintiffs' Response to the Statement of Interest ("Plaintiffs' Response") (D.I. 32), and further discussed here, Plaintiffs' claims do not require a complex regulatory interpretation, but rather turn on a basic and logical reading of the plain language of 32 C.F.R §199.14(a)(5)(xi), which indisputably requires reimbursement of "Facility Charges" "as billed." Thus, Plaintiffs' claims are well within the province of this Court. Indeed, because Plaintiffs' claims turn on a "requirement of the law," they are not "appealable" under the TRICARE administrative appeals process and, even if they were, the United States has itself conceded, in its Statement of Interest ("SOI") (D.I. 28), that the TRICARE administrative appeal process is permissive, not mandatory.[1]

---

[1] The issue of whether the United States is the real party in interest or whether it is a necessary or indispensable party has been fully briefed by the parties, and Plaintiff incorporates herein the arguments it has previously made. Accordingly, the Plaintiffs will not repeat those arguments, except to note that in responding to the SOI, Defendant has not raised any new arguments that could somehow defeat the firm position of the United States that it is not the real party in interest or a necessary or indispensable party.

**ARGUMENT**

I.  **PLAINTIFFS SHOULD NOT BE REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES BECAUSE THE TRICARE ADMINISTRATIVE APPEALS PROCESS IS NOT MANDATORY**

In the first instance, Plaintiffs' claims are "non-appealable" under 32 C.F.R. § 199.10 because they amount to a "dispute regarding a requirement of the law or regulation" and therefore could not have been appealed under that regulation.  *See* Answering Brief of Plaintiffs In Opposition to Defendant's Motion to Dismiss at 31-33 (D.I. 21); Plaintiffs' Response at 5-6.

However, even if Plaintiffs' claims were "appealable" under 32 C.F.R. § 199.10, such appeals are *not mandatory* because the TRICARE regulations contain no exhaustion "requirement."  *See* 32 C.F.R. § 199.10; *see also*, *I.M. Hofman v. Hammack, et al.*, 82 F.Supp.2d 898, 900 (N.D. Ill. 2000) ("the CHAMPUS enabling statutes and regulations do not prescribe administrative appeals").  Nor, does the so-called "comprehensive" nature of the TRICARE appeal process, as Defendant posits, have any bearing on whether this Court should exercise its discretion to require exhaustion of administrative remedies for the simple reason that TMA did not make that appeal process *mandatory.*

The exhaustion analysis would be different if the TRICARE appeal process were mandatory.  *See e.g., Ghana v. Holland*, 226 F.3d 175, 177 (3d Cir. 2000) (exhaustion *requirement* contained in § 803 of the Prison Litigation Reform Act ("PLRA") and codified at 42 U.S.C. § 1997e(a) mandated dismissal of the plaintiff's complaint for failure to exhaust administrative remedies) (emphasis added).  However, as the Third Circuit has previously held, the absence of any exhaustion *requirement* in the statutory language at issue weighs heavily on, and may be dispositive of, the question of whether a Court should require exhaustion:

> Because we find that the statutory language at issue in this case suggests that exhaustion is not required, we decline to exercise whatever "sound judicial discretion" we may have to impose such a requirement.

*Nickeo v. Virgin Islands Tel. Corp.*, 42 F.3d 804, 808 n.3 (3d Cir. 1994) ("*Nickeo*").

Significantly, none of the cases cited by Defendant are controlling on the facts presented here and, in actuality, each *supports Plaintiffs' argument*. In fact, *First Jersey Sec., Inc. v. Bergen* ("*First Jersey*"), 605 F.2d 690, 696 (3d Cir. 1979), a case upon which Defendant principally relies, has been distinguished by the Third Circuit in *Nickeo,* a case dealing with the issue of whether a Court should require the exhaustion of administrative remedies, where, as here, there is no such exhaustion requirement in the statute itself:[2]

> In most of the Third Circuit cases cited by VITELCO in which we required exhaustion, the administrative procedures had already been invoked. In contrast, we did not require exhaustion where administrative remedies had not been invoked. In the only other case cited invoking exhaustion, the statutory language clearly suggested such a requirement.

