IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC. and GIFFORD MEDICAL CENTER, INC., *for themselves and on behalf of all other similarly situated class members*,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH NET FEDERAL SERVICES, LLC (f/k/a HEALTH NET FEDERAL SERVICES, INC.),<br><br>Defendant. | Civil Action No. 07-39 (GMS)<br><br>JURY TRIAL DEMANDED |

**DEFENDANT HEALTH NET FEDERAL SERVICES, LLC'S
REPLY TO PLAINTIFFS' RESPONSE TO THE
<u>STATEMENT OF INTEREST OF THE UNITED STATES</u>**

OF COUNSEL:

Arthur N. Lerner
Kathleen Taylor Sooy
Christopher Flynn
Tracy A. Roman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500 – Telephone
(202) 628-5116 – Facsimile

Dated: October 26, 2007
828017 / 31173

Richard L. Horwitz (Del. Bar 2246)
Jennifer Gimler Brady (Del. Bar 2874)
Jennifer C. Wasson (Del. Bar 4933)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
rhorwitz@potteranderson.com – Email
jbrady@potteranderson.com – Email
jwasson@potteranderson.com - Email

*Attorneys for Defendant Health Net Federal Services, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................1

ARGUMENT.................................................................................................................................2

I.    PLAINTIFFS CANNOT MAINTAIN COMMON LAW CLAIMS AGAINST HEALTH NET THAT ARE PREMISED ON A DISPROVEN REGULATORY INTERPRETATION..................................................................................................2

II.    PLAINTIFFS CANNOT AVOID THEIR DUTY TO EXHAUST ADMINISTRATIVE REMEDIES .................................................................................6

    A.    The Issues That Plaintiffs Raise In This Lawsuit Are Subject To The CHAMPUS Administrative Appeal Process .........................................................6

    B.    The CHAMPUS/TRICARE Appeals Process Is A Necessary Step To The Resolution Of The Issues In Dispute .....................................................................7

CONCLUSION............................................................................................................................10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
228 F.3d 429 (3d Cir. 2000) ................................................................................................ 2-3

*Doe v. U.S.*,
372 F.3d 1308 (Fed. Cir. 2004) .............................................................................................. 3

*First Jersey Sec., Inc. v. Bergen*,
605 F.2d 690 (3d Cir. 1979) ................................................................................................... 7

*Hofmann v. Hammack*,
82 F. Supp. 2d 898 (N.D. Ill. 2000) ........................................................................................ 8

*Holton v. Blue Cross and Blue Shield of South Carolina*,
56 F. Supp. 2d 1347 (M.D. Ala. 1999) ............................................................................... 7, 8

*Meyers v. Bethlehem Shipbuilding Corp.*,
303 U.S. 41 (1938) .................................................................................................................. 7

*Silverman v. Eastrich Multiple Investor Fund, LP*,
51 F.3d 28 (3d Cir. 1995) ....................................................................................................... 5

*Trauma Service Group v. Keating*,
907 F. Supp. 110 (E.D. Pa. 1995) ...................................................................................... 7, 8

**FEDERAL STATUTES & REGULATIONS**

70 Fed. Reg. 61368, 61372 (Oct. 24, 2005) .................................................................................. 4

32 C.F.R. § 199.2 ........................................................................................................................... 6

32 C.F.R. § 199.2(b) .............................................................................................................. 3, 5, 8

32 C.F.R. § 199.6(a) ...................................................................................................................... 4

32 C.F.R. § 199.10(a) ................................................................................................................ 6, 9

32 C.F.R. § 199.10(a)(8)(i)(B) ...................................................................................................... 9

32 C.F.R. § 199.10(b)(2) ............................................................................................................... 6

32 C.F.R. § 199.10(c)(2) ............................................................................................................... 6

32 C.F.R. § 199.10(d) ...................................................................................................................9

32 C.F.R. § 199.10(e) ...................................................................................................................9

32 C.F.R. § 199.14(a)(5) ...........................................................................................................6, 7

32 C.F.R. § 199.14(a)(xi) ..............................................................................................................3

Pursuant to the Court's Order dated October 4, 2007, Defendant Health Net Federal Services, LLC ("Health Net"), by and through counsel, hereby respectfully submits the following reply to Plaintiffs' Response to the Statement of Interest of the United States in this matter.