*Nickeo,* 42 F.3d at 808 n.3 (internal citations omitted). Likewise in, *Ghana v. Holland*, 226 F.3d 175 (3d Cir. 2000), another case relied upon by Defendant, the statute at issue, § 803 of the PLRA and codified at 42 U.S.C. § 1997e(a), *expressly required* exhaustion, unlike the permissive statute at issue here. Moreover, that case is also distinguishable because the issue before the Court was simply whether the exhaustion requirement in the statute was retroactive. *Id*. at 177.[3]

---

[2] Here, as in *Nickeo*, the Court considered whether exhaustion was a prerequisite to filing suit under the statute at issue, in that case, the Virgin Islands Wrongful Discharge Act. 42 F.3d at 807. The Third Circuit affirmed the denial of the Defendant's motion to dismiss because the language of the statute did not make exhaustion mandatory.

[3] In another case upon which Defendant relies, *Trauma Serv. Group v. Keating*, 907 F.Supp. 110, 113 (D. Pa. 1995), the Court did not even reach the question whether it should exercise its discretion to require exhaustion because the plaintiff did not aver, and so the Court did not
(Continued…)

3

None of the cases cited by the Defendant stand for the proposition that where, as here, the regulation does not *require* exhaustion of administrative remedies, the Court should nonetheless require exhaustion. To the contrary, where the administrative appeals process at issue is not mandatory, the Third Circuit has not required it, or at least "decline[d] to exercise whatever 'sound judicial discretion' [it] may have."[4] *Nickeo*, 42 F.3d at 808 n.3. Accordingly, because the TRICARE administrative appeals process is *permissive*, *not mandatory*, the Court should not dismiss Plaintiffs' claims for a purported failure to exhaust administrative remedies, which are not expressly required by statute.

## II. THIS CASE TURNS ON THE APPLICATION OF THE REGULATION PROVIDING FOR PAYMENT OF FACILITY CHARGES TO PLAINTIFFS' CLAIMS, WHICH APPLICATION DOES NOT REQUIRE TMA'S GUIDANCE

Despite Defendant's attempt to portray this case as an incredibly complex matter requiring the insight of TRICARE Management Activity ("TMA"), the question before the Court

---

(Continued…)

consider, whether the facts at issue might implicate one of the exceptions to the exhaustion requirement. Accordingly, that case has no bearing on the facts presented here.

[4] Here, as described throughout Plaintiffs' briefing in response to Defendant's Motion to Dismiss and the SOI, the factors bearing on the Court's discretion all weigh against requiring Plaintiffs to exhaust administrative remedies under the TRICARE administrative appeal process: (1) exhaustion would be futile because Plaintiffs have raised their dispute with Defendant a number of times over the course of three years to no avail; (2) exhaustion would result in unnecessary delay because Plaintiffs would be required to appeal thousands of Subject Claims all of which were not properly reimbursed as a result of the same uniform conduct, and (3) Defendant's uniform conduct has resulted in a violation of Plaintiffs' regulatory right to reimbursement for the Facility Charges relating to the Subject Claims. *See Holton v. Blue Cross Blue Shield of South Carolina*, 56 F. Supp. 2d 1347, 1353 (M.D. Ala. 1999) (court's discretion to require exhaustion requires analysis of whether (1) exhaustion is futile; (2) the claim will clearly be denied or administrative action will not resolve the merits of the claim; (3) the administrative remedy is inadequate because it does not exist, or would unreasonably delay the action; or (4) the challenged agency action involves a clear and unambiguous violation of statutory rights or constitution rights). (D.I. 32 at 8-9)

is simple—Has Defendant's failure to reimburse Plaintiffs the Facility Charges on the Subject Claims resulted in a breach of contract and/or unjust enrichment?[5] While it is true that Plaintiffs' right to reimbursement derives from 32 CFR §199.14(a)(5)(xi), the issue before the Court is not complex, and does not require TMA's guidance. Rather, it requires only the application of the regulation to the Subject Claims, which, as set forth below, it is not a complex matter.[6]

1. <u>What Are Facility Charges?</u>

In order to provide outpatient services to patients, Plaintiffs incur an array of expenses including, but not limited to, building costs; staffing costs; supplies; and general, miscellaneous overhead costs. These costs are referred to as "Facility Charges." *See* 32 C.F.R. §199.2(b) To fairly distribute these Facility Charges to patients utilizing Plaintiffs' facilities, each Plaintiff allocates a small portion of these Facility Charges to each of the procedures performed at their respective facility. These Facility Charges are then billed by Plaintiffs when they bill for services provided at their hospital. For example, if a patient goes to a hospital on an outpatient basis to receive an X-ray and have some laboratory work performed, a portion of the hospital's Facility Charges are allocated to providing the X-ray, and a portion of the hospital's Facility