## **INTRODUCTION**

In their Response to the Government's Statement of Interest, Plaintiffs continue to assert that the regulations governing this dispute entitle Plaintiffs to their "billed charges" for outpatient hospital services that are subject to a CHAMPUS Maximum Allowable Charge ("CMAC"). The Government, however, in its Statement of Interest, has established that the TRICARE regulations governing the payment of outpatient hospital services mandate that non-network participating hospitals, such as Plaintiffs, are entitled to CMACs and nothing more for the specific outpatient services at issue in this dispute. Since the Plaintiffs' common law claims for breach of an implied-in-fact contract and unjust enrichment are premised on an interpretation of a regulation that is not sustainable as a matter of law, Plaintiffs' claims must fail.

Plaintiffs' response to the Government's Statement of Interest also crystallizes that Plaintiffs' dispute is not with Health Net's interpretation of the facility charge regulation, but rather with the Government's interpretation of that regulation. The Government, like Health Net before it, has explained that Plaintiffs are not entitled to the payment of a facility charge in addition to a CMAC for a specific outpatient service. To the extent that Plaintiffs do not accept the Government's interpretation, they must seek recourse against the Government rather than Health Net.

Finally, Plaintiffs' claim that they should be exempted from the requirement to exhaust administrative remedies under the TRICARE regulations is nothing more than an improper attempt to avoid review of the disputed claims by the TMA, the very agency that promulgated the regulations that govern the appropriate amount of reimbursement for the subject claims. The

- 1 -

issues raised by Plaintiffs in this litigation are fact-driven and appealable under the various levels of review in the TRICARE appeals process. Plaintiffs must exhaust those appeals prior to seeking redress in this or any other Court.

## ARGUMENT

### I. PLAINTIFFS CANNOT MAINTAIN COMMON LAW CLAIMS AGAINST HEALTH NET THAT ARE PREMISED ON A DISPROVEN REGULATORY INTERPRETATION

In their Complaint, Plaintiffs admit that they are "Non-Network Participating Hospitals ... who have provided, and continue to provide, outpatient health care services ... to TRICARE beneficiaries. ..." Amended Complaint, ¶ 7. Plaintiffs likewise explain that Non-Network Participating Hospitals are providers "who do not enter into ... written contracts with a [Managed Care Support Contractor] (such as [Health Net]). ..." Amended Complaint, ¶ 26. As a result, Plaintiffs admit that they are only entitled to reimbursement for the provision of health care services to TRICARE beneficiaries "*strictly in accordance with the regulations that govern TRICARE.*" Amended Complaint, ¶ 27 (emphasis added). Prior to the Government's Statement of Interest, Plaintiffs claimed that, based on the regulations themselves and the TMA's long-standing interpretation of those regulations, Plaintiffs were entitled to their billed charges for outpatient hospital services *even if* those services were subject to CHAMPUS' allowable charge. In its Statement of Interest, however, the Government eviscerated Plaintiffs' argument, explaining that "[u]nder DoD regulations, when there is a CMAC, that is the maximum amount TRICARE can pay for that claimed service; *no other charges for the same service are payable by TRICARE.* ..." Statement of Interest at 21 (emphasis added). Contrary to Plaintiffs' contention in its response brief, if the Court defers to the TMA's interpretation of its own regulation, as it should, Plaintiffs cannot maintain their common law claims as both are premised on a groundless regulatory interpretation. *See Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228

F.3d 429, 447 (3d Cir. 2000) (where a legal obligation upon which an implied-in-fact contract claim is founded is illusory, the claim must be dismissed).

Faced with the fact that the Government has negated its regulatory interpretation arguments, Plaintiffs now contend "that the United States has not accurately characterized the dispute. ..." Plaintiffs' Response Brief at 5. Plaintiffs argue that the dispute can be distilled into a difference of opinion between Plaintiffs and Health Net regarding whether 32 C.F.R. 199.14(a)(5)(xi) permits the payment of a facility charge in addition to the CHAMPUS maximum allowable charge for outpatient hospital services. Plaintiffs' Response Brief at 5. Plaintiffs' dispute, however, is not with Health Net, but rather the Government, which promulgated the facility charge regulation and interprets it in a manner diametrically opposed to Plaintiffs' interpretation. To the extent that Plaintiffs believe that the Government is misinterpreting the facility charge regulation, they must initiate an action in an appropriate forum against the United States, not Health Net. *See Doe v. U.S.*, 372 F.3d 1308, 1312 (Fed. Cir. 2004).