---

[5] If the United States believed TMA's guidance was necessary to adjudicate Plaintiffs' claims, then the United States would have agreed with the Defendants on its arguments. It did not, however, do so. Indeed, the SOI does not address Defendant's primary jurisdiction argument and completely rejects Defendant's arguments that the United States is a real party in interest or an indispensable party. The United States makes clear that federal interests are not at stake here because: (1) "the complaint does not challenge any TRICARE regulation or present any claim against the United States;" (2) "Plaintiffs are not seeking any additional payment from the United States based on the TRICARE regulations;" and (3) "should the Court ultimately award Plaintiffs money damages in this case, defendant alone would be liable on that judgment." SOI at 4, 6, and 8.

[6] Although Plaintiffs have previewed for the Court the merits of their claims, it is premature to determine the merits at the motion to dismiss stage.

5

Charges are allocated to the laboratory services provided. When the hospital bills the patient or his/her insurance company, the hospital completes a Form UB-92, referencing the services rendered (i.e., the X-ray services and laboratory services), and the costs, or Facility Charges associated with and billed for the services rendered.

### 2. Facility Charges Are Not Assigned An "CHAMPUS Maximum Allowable Charge"

Under the TRICARE regulations, certain services or charges are assigned a CHAMPUS Maximum Allowable Charge ("CMAC"), which is a reimbursement rate set by TRICARE. Other services or charges that are not assigned a CMAC are paid as billed. As the United States makes clear in its SOI, Facility Charges are just such a charge, and are not assigned a CMAC. *See* SOI at 17.

### 3. Because Facility Charges Have Not Been Assigned A CMAC, They Are Paid "As Billed"

As Plaintiffs, Defendants and the United States acknowledge, the TRICARE regulations, specifically 32 C.F.R. §199.14(a)(5)(xi), provide that "TRICARE payments for hospital outpatient *Facility Charges* that would include the costs of providing the outpatient service would be *paid as billed*." *Id*. (emphasis added). Accordingly, there is no dispute that the Facility Charges claimed by Plaintiffs are to be paid "as billed" and that such Facility Charges are charges that are different from and, in fact, "in addition to," charges that are reimbursed at CMAC. *See* SOI at 16 (stating "there is no dispute that 'facility charges' are paid as billed").

Simply put, the United States has confirmed Plaintiffs' position that, with respect to the Subject Claims, (1) a fee for "Facilities Charges" is payable to Plaintiffs, as dictated by 32 C.F.R. § 199.14(a)(5)(xi), and (2) this fee is *in addition* to any payments that are made under 32 C.F.R. § 199.14(a)(5)(i)-(x) (*i.e.*, CMAC payments):

6

> Under DoD regulations, when there is a CMAC, that is the maximum amount TRICARE can pay for that *claimed service*; no other charges for the *same service* are payable by TRICARE. TRICARE can pay a facility charge, *in addition*, but that facility charge is not the difference between the billed amount for a service covered by a CMAC and the CMAC, but a *separate charge* to cover the use of the facilities, which is to compensate the hospital for its overhead, non-professional staff, depreciation, etc.

SOI at 21 (emphasis added) (citation omitted). Indeed, even Defendant is forced to concede that Facility Charges are "services without allowable charges" and, therefore, pursuant to 32 C.F.R. §199.14(a)(5)(xi), "shall be paid as billed." Defendant's Response p. 4.

        4.      <u>Plaintiffs Have Properly Billed, And Are Entitled To Payment, For Their Facility Charges</u>

Realizing the unavoidable conclusion that is reached by applying the regulations to the Subject Claims, the Defendant attempts, by taking quotes from the SOI out of context, to obfuscate the matter by suggesting that the Plaintiffs did not bill correctly for the charges at issue, or that some "true facility charges" concept should carry the day.[7] However, Defendant's position is contrary to the plain language of the regulations, and therefore fails.