Yet, even if Health Net were an appropriate defendant in this action, Plaintiffs' claims cannot be sustained because, as the Government concluded, they are based on a fundamental misunderstanding of the governing regulations. For outpatient hospital services that have an established CHAMPUS maximum allowable amount, that charge is the only amount to which a TRICARE participating hospital is entitled. The TRICARE regulations make this abundantly clear, defining a "[p]articipating provider," in relevant part, as a provider "that is required or has agreed ... to accept the CHAMPUS allowable amount as the maximum total charge *for a service or item rendered to a CHAMPUS beneficiary*. ..." 32 C.F.R. § 199.2(b) (emphasis added). Moreover, participating providers have a "duty to familiarize themselves, and comply with the

[TRICARE] program requirements." 32 C.F.R. § 199.6(a). Based on the foregoing, Plaintiffs' claim that they are entitled to their billed charges for services covered by CMACs is baseless.

Plaintiffs' claim that they are entitled to their billed charges for outpatient services that have CMACs because such billed charges are, in fact, "facility charges" also ignores TMA's purpose in establishing maximum allowable charges. In the preamble to the Federal Register notice in which TMA promulgated its outpatient payment regulations, TMA explained:

> [t]his rule clarifies payments for hospital based outpatient services that have established allowable TRICARE charges. ... For these services, payments are based on the TRICARE-allowable cost method in effect for professional providers or the CHAMPUS Maximum Allowable Charge ("CMAC"). ... *All other outpatient hospital services, except ambulatory surgery services, shall be paid as billed such as facility charges.*

70 Fed. Reg. 61368, 61372 (Oct. 24, 2005) (emphasis added). This preamble dispels any notion that Plaintiffs are entitled to a "facility charge" for the very same outpatient hospital service for which a CMAC exists. Instead, Plaintiffs are entitled to *either* the allowable charge, if one exists, *or* their billed charges, if no allowable charge exists.

The Government noted the sophistry of Plaintiffs' interpretation of the facility charge regulations in its Statement of Interest. As the Government explained,

> [i]f plaintiffs were correct, ... then the entire system of CMACs could effectively be circumvented. ... [T]he CMAC would not limit the amount of federal funds that were paid for a given service. *See, generally,* 10 U.S.C. § 1079; *Baptist Physician Hospital v. Humana,* 368 F.3d at 895 ("The overall goal of the TRICARE program is to improve the quality, cost and accessibility of health care to the nation's military through the mechanism of a managed care program."). Plaintiffs' interpretation would effectively eliminate 32 C.F.R. § 199.14(a)(5)(i)-(x), which lists outpatient services subject to CMACs, while retaining subsection (xi), Facility charges.

Statement of Interest at 22. As the Government rightly points out, one must ignore the CMACs and their purpose in order to accept Plaintiffs' strained interpretation of the TRICARE payment

regulations. The law simply does not permit such an absurd result. *Silverman v. Eastrich Multiple Investor Fund, LP*, 51 F.3d 28, 31 (3d Cir. 1995) ("[a regulation] should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error") (citation omitted).

Finally, Plaintiffs claim that they did not bill a facility charge for each specific outpatient service at issue in this case because the claims form they were required to use – the UB92 – does not provide a field to bill a facility charge for each specific outpatient service. Plaintiffs' Response Brief at 13. Plaintiffs' argument ignores the more obvious reason that the UB92 form does not provide a field for a facility charge in connection with a specific outpatient service – the TRICARE program simply does not permit such a charge. *See* 32 C.F.R. § 199.2(b) (definition of "participating provider"). Indeed, Plaintiffs have turned the meaning of a facility charge completely on its head. As the Government explains, a facility charge is a charge associated with the use of the facility – in most cases an emergency room. By example, the Government noted that

> ... if a provider submitted a claim form (UB-92/HC[F]A-1450) seeking reimbursement for two component charges, such as (1) #320 X-rays ($100); and (2) #450 emergency care ($300), TRICARE would pay the charges as follows: (1) the X-ray would be reimbursed at the CMAC rate ($19.50), *see* 32 C.F.R. § 199.14(a)(5)(iv) ("Radiology services"); and (2) the emergency room charge would be paid as billed as a facility charge ($300), *see* 32 C.F.R. § 199.14(a)(5)(xi).