Plaintiffs have properly alleged that they "duly" billed for their Facility Charges and, at this stage, the analysis should stop there. *See* Amended Complaint ¶ 32. However, even if one moves beyond the four corners of the Amended Complaint, Defendant's argument that Plaintiffs failed to appropriately bill for "Facility Charges," still fails because it is completely meritless. As explained in Plaintiffs' Response, there simply is no way to separately bill for the Facility Charges associated with the Subject Claims other than in the manner done by Plaintiffs, *i.e.*, by referencing on the UB-92 the service performed, the applicable revenue code and procedure code, and the total costs, or Facility Charges, associated with the service rendered. Subsection

---

[7] Defendant further obfuscates the issue by failing to acknowledge the United States' concession that TRICARE can pay a facility charge in addition to CMAC. *See* SOI p. 3.

7

199(a)(5)(xi) recognizes this billing reality when it describes Facility Charges as the "*cost* of providing the outpatient service...." (emphasis added). *See* Plaintiffs' Response at 10-14.

With respect to the United States assertion in the SOI that only "true" Facility Charges should be paid, the simple truth is that the regulations unambiguously define "Facility Charges" as "the charge, either inpatient or outpatient, made by a hospital or other institutional provider to cover the overhead costs of providing the service. These costs include building costs, *i.e.*, depreciation and interest; staffing costs; drugs and supplies; and overhead costs, i.e., utilities, housekeeping, maintenance, etc." 32 C.F.R. § 199.2(b). If TRICARE desired to limit the definition of Facility Charges to some concept of "true facility charges," it would have done so. To the contrary, TRICARE adopted a very broad definition that includes not only the hospital's direct, but also its indirect, costs incurred in providing the delineated service. As illustrated in Plaintiffs' Response, all of these "Facilities Charges" are captured on the UB-92, Box 47 and have been properly submitted for the Subject Claims. *See* Plaintiffs' Response at 10-14.

Consequently, despite Defendant's desire to portray the underlying issue as requiring expertise only TRICARE can provide, the issue is addressed in a single, unambiguous regulation that dictates that Plaintiffs be paid, as billed, their Facility Charges for the Subject Claims for which they have appropriately billed on UB-92s. This issue requires only the application of the law to the facts, an analysis that is well within the province of this Court.

## CONCLUSION

For all of the foregoing reasons and the reasons set forth in Plaintiffs prior briefing on Defendants' Motion to Dismiss, Plaintiffs respectfully renew their request that the Court deny in its entirety Defendant's Motion to Dismiss.

8

| | |
|---|---|
| Dated: October 26, 2007 | DUANE MORRIS LLP |
| | /s/  Matt Neiderman |
| *OF COUNSEL* | Matt Neiderman (Del. Bar No. 4018) |
| John J. Soroko | DUANE MORRIS LLP |
| Seth A. Goldberg | 1100 N. Market St., Suite 1200 |
| DUANE MORRIS LLP | Wilmington, Delaware 19801 |
| 30 South 17th St. | 302.657.4900 |
| Philadelphia, PA 19103 | 302.657.4901 *fax* |
| 215.979.1000 | mneiderman@duanemorris.com |
| 215.979.1020 *fax* | |
| | |
| Michael R. Gottfried | Gregory A. Brodek |
| Patricia R. Rich | DUANE MORRIS LLP |
| DUANE MORRIS LLP | 88 Hammond Street, Suite 500 |
| 470 Atlantic Avenue, Suite 500 | Bangor, ME 04401 |
| Boston, MA 02210 | 207.262.5440 |
| 857.488.4290 | 207.262.5401 *fax* |
| 857.488.4201 *fax* | |

*Attorneys for Plaintiffs Northern Michigan Hospitals, Inc.
and Gifford Medical Center, Inc., for themselves and
on behalf of all other similarly situated class members*

9

**CERTIFICATE OF SERVICE**

I, Matt Neiderman, hereby certify that on October 26, 2007, I caused a copy of the foregoing document to be served upon the following counsel of record via e-filing:

>Jennifer Gimler Brady, Esq.
>Potter, Anderson & Corroon LLP
>1313 N. Market Street
>Hercules Plaza
>6th Floor
>Wilmington, Delaware  19899


>/s/ Matt Neiderman
>Matt Neiderman  (Del. I.D. No. 4018)