Statement of Interest at 20. Plaintiffs completely ignore this straightforward interpretation and instead replace it with one that defies logic.

## II. PLAINTIFFS CANNOT AVOID THEIR DUTY TO EXHAUST ADMINISTRATIVE REMEDIES

### A. The Issues That Plaintiffs Raise In This Lawsuit Are Subject To The CHAMPUS Administrative Appeal Process

In response to the Government's Statement of Interest, Plaintiffs continue to contend that they should not be required to exhaust their administrative remedies prior to seeking redress in this Court. As in past briefs, Plaintiffs blithely assert that "the dispute surrounding each Subject Claim is not one that could have been appealed under the TRICARE administrative review process because any such dispute necessarily raises a question about 'a requirement of the law or regulation,' namely, what reimbursement is *required* under § 199.14(a)(5)." Plaintiffs' Response Brief at 5 (emphasis in original). Once again, Plaintiffs' arguments regarding exhaustion miss the mark.

Pursuant to 32 C.F.R. § 199.2, Plaintiffs are only restricted, in an administrative appeal, from arguing that a regulation is invalid or that it is inapplicable on equitable rather than legal grounds. That said, Plaintiffs can appeal the method by which a payment rule is applied to specific claims so long as they do not challenge *the general validity* of the regulations. According to Plaintiffs, they are not challenging 32 C.F.R. § 199.14(a)(5), but rather advocating for its proper application to the facts in dispute. Based on that admission alone, Plaintiffs' claim that they are absolved from the TRICARE appeals process is spurious. Contrary to Plaintiffs' assertion, challenging a requirement of the law only means that an appeal "cannot challenge the *propriety, equity or legality* of any provision of [a] law or regulation." 32 C.F.R. § 199.10(a) (emphasis added). Indeed, the very purpose of an agency appeal is to determine whether the initial determination was made in accordance with laws, regulations, policies, and guidelines in effect at the time the care was provided. 32 C.F.R. § 199.10(b)(2) and (c)(2). The claim and applicable question of fact presented by Plaintiffs' claim is whether Plaintiffs submitted claims

- 6 -

for actual facility charges and whether Health Net paid those claims according to 32 C.F.R. § 199.14(a)(5). *See* Statement of Interest at 16.

### B. The CHAMPUS/TRICARE Appeals Process Is A Necessary Step To The Resolution Of The Issues In Dispute

Plaintiffs contend that because there is no statutory exhaustion requirement, the matter of exhaustion is left to the "sound judicial discretion" of the Court. Yet, Plaintiffs ignore the fact that the Third Circuit long ago concluded that, in the exercise of that discretion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir. 1979) (citing *Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)).

Indeed, even the cases Plaintiffs cite regarding exhaustion support the conclusion that Plaintiffs must exhaust their administrative appeal rights prior to seeking redress in this Court. For example, in *Trauma Service Group v. Keating*, 907 F. Supp. 110, 113 (E.D. Pa. 1995), the court found that "the CHAMPUS regulations provide an extensive administrative appeal procedure." According to the *Keating* court, "requiring exhaustion of administrative remedies is entirely appropriate under [the CHAMPUS] statutory framework." 907 F. Supp. at 113. The court further noted that "the CHAMPUS statute traces the Social Security Act, under which courts have held that exhaustion of administrative remedies is required." *Id.* at 114. The *Keating* court required the plaintiff to exhaust its administrative remedies, reasoning that "CHAMPUS provides for a detailed adjudication of these claims by a tribunal more familiar with the inner workings and requirements of CHAMPUS" than the courts. *Id.* at 113.

In yet another exhaustion case cited by Plaintiffs, *Holton v. Blue Cross and Blue Shield of South Carolina*, 56 F. Supp. 2d 1347 (M.D. Ala. 1999), the court again required the plaintiff to exhaust his administrative remedies under the CHAMPUS program. The court noted that the

CHAMPUS administrative appeal process was "the most appropriate forum to develop the factual background" of the dispute and to decide the outcome of requests for payment under the requirements of CHAMPUS. *Holton*, 56 F. Supp. 2d at 1354.

Finally, in *Hofmann v. Hammack*, 82 F. Supp. 2d 898 (N.D. Ill. 2000), another case that Plaintiffs rely on heavily, the plaintiff argued that she did not need to engage in the agency appeal process as it would derail the timely adjudication of her claim for relief. The court rejected this claim, acknowledging the vitally important role of the CHAMPUS program in reviewing the claims in dispute rather than simply foisting them in front of the court. The *Hofmann* court reasoned that "[n]ormally, the agency gets the first crack at reconsidering the claim, in part because it is the expert that has been authorized by Congress to deal with the issue and in part because letting the agency handle the problem if it can do so lightens the dockets of the courts." *Hofmann*, 82 F. Supp. 2d at 900. Based on its rationale, the *Hofmann* court mandated that the plaintiff exhaust her administrative remedies and dismissed her case.

As in *Keating, Holton* and *Hofmann*, the Court here should permit the TMA to apply its expertise in the review of the payment dispute at issue. Plaintiffs should not be permitted to simply ignore the detailed CHAMPUS adjudication process because it is concerned about the possible outcome of such an appeal. As the Government correctly notes in its Statement of Interest,

> Plaintiffs do not specifically allege [in their Complaint] that they incurred costs that fit the definition of "facility charges" under 32 C.F.R. § 199.2(b), nor do they specifically allege that they billed "facility charges" and were denied payment on those specific charges. ... If plaintiffs present evidence in the administrative process that they incurred facility charges, that they properly submitted claims for those charges, and that those claims were not paid, then the appeal process could vindicate plaintiffs.

Statement of Interest at 16. Plaintiffs have failed to articulate any sustainable basis upon which to ignore the CHAMPUS appeals process, and the Court should dismiss this action because Plaintiffs have not done so.

Plaintiffs further allege in their response brief that the appeals process would be futile because the parties acknowledge that they disagree with each other's interpretation of the relevant regulations. Plaintiffs' Response at 9-10. Plaintiffs ignore, however, that the appeals process includes review not only by Health Net, but also by the TMA in writing, by a TMA hearing officer and by the TMA's Director. *See* 32 C.F.R. § 199.10(a)(8)(i)(B), 199.10(d) and 199.10(e). As a result, Plaintiffs' claim that the administrative appeal process would be futile is simply untenable given that the appeal process is directed and administered by the TMA.

## CONCLUSION

For each of the foregoing reasons, as well as those articulated in Health Net's previous briefs in support of its Motion to Dismiss, Health Net respectfully requests that the Court dismiss Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur N. Lerner, Esquire
Kathleen Taylor Sooy, Esquire
Christopher Flynn, Esquire
Tracy A. Roman, Esquire
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500 – Telephone
(202) 628-5116 – Facsimile

Dated: October 26, 2007
828017 / 31173

By /s/ Jennifer Gimler Brady
Richard L. Horwitz (Del. Bar 2246)
Jennifer Gimler Brady (Del. Bar. 2874)
Jennifer C. Wasson (Del. Bar 4933)
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
rhorwitz@potteranderson.com - Email
jbrady@potteranderson.com - Email
jwasson@potteranderson.com - Email

*Attorneys for Defendant Health Net Federal Services, LLC*

## CERTIFICATE OF SERVICE

I, Jennifer Gimler Brady, hereby certify this 26th day of October, 2007, that the foregoing **DEFENDANT HEALTH NET FEDERAL SERVICES, LLC'S REPLY TO PLAINTIFFS' RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES** was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) which will send notification of such filing that the document is available for viewing and downloading via CM/ECF to the following counsel of record:

>Matt Neiderman, Esquire
>Duane Morris LLP
>1100 North Market Street
>Suite 1200
>Wilmington, DE 19801

>*/s/ Jennifer Gimler Brady*
>Richard L. Horwitz (Del. Bar 2246)
>Jennifer Gimler Brady (Del. Bar 2874)
>Jennifer C. Wasson (Del. Bar 4933)
>POTTER ANDERSON & CORROON LLP
>Hercules Plaza, Sixth Floor
>1313 North Market Street
>P.O. Box 951
>Wilmington, DE 19899
>(302) 984-6000 - Telephone
>(302) 658-1192 – Facsimile
>rhorwitz@potteranderson.com -- email
>jbrady@potteranderson.com – Email
>
>*Attorneys for Defendant Health Net Federal Services, LLC*

827937v